# 24-2879-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤ ◄◄

JOBAR HOLDING CORPORATION,
ROBERT BUCK, INDIVIDUALLY,

*Plaintiffs-Appellees,*

*v.*

DAVID HALIO,

*Defendant-Appellant.*

———————

*On Appeal from the United States District Court
for the Southern District of New York*

## APPENDIX

SAGE LEGAL LLC
*Attorneys for Defendant-Appellant*
18211 Jamaica Avenue
Jamaica, New York 11423
718-412-2421



**Table of Contents**

                                                                                    **Page**


District Court Docket Entries ................................................... A1

Notice of Removal, dated December 27, 2023 ...................................... A7

    Exhibit A to Notice of Removal -
    Complaint, dated November 20, 2023 .................................... A10

    Exhibit B to Notice of Removal -
    Affidavit of Service, sworn to November 29, 2023 ................. A54

Notice of Motion by Defendant to Dismiss the Complaint,
    dated February 29, 2024 ................................................ A56

Memorandum of Law by Defendant in Support of Motion,
    dated February 29, 2024 ................................................ A58

Memorandum of Law by Plaintiff's in Opposition to the Motion,
    dated March 28, 2024 .................................................. A92

Reply Memorandum of Law by Defendant in Further Support
    of Motion, dated April 11, 2024 ...................................... A118

Notice of Motion by Defendant for Sanctions Against Plaintiffs,
    dated April 12, 2024 .................................................. A127

Memorandum of Law by Defendant in Support of Motion,
    dated April 12, 2024 .................................................. A129

Declaration of Emanuel Kataev, for Defendant,
    in Support of Motion, dated April 12, 2024 ................... A149

    Exhibit A to Kataev Declaration -
    Letter from Emanuel Kataev to Dan Brecher,
    dated April 12, 2024 .................................................. A151

**Table of Contents**
**(Continued)**

**Page**

      Exhibit B to Kataev Declaration -
      Photocopy of Certified Mail Receipt,
      dated April 12, 2024 ................................................... A153

Declaration of Dan Brecher, for Plaintiffs, in Opposition to Motion
      for Sanctions, dated August 12, 2024 ........................... A155

      Exhibit A to Brecher Declaration -
      Affidavit of Barbara Halio in New York Supreme Court
      Action *Jobar Holding Corporation v. Barbara Halio*,
      sworn to December 2, 2017 ....................................... A164

      Exhibit B to Brecher Declaration -
      Excerpts from the Deposition Testimony of David Halio,
      taken January 19, 2023 ............................................. A169

Memorandum of Law by Plaintiffs in Opposition Motion
      for Sanctions, dated August 12, 2024 ........................... A175

Reply Memorandum of Law by Defendant in Further Support
      of Motion for Sanctions, dated August 19, 2024 .......................... A181

Letter from Dan Brecher to the Honorable Jessica G. L. Clarke,
      dated August 21, 2024 ..................................................... A189

Memo Endorsed Letter from Dan Brecher to the Honorable
      Jessica G. L. Clarke to Seal Exhibits,
      so-ordered on August 22, 2024 ....................................... A190

Declaration of Dan Brecher Regarding Exhibits and in Opposition
      to Reply Memorandum, dated August 26, 2024 ........................... A191

Opinion and Order of the Honorable Jessica G. L. Clarke,
      dated September 30, 2024 ............................................... A195

Notice of Appeal, dated October 27, 2024 ........................................... A217

<u>Query</u>    Reports    <u>Utilities</u>    Help    Log Out

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:23-cv-11217-JGLC

Jobar Holding Corporation et al v. Halio
Assigned to: Judge Jessica G. L. Clarke
Case in other court: State Court-Supreme, 161397/2023
Cause: 18:1962 Racketeering (RICO) Act

Date Filed: 12/27/2023
Date Terminated: 09/30/2024
Jury Demand: Defendant
Nature of Suit: 470 Racketeer/Corrupt Organization
Jurisdiction: Federal Question

**Plaintiff**

**Jobar Holding Corporation**            represented by   **Dan Brecher**
Scarini & Hollenbeck LLC
729 Seventh Avenue, 17th Floor
New York, NY 10019
(212)-286-0747
Fax: (212)-808-4155
Email: dbrecher@sh-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Buck**                          represented by   **Dan Brecher**
*Individually*                                            (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**David Halio**                          represented by   **Emanuel Kataev**
Sage Legal LLC
18211 Jamaica Avenue
Jamaica, NY 114232327
718-412-2421
Fax: 718-489-4155
Email: emanuel@sagelegal.nyc
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Charles Mule**
Milman Labuda Law Group PLLC
3000 Marcus Avenue
Suite 3w8
Lake Success, NY 11042
516-328-8899

Fax: 516-328-0082
Email: michaelmule@mllaborlaw.com
*TERMINATED: 03/01/2024*

| Date Filed | # | Select all / clear | Docket Text |
|---|---|---|---|
| 12/27/2023 | 1 | ☐ | NOTICE OF REMOVAL from Supreme Court of the State of New York, County of New York. Case Number: 161397/2023. (Filing Fee $ 405.00, Receipt Number ANYSDC-28744038).Document filed by David Halio. (Attachments: # 1 Exhibit A - complaint filed in Supreme Court of the State of New York, New York County, # 2 Exhibit B - affidavit of service in Supreme Court action). (Kataev, Emanuel) (Entered: 12/27/2023) |
| 12/27/2023 | 2 | ☐ | CIVIL COVER SHEET filed..(Kataev, Emanuel) (Entered: 12/27/2023) |
| 12/28/2023 | | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Emanuel Kataev re: Document No. 1 Notice of Removal. The filing is deficient for the following reason(s): all of the parties listed on the pleading were not entered on CM ECF. Docket the event type Add Party to Pleading found under the event list Complaints and Other Initiating Documents. (vf)** (Entered: 12/28/2023) |
| 12/28/2023 | | | **\*\*\*NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Emanuel Kataev. The party information for the following party/parties has been modified: Robert Buck. The information for the party/parties has been modified for the following reason/reasons: party text was omitted. (vf)** (Entered: 12/28/2023) |
| 12/28/2023 | | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Jessica G. L. Clarke. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(vf) (Entered: 12/28/2023) |
| 12/28/2023 | | | Magistrate Judge Gary Stein is designated to handle matters that may be referred in this case. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (vf) (Entered: 12/28/2023) |
| 12/28/2023 | | | Case Designated ECF. (vf) (Entered: 12/28/2023) |
| 12/28/2023 | 3 | ☐ | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 4/11/2024 at 12:00 PM before Judge Jessica G. L. Clarke. The conference will be held remotely by Microsoft Teams. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 12/28/2023) (vfr) (Entered: 12/28/2023) |
| 01/04/2024 | 4 | ☐ | NOTICE of compliance with December 28, 2023 Order with Declaration of Service re: 3 Order for Initial Pretrial Conference,. Document filed by David Halio. (Attachments: # 1 Exhibit A - proof of service via email, # 2 Exhibit B - proof of service via certified mail).(Kataev, Emanuel) (Entered: 01/04/2024) |

| 01/08/2024 | 5 | ☐ | NOTICE OF APPEARANCE by Michael Charles Mule on behalf of David Halio..(Mule, Michael) (Entered: 01/08/2024) |
|---|---|---|---|
| 01/19/2024 | 6 | ☐ | NOTICE OF APPEARANCE by Dan Brecher on behalf of Jobar Holding Corporation..(Brecher, Dan) (Entered: 01/19/2024) |
| 01/19/2024 | 7 | ☐ | NOTICE OF APPEARANCE by Dan Brecher on behalf of Robert Buck..(Brecher, Dan) (Entered: 01/19/2024) |
| 01/22/2024 | 8 | ☐ | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Robert Buck, Jobar Holding Corporation..(Brecher, Dan) (Entered: 01/22/2024) |
| 01/24/2024 | 9 | ☐ | LETTER MOTION for Extension of Time to File Answer *or otherwise respond to the complaint pursuant to Fed. R. Civ. P. 6* from Emanuel Kataev, Esq. dated January 24, 2024. Document filed by David Halio..(Kataev, Emanuel) (Entered: 01/24/2024) |
| 01/29/2024 | 10 | ☐ | ORDER granting 9 Letter Motion for Extension of Time to Answer re 9 LETTER MOTION for Extension of Time to File Answer *or otherwise respond to the complaint pursuant to Fed. R. Civ. P. 6* from Emanuel Kataev, Esq. dated January 24, 2024., 1 Notice of Removal,. Application GRANTED. Defendant to respond to the Complaint by February 29, 2024. The Clerk of Court is directed to terminate ECF No. 9. SO ORDERED. David Halio answer due 2/29/2024. (Signed by Judge Jessica G. L. Clarke on 1/29/2024) (tg) (Entered: 01/29/2024) |
| 02/29/2024 | 11 | ☐ | LETTER MOTION to Substitute Attorney. Old Attorney: Milman Labuda Law Group PLLC, New Attorney: Sage Legal LLC addressed to Judge Jessica G. L. Clarke from Emanuel Kataev, Esq. dated February 29, 2024. Document filed by David Halio. (Attachments: # 1 Proposed Order - Fully Executed Stipulation of Substitution of Counsel).(Kataev, Emanuel) (Entered: 02/29/2024) |
| 02/29/2024 | 12 | ☐ | MOTION to Dismiss for Lack of Jurisdiction *pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b)*. Document filed by David Halio. Responses due by 3/14/2024 Return Date set for 3/21/2024 at 11:59 PM..(Kataev, Emanuel) (Entered: 02/29/2024) |
| 02/29/2024 | 13 | ☐ | MEMORANDUM OF LAW in Support re: 12 MOTION to Dismiss for Lack of Jurisdiction *pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b)*. . Document filed by David Halio..(Kataev, Emanuel) (Entered: 02/29/2024) |
| 03/01/2024 | 14 | ☐ | STIPULATION OF SUBSTITUTION OF COUNSEL: IT IS HEREBY STIPULATED AND CONSENTED that Sage Legal LLC, with offices at 18211 Jamaica Avenue, Jamaica, NY 11423-2327, be and hereby are substituted in place and instead of Milman Labuda Law Group PLLC, with offices at 3000 Marcus Avenue, Suite 3W8, Lake Success, NY 11042-1073, as attorneys for the Defendant in the above-captioned case and that this substitution be entered into effect without further notice. IT IS FURTHER STIPULATED AND AGREED that this Stipulation may be signed in counterparts and a facsimile/PDF version is deemed as an original. So Ordered. Motions terminated: 11 LETTER MOTION to Substitute Attorney. Old Attorney: Milman Labuda Law Group PLLC, New Attorney: Sage Legal LLC addressed to Judge Jessica G. L. Clarke from Emanuel Kataev, Esq. dated February 29, 2024. filed by David Halio. Attorney Michael Charles Mule terminated. (Signed by Judge Jessica G. L. Clarke on 3/1/2024) (tg) (Entered: 03/01/2024) |
| 03/11/2024 | 15 | ☐ | LETTER MOTION for Extension of Time to File Response/Reply as to 12 MOTION to Dismiss for Lack of Jurisdiction *pursuant to Fed. R. Civ. P. 12(b)* |

## A4

| | | | |
|---|---|---|---|
| | | | *(1), 12(b)(6), and 9(b)*. addressed to Judge Jessica G. L. Clarke from Dan Brecher, Esq. dated March 11, 2024. Document filed by Jobar Holding Corporation. Return Date set for 3/14/2024 at 10:00 AM..(Brecher, Dan) (Entered: 03/11/2024) |
| 03/12/2024 | 16 | ☐ | ORDER granting 15 Letter Motion for Extension of Time to File Response/Reply. Application GRANTED. Plaintiffs shall file their opposition to Defendant's motion to dismiss by **March 28, 2024**; Defendant shall file his reply in support of the motion to dismiss by **April 11, 2024**. The Clerk of Court is directed to terminate ECF No. 15 . SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 03/12/2024) (stt) (Entered: 03/13/2024) |
| 03/28/2024 | 17 | ☐ | MEMORANDUM OF LAW in Opposition re: 12 MOTION to Dismiss for Lack of Jurisdiction *pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b)*. . Document filed by Robert Buck..(Brecher, Dan) (Entered: 03/28/2024) |
| 04/05/2024 | | | ORDER in re: 3 The Court's Order of December 28, 2023 required the parties to file a joint letter and proposed case management plan by April 4, 2024. The parties failed to timely submit the joint letter and proposed case management plan. IT IS HEREBY ORDERED that the parties file the joint letter and proposed case management plan as soon as possible and no later than April 8, 2024. (HEREBY ORDERED by Judge Jessica G. L. Clarke) (Text Only Order) (lrr) (Entered: 04/05/2024) |
| 04/08/2024 | 18 | ☐ | JOINT LETTER addressed to Judge Jessica G. L. Clarke from Emanuel Kataev, Esq. dated April 8, 2024 re: submission made in compliance with this Court's Orders dated December 28, 2023 and April 5, 2024. Document filed by David Halio..(Kataev, Emanuel) (Entered: 04/08/2024) |
| 04/08/2024 | 19 | ☐ | PROPOSED CASE MANAGEMENT PLAN. Document filed by David Halio.. (Kataev, Emanuel) (Entered: 04/08/2024) |
| 04/09/2024 | 20 | ☐ | MEMO ENDORSEMENT on re: 18 Letter, filed by David Halio. ENDORSEMENT: The initial pretrial conference in this matter, previously scheduled for April 11, 2024 at 11:00 a.m., is hereby CANCELED. The Court will revisit the parties' proposed Case Management Plan following the resolution of the pending motion to dismiss. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 4/9/2024) (tg) (Entered: 04/09/2024) |
| 04/11/2024 | 21 | ☐ | NOTICE OF APPEARANCE by Emanuel Kataev on behalf of David Halio.. (Kataev, Emanuel) (Entered: 04/11/2024) |
| 04/11/2024 | 22 | ☐ | REPLY MEMORANDUM OF LAW in Support re: 12 MOTION to Dismiss for Lack of Jurisdiction *pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b)*. . Document filed by David Halio..(Kataev, Emanuel) (Entered: 04/11/2024) |
| 07/21/2024 | 23 | ☐ | MOTION for Sanctions *pursuant to Fed. R. Civ. P. 11*. Document filed by David Halio..(Kataev, Emanuel) (Entered: 07/21/2024) |
| 07/21/2024 | 24 | ☐ | MEMORANDUM OF LAW in Support re: 23 MOTION for Sanctions *pursuant to Fed. R. Civ. P. 11*. . Document filed by David Halio..(Kataev, Emanuel) (Entered: 07/21/2024) |
| 07/21/2024 | 25 | ☐ | DECLARATION of Emanuel Kataev, Esq. in Support re: 23 MOTION for Sanctions *pursuant to Fed. R. Civ. P. 11*.. Document filed by David Halio.. (Kataev, Emanuel) (Entered: 07/21/2024) |
| 07/29/2024 | 26 | ☐ | FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 24 Memorandum of Law in Support of Motion, 25 Declaration in Support of |

| | | | |
|---|---|---|---|
| | | | Motion, 23 MOTION for Sanctions *pursuant to Fed. R. Civ. P. 11. LETTER MOTION* addressed to Judge Jessica G. L. Clarke from DAN BRECHER, ESQ. dated 07/29/24. Document filed by Jobar Holding Corporation. Return Date set for 8/5/2024 at 10:00 AM. (Attachments: # 1 Exhibit E-Mail Trail between Counsel Regarding Request to Extend).(Brecher, Dan) (Entered: 07/29/2024) |
| 07/30/2024 | 27 | ☐ | ORDER denying 26 Letter Motion for Extension of Time to File Response/Reply Application DENIED. Plaintiffs to oppose the motion for sanctions by August 12, 2024; Defendant to reply by August 19, 2024. The Clerk of Court is directed to terminate ECF No. 26. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 7/30/2024) (jca) (Entered: 07/30/2024) |
| 07/30/2024 | | | Set/Reset Deadlines: Responses due by 8/12/2024 Replies due by 8/19/2024. (jca) (Entered: 07/30/2024) |
| 08/12/2024 | 28 | ☐ | DECLARATION of Dan Brecher, Esq. in Opposition re: 23 MOTION for Sanctions *pursuant to Fed. R. Civ. P. 11.*. Document filed by Robert Buck. (Attachments: # 1 Exhibit Ex A B. Halio 12 2 17 Affidavit, # 2 Exhibit Ex B Deposition of Defendant 1 19 23 Excerpts, # 3 Exhibit Ex C Jobar 2013 and 2014 fed tax returns excerpts, # 4 Exhibit Ex D Bernstein 2 2 17 memo and k-1s excerpts).(Brecher, Dan) (Entered: 08/12/2024) |
| 08/12/2024 | 29 | ☐ | MEMORANDUM OF LAW in Opposition re: 23 MOTION for Sanctions *pursuant to Fed. R. Civ. P. 11.* . Document filed by Robert Buck..(Brecher, Dan) (Entered: 08/12/2024) |
| 08/19/2024 | 30 | ☐ | REPLY MEMORANDUM OF LAW in Support re: 23 MOTION for Sanctions *pursuant to Fed. R. Civ. P. 11.* . Document filed by David Halio..(Kataev, Emanuel) (Entered: 08/19/2024) |
| 08/21/2024 | 31 | ☐ | PROPOSED LETTER MOTION to Seal *Docs. 28, Exhibit C and Exhibit D* addressed to Judge Jessica G. L. Clarke from DAN BRECHER, ESQ. dated August 21, 2024. Document filed by Jobar Holding Corporation..(Brecher, Dan) (Entered: 08/21/2024) |
| 08/22/2024 | 32 | ☐ | ORDER granting 31 Letter Motion to Seal. Application GRANTED. The Clerk of Court is directed to terminate ECF No. 31. SO ORDERED. (Signed by Judge Jessica G. L. Clarke on 8/22/2024) (tg) (Entered: 08/22/2024) |
| 08/26/2024 | 33 | ☐ | RESPONSE in Opposition to Motion re: 23 MOTION for Sanctions *pursuant to Fed. R. Civ. P. 11. Declaration of Dan Brecher, Esq.*. Document filed by Jobar Holding Corporation. (Attachments: # 1 Exhibit Further Redacted Exhibit C to Doc. 28, # 2 Exhibit Further Redacted Exhibit D to Doc. 28).(Brecher, Dan) (Entered: 08/26/2024) |
| 09/30/2024 | 34 | ☐ | OPINION AND ORDER re: 23 MOTION for Sanctions *pursuant to Fed. R. Civ. P. 11.* filed by David Halio, 12 MOTION to Dismiss for Lack of Jurisdiction *pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9(b).* filed by David Halio. For the foregoing reasons, Defendant's motion to dismiss is GRANTED and the RICO causes of action are dismissed. Defendant's motion for sanctions is DENIED. The case is REMANDED to the Supreme Court of the State of New York, County of New York. SO ORDERED (Signed by Judge Jessica G. L. Clarke on 9/30/2024) (ks) Transmission to Docket Assistant Clerk for processing. (Entered: 09/30/2024) |
| 09/30/2024 | | | CASE REMANDED OUT from the U.S.D.C. Southern District of New York to the State Court - Supreme Court of the State of New York, County of New York. |

## A6

| | | | |
|---|---|---|---|
| | | | Sent certified copy of docket entries and remand order. Mailed via UPS Tracking Number 1ZE22E530210052642 on 10/2/2024..(ks) (Entered: 10/02/2024) |
| 10/27/2024 | 35 | ☐ | NOTICE OF APPEAL from 34 Memorandum & Opinion,,. Document filed by David Halio. Filing fee $ 605.00, receipt number ANYSDC-30101210. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit.. (Kataev, Emanuel) (Entered: 10/27/2024) |
| 10/28/2024 | | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 35 Notice of Appeal. (tp) (Entered: 10/28/2024) |
| 10/28/2024 | | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 35 Notice of Appeal filed by David Halio were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/28/2024) |
| 10/31/2024 | | | **\*\*\*NOTICE TO ATTORNEY REGARDING MISSING PARTIES ON THE DOCKET. Notice to Attorney Dan Brecher re: Document No. 1 Notice of Removal. All of the parties listed on the pleading were not entered on CM ECF.. Docket the event type Add Party to Pleading found under the event list Complaints and Other Initiating Documents (ADD ALL MISSING PARTIES AS INSTRUCTED ON THIS NOTICE AND THE NOTICED DATED ON 12/28/2023). (gp)** (Entered: 10/31/2024) |

View Selected

or

Download Selected

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/21/2025 09:25:41 | | | |
| PACER Login: | phpappeals10east | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:23-cv-11217-JGLC |
| Billable Pages: | 5 | Cost: | 0.50 |

A7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the       **Case No.: 1:23-cv-11217**
Estate of JOAN BUCK, and ROBERT BUCK, individually
and ROBERT BUCK, As Executor of the Estate of JOAN      **NOTICE OF REMOVAL**
BUCK, derivatively as shareholders on behalf of JOBAR
HOLDING CORPORATION,

                                        Plaintiffs,

        -against-

DAVID HALIO,

                                        Defendant.
-----------------------------------------------------------------------X

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

        **PLEASE TAKE NOTICE** that Defendant David Halio (hereinafter "Dr. Halio" or

"Defendant") pursuant to 28 U.S.C. § 1331, hereby respectfully removes this action from the

Supreme Court of the State of New York, County of New York, Index No.: 161397/2023, where

it is now pending, to the United States District Court for the Southern District of New York. In

support of this Notice of Removal, Defendant respectfully avers as follows:

        1.      On November 20, 2023, Plaintiffs Jobar Holding Corporation (hereinafter "Jobar"),

Robert Buck, individually (hereinafter "Buck"), and Robert Buck, as Executor of the Estate of

Joan Buck, and Robert Buck, individually, and Robert Buck, as Executor of the Estate of Joan

Buck, derivatively as shareholders on behalf of Jobar Holding Corporation (collectively

hereinafter the "Jobar Shareholders") (Jobar, Buck, and Jobar Shareholders collectively hereinafter

the "Plaintiffs") filed a complaint against Dr. Halio, alleging the following causes of action:

        (i) unjust enrichment pursuant to New York State common law;

(ii) aiding and abetting breaches of fiduciary duty pursuant to New York State common law;

(iii) violation of the civil Racketeer Influences and Corrupt Organizations Act (hereinafter "RICO"), pursuant to 18 U.S.C. § 1961, *et seq.*, Mail Fraud pursuant to 18 U.S.C. § 1341, Wire Fraud pursuant to 18 U.S.C. § 1343 and Bank Fraud pursuant to 18 U.S.C. § 1344;

(iv) civil RICO conspiracy, pursuant to 18 U.S.C. § 1962(d);

(v) fraud, pursuant to New York State common law; and

(vi) aiding and abetting fraud, pursuant to New York State common law.

A copy of the Complaint is annexed hereto as **Exhibit "A."**

2.      Plaintiff served Defendant, via substituted service, on Defendant's mother on November 27, 2023, and completed service by mailing a copy to Defendant on November 28, 2023. (A copy of the Affidavit of Service is annexed hereto as **Exhibit "B"**).

3.      This case is a civil action over which this court has federal question jurisdiction pursuant to 28 U.S.C. § 1311 because it involves federal statutes, namely 18 U.S.C. § 1961, *et seq.*, and 18 U.S.C. §§ 1341, 1343, and 1344 , and is therefore an action that may be removed to this Court pursuant to 28 U.S.C. § 1441(a).

4.      This Notice of Removal is timely filed, pursuant to 28 U.S.C. § 1446(b), because it has been filed within thirty (30) days after service was made on Defendant.

5.      After filing this Notice of Removal, Defendants will promptly serve written notice of this Notice of Removal on counsel for Plaintiffs and file the same with the Clerk of the Supreme Court of the State of New York, County of New York, in accordance with 28 U.S.C. § 1446(d).

6.      By removing this action from the Supreme Court of the State of New York, County of New York, Defendant does not waive any defenses available to him.

7.      By removing this action from the Supreme Court of the State of New York, County of New York, Defendant does not admit any of the allegations in Plaintiffs' Complaint.

**WHEREFORE,** Defendants respectfully request, in accordance with the provisions of 28 U.S.C. §§ 1331 and 1441, that this action now pending in Supreme Court of the State of New York, County of New York, be removed to this Court, and that this Court proceed with this case as if originally initiated in this Court.

Dated: Lake Success, New York
       December 27, 2023                  Respectfully submitted,

                                 **MILMAN LABUDA LAW GROUP PLLC**

                                 By: ___*/s Emanuel Kataev, Esq.*_____
                                 Emanuel Kataev, Esq.
                                 3000 Marcus Ave., Suite 3W8
                                 Lake Success, NY 11042-1073
                                 (516) 328-8899 (office)
                                 (516) 303-1395 (direct dial)
                                 (516) 328-0082 (facsimile)
                                 emanuel@mllaborlaw.com

                                 *Attorneys for Defendant*
                                 *Dr. David Halio*

**VIA FIRST CLASS MAIL**
Clerk of the Supreme Court of the State of New York
County of New York
60 Centre Street, Room 161
New York, NY 10007

**VIA FIRST CLASS MAIL**
SCARINCI & HOLLENBECK, LLC
Attn: Dan Brecher, Esq.
589 Eighth Avenue, 16th Floor
New York, NY 10018

*Attorneys for Plaintiffs*

# Exhibit "A"

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM INDEX NO. 161397/2023
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 11/20/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| JOBAR HOLDING CORPORATION, ROBERT BUCK, Individually, and ROBERT BUCK, As Executor of the Estate of JOAN BUCK, and ROBERT BUCK, individually and ROBERT BUCK, As Executor of the Estate of JOAN BUCK, derivatively as shareholders on behalf of JOBAR HOLDING CORPORATION, | Index No.: |
| Plaintiffs, | **COMPLAINT** |
|  | **ECF CASE** |
| - against – |  |
| DAVID HALIO, |  |
| Defendant. |  |

Plaintiffs, JOBAR HOLDING CORPORATION, ROBERT BUCK, individually, and ROBERT BUCK, As Executor of the Estate of JOAN BUCK (hereinafter, collectively "Buck"), and ROBERT BUCK, individually, and ROBERT BUCK, As Executor of the Estate of JOAN BUCK, derivatively as shareholders on behalf of JOBAR HOLDING CORPORATION ("Jobar"), by Scarinci & Hollenbeck, LLC their attorneys, complaining of the Defendant, Dr. David Halio, respectfully allege as follows:

1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
INDEX NO. 161397/2023
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 11/20/2023

## PRELIMINARY STATEMENT

1.      Defendant used trickery and deceit in a banking and tax fraud scheme developed and implemented in concert with his mother, Barbara Halio ("Barbara"), to loot the bank account of an inactive family corporation of its more than $1,500,000 in cash that was supposedly held in a fiduciary capacity for the benefit of all eleven family shareholders.  Defendant has received $500,000 or more in fraudulent transactions effected by and with Barbara, ongoing and designed to illegally obtain and retain funds for herself and her children at plaintiffs' expense. The scheme played out for over a decade, hidden by false and misleading tax filings and Dr. David Halio's role only came to light during a litigation brought against Barbara in which she submitted sworn statements which show her theft, the diversion of Jobar money from the account amount owed to Buck, and David's testimony of receipt and non-repayment of hundreds of thousands of dollars of so-called "loans" and other payments made by Barbara from that account for defendant's benefit and to hinder payment to Buck of the more than $570,000 Jobar owed to Buck out of the principal and earned interest of the $1,500,000 held back in that account after the liquidation of the building. The sold building was the sole operating asset of Jobar in 2006. Several of the shareholders who are not Barbara's children, demanded and received payment owed on their proportionate shares.  Barbara's children, other than David, Dr. Michon Halio ("Michon") and Esther Halio Peyron ("Esther"), claim they waived such payment in favor of Barbara's receipt thereof.  However, even after Barbara had taken her and their distributive shares, Barbara distributed more than their percentage shares in Jobar to them, and made further fraudulent transfers to them in 2020, as well as fraudulent transfers to her grandchildren, Esther's children, Oliver Peyron ("Oliver") and Stefan Peyron ("Stefan"), and yet another so-called "loan" to Barbara's son-in-law, Esther's husband, Nils Peyron ("Nils"). The fraudulent conveyances to the

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

defendant from his mother continued after 2020, in different forms, while Barbara claimed to be living on her monthly social security payments. These "loans," gifts, and other fraudulent conveyances were made to hinder and deprive Buck of receipt of the payments owed to Buck. Barbara specifically promised, under oath, to repay "Robert." Instead, Barbara continued to make fraudulent conveyances of her funds to her above-described family members. Buck received nothing of the $1,500,000 of Jobar funds held back in a Jobar account. Buck waived nothing. Plaintiffs herein seek to trace where the funds went after they were looted from the Jobar corporate account and to recover what is owed. Buck seeks to recover the legal fees and costs incurred in seeking to recover funds owed - even Barbara admits that Buck is owed hundreds of thousands of dollars that she promised to pay Buck years ago. Defendant admits he received hundreds of thousands of dollars in excess of his fair share directed to him or for his benefit out of the $1,500,000 account.  In his January 19, 2023 sworn testimony, defendant bizarrely claimed he did not ask his mother to send any of the fraudulent conveyances to him.

2.    The scheme was simple, and if no one looked into it, it would have worked. Over the years after Jobar had sold its building, the defendant and Barbara titled dozens of transfers to themselves out of the Jobar holdback account action as a so-called "loan." However, there was no loan document, no provision or payment of interest, and no repayments by defendant or Barbara of any of the principal or interest for any "loan" transfers made to them out of the Jobar account.

3.    Thus, defendant and Barbara enriched themselves by invading the corporate account, transferred, benefitted from, took and kept a total in excess of $1,500,000 out of Jobar's account in what they called "loans" and also in other downstream transactions, all in dozens of check and wire transfers for their personal benefits, and for the personal benefits of their

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM          INDEX NO. 161397/2023
NYSCEF DOC. NO. 2     Case 1:23-cv-11217-JGLC   Document 1-1   Filed 12/27/23   Page 5 of 44
                                                              RECEIVED NYSCEF: 11/20/2023

immediate family, to the detriment of plaintiffs. None of the "loans" or other fraudulent transfers were repaid by defendant, by his siblings, by Nils or his children, Oliver and Stefan, or by Barbara.  Not one penny of interest was charged to them or paid by them on the "loans."  No paperwork documented the "loans" taken from Jobar, and, to the extent that transactions with Jobar or Barbara are documented, the documentation confirms that they were fraudulent transactions, absent of fair consideration. For example, in 2013 alone, Barbara transferred a total of approximately $200,000 to David or a creditor of David, in transactions including: a $20,000 check dated March 2, 2013, as a purported loan to David; a $10,000 check dated April 12, 2013, to David as a purported loan to David; an April 15, 2013  wire transfer in the amount of $43,996 to pay the overdue premium for David's professional malpractice insurance policy after his check to the insurer had bounced; a May 3, 2013 wire transfer to David's bank account in the amount of $50,000, which is a wire transfer that David claims he never asked for, but admits he has not returned the money; a November 22, 2013 wire transfer to David's bank account; and, a December 20, 2013 $60,000 wire transfer, which like the others went from Jobar's Holding account to David's personal account.  David acknowledged at his January 19, 2023 deposition that he never paid back any principal or interest to Jobar for any of the Jobar wire transfers or any checks marked "Loan."

4.     Defendant contends he never asked for any of the "loans," never requested that Barbara send him the "loans" or other transfers and payments to or for defendant that were sent by Barbara, including in 2020, and other fraudulent transactions related to payments in support of defendant's medical practice, prior to and after 2020, all of which total approximately $500,000 or more. Defendant denies requesting his mother to send any of these fraudulent transfers; this, even though funds were sent to him or were paid for his benefit or deposited to his

4886-3663-6818, v. 1

bank account for years. In any event, he kept the money. For these fraudulent transactions, plaintiffs demand that defendant account and repay the plaintiffs.

5.      Buck has expended more than $500,000 in investigative and legal fees and costs to learn of the existence, nature and extent of the fraud and fraudulent transfers committed by Barbara, acting in concert with defendant, and other members of her immediate family.  Recent case law supports recovery of legal fees from defendant that were, and are being, incurred in protecting the Buck interest in the estate assets and in discovering and prosecuting for the return of the fraudulently converted Jobar funds.

### JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to C.P.L.R. §301 because Dr. David Halio resides and conducts business in the County and State of New York.  Alternatively, this Court has jurisdiction pursuant to C. P. L. R. § 302 because David regularly transacts business in New York.

7.      Venue is proper in this Court under C. P. L. R. § 503(b) because Plaintiff, Robert Buck, as Executor of the Estate of Joan Buck, was and is an executor appointed in the County of New York, defendant resides in the County of New York and maintains offices in New York and Nassau Counties.

### STATEMENT OF FACTS

8.      Defendant, Dr. David Halio ("David"), is the son of Barbara Halio.  Barbara Halio is the sister of the deceased Joan Buck ("Joan") and the aunt of plaintiff Robert Buck ("Robert") the son and executor of Joan's Estate.  Joan and Barbara were listed as co-executrices in the will of their mother, Kitty Buck, but Joan Buck died in 2005. Barbara admits that while thereafter serving as President of the inactive family-owned Sub-Chapter S corporation, Jobar

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

Holding Corporation ("Jobar"), she "borrowed" and personally spent more than $1,000,000 from

a Jobar account, and paid additional amounts to her children and their families, after the business

had been essentially wound down when it sold its business in 2006, and, in 2020, after she sold a

vacation home that she had supported with funds she looted from Jobar.  Barbara was the chief

executive and operating officer, and a director of Jobar, since at least 2005, and at all relevant

times, the signatory on all Jobar bank accounts.

9.    Barbara admits that she took unpaid "loans" of more than $1,000,000 from a

Jobar account that had been established with $1,500,000 from the sale of Jobar's only business –

the building at 120 West 72nd Street in Manhattan. The building, purchased 50 years earlier, was

sold in 2006 for $22 million, with net proceeds of $20,500,106. After the 2006 sale, the company

had no remaining operating business. In May 2006, approximately $18,000,000 of the proceeds

was distributed to the Jobar shareholders proportionate to their ownership interests in Jobar.  The

company had no other business. After paying the mortgage on the building, fees, bills and taxes,

in 2006 the remaining sum of $1,500,000 was set aside in a bank's money market account, to

earn interest and to be further distributed proportionately to the Jobar shareholders upon

establishing that no further claims, disputes or obligations existed as to the remaining $1,500,000

proceeds of the sale of the building (the "Holdback").  Jobar had no other material assets or

operations after the 2006 sale.

10.    Within a relatively short time after the 2006 closing of the sale of the Jobar

building, it became apparent to Barbara that there remained no reason to avoid distributing

remaining funds from the Holdback.  So, without telling Robert Buck, and with the knowledge

and consent of her "kids," David, Esther and Michon, Barbara admits she distributed more than

$1,000,000 of the Holdback funds and derivatives therefrom, to and for the benefit of herself, as

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM

NYSCEF DOC. NO. 2

so-called "loans" over a period of years. Barbara also distributed a six figure amount out of the Holdback funds to her son, David, the defendant herein, including describing them as loans. Defendant admits he never repaid these loans. Defendant also admits he never paid any interest on the so-called "loans." Barabara made payments amounting to substantially more than five hundred thousand dollars paid out of the Holdback and derivative funds therefrom to the members of Barbara's family, David, Michon, Esther, Nils, Oliver and Stefan, to the exclusion of Buck. But that information was withheld from Buck. Barbara and her family members kept that information from Robert, including through a devious and untrue listing of funds taken by Barbara and David as "loans" which they never repaid. Barbara was managing the Holdback funds as fiduciary to Jobar and for the benefit of all the Jobar shareholders, all of whom are relatives. Barbara did not distribute anything owed to the Estate of Joan Buck or to Robert. Instead, Barbara steadily transferred to herself and for her benefit, to her creditors, and to and for her son, David, including to David's creditor, among others, the entirety of the Holdback, including substantial interest earned and owed thereon, as well as funds derived from assets supported by the Holdback. Now, Barbara admits she "took the money" (her words). She also claims the money is "gone." Barbara claims she now has no income, and that she is living on social security. She claims she is unable to repay the purloined money she misappropriated from the Holdback that she was entrusted to manage, as a fiduciary, thus, breaching her duties owed to the plaintiffs. The Estate of Joan Buck and Robert Buck have never received a single dollar of their 30% and 8% shares of the Holdback funds. By contrast, Barbara's family members, particularly defendant David, have benefited and continue to benefit from Barbara's transfers and payments, continuing even to today for the benefit of David.

7

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2                                                                RECEIVED NYSCEF: 11/20/2023

INDEX NO. 161397/2023

Case 1:23-cv-11217-JGLC     Document 1-1     Filed 12/27/23     Page 9 of 44

11.     Barbara is separately being sued by the instant plaintiffs in an action presently pending in the New York County Supreme Court, under index number 655689/2017 (the "Buck v. Barabara Halio Case"). A basis of that lawsuit is that Barbara, instead of distributing the Holdback funds to all shareholders proportionate to their equity ownership in Jobar, as she had promised, with 30% to be paid to the Estate of Joan Buck and 8% to Robert Buck, Barbara distributed payment to all the other shareholders and none to Buck. All of the other shareholders of Jobar are, like Joan was and Robert is, descendants of Kitty Buck, the mother of Barbara and Joan, who died at age 93 in 2001. In her will, Kitty Buck divided her Estate equally between Joan and Barbara. But, as further described herein, as happened with the Jobar Holdback, Barbara, with the aid and abetting of her children, withheld and misappropriated assets and information regarding assets of the Estate of Kitty Buck. The continuing cooperative misdirection, deception and withholding of assets and information entrusted to her, is a pattern. David aided and abetted Barbara's frauds. He did so, in substantial part by conspiring with Barbara to denude her and Jobar of assets and enrich himself at the cost of the plaintiffs as further described below.

12.     Even now, David continues to withhold from plaintiffs, not just the Holdback funds he admits he received as purported loans, but he also receives Barbara's continued payments to his benefit out of funds derived through Jobar's prior payments that Barbara had specifically promised, under oath, she would pay to Buck when her Watermill, New York vacation home was sold in 2020. Instead, Barbara transferred funds derived from the sale of the Watermill property to the benefit of Barbara's children and grandchildren, and her son-in-law, in fraudulent conveyances, including an April 25, 2020 $30,000 check she wrote on her own account paid to David; this was from proceeds of the sale of her vacation home. Barbara now

8

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

claims she lacks funds to repay these plaintiffs for the moneys purloined from Jobar and Buck. The principal fraudulent device Barbara and her children, including David, used for denuding Barbara of assets with which to repay the plaintiffs was to entitle transactions as "loans," which were actually Barbara looting Jobar, and also making gifts to her children, her son-in-law and her grandchildren; withholding funds from Buck. So-called "loans" to David were never repaid, and there was never a plan to repay such loans. David has admitted receiving these payments. David has admitted the checks were entitled "Loan."  David has admitted that he has never repaid anything on any of the so-called "loans" made to him.  These were never loans; there were no promissory notes and no stated due dates or interest provided or paid.  David has not stated there was any consideration for the moneys received by him through Barbara's fraudulent acts, nor for the moneys advanced by or through Jobar, directly or indirectly, for the benefit of his medical offices over the years, and continuing to the present.

13.     Plaintiffs claim that Barbara Halio's improper withdrawals, as a faithless servant, are fraudulent "loans" and improper payments to third parties. One example is a professional liability policy premium payment of more than $43,000 wired out of the Holdback for the benefit of David's medical practice.  David cannot deny that he owes repayment of the unrepaid "loans." David does not deny that he has received the benefit of payments alleged herein. It is beyond dispute that the Estate of Joan Buck and Robert Buck have not received a nickel of the unpaid 38% of the Holdback, plus years of unpaid interest on the withheld funds. Whereas David has received and benefitted from payments from and derived through Jobar that total at least $500,000 or more that he admits he has not repaid.

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

14.    The scheme includes mail, wire and tax fraud, as further described herein, and was accomplished with the material assistance and knowledge of Barbara's family members, including David.

15.    As more fully described below, the defendant knew of Barbara's ongoing fraudulent activities, engaged in conduct that substantially assisted Barbara with her scheme, and personally benefitted from transactions that proximately caused financial injury to the plaintiffs.

16.    At all relevant times heretofore mentioned, Jobar was and is a domestic organization, organized on March 27, 1958 in the State of New York, and presently has its offices at 257 Foxhurst Road, Oceanside, New York 11572, in the County of Nassau.  That is Barbara's home.  That same building has, for decades, housed an office for David's medical practice.  David's medical practice has occupied a portion of that building, utilizing a separate entrance in Barbara's home. David has not paid any rent or costs of occupancy, instead relying on his mother's payments for the mortgage, maintenance and upkeep of the building and staffing required, through her direct and indirect payments thereof, for David's benefit and without consideration from David. All such payments related to this medical office constitute fraudulent conveyances received by David without consideration, and with David's knowledge that plaintiffs have not been repaid and were to have been repaid from the funds he instead received. Plaintiffs should have received funds through David's repayment of his "loans" from Jobar.

17.    At all relevant times heretofore mentioned, Plaintiff, Robert Buck, as Executor of the Estate of Joan Buck, was an executor appointed in the County of New York.

18.    At all relevant times heretofore mentioned, defendant David Halio was and is a New York County resident who maintains offices in Manhattan and Long Island.

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

19.     At all relevant times heretofore mentioned, David has received, and continues to receive fraudulent conveyances of funds through and from Barbara to the detriment of plaintiffs, as set forth herein, causing harm to plaintiffs as a result.

20.     By virtue of Barbara's acceptance of her respective offices in Jobar, Barbara was a fiduciary towards Jobar and all of Jobar's stockholders, including plaintiffs, Robert Buck, as Executor of the Estate of Joan Buck and Robert Buck.  Barbara owed them, and Jobar, a duty of faithfully, loyally, diligently, prudently, honestly and carefully conducting the business of Jobar and conserving Jobar's assets. Barbara, as such a fiduciary, was bound to act toward and deal with plaintiffs and Jobar's stockholders with the utmost fidelity, loyalty, care and good faith.

21.     Cake Masters ceased bakery operations in or about 1990 but, until 2006, Jobar stayed an active corporation as it continued to own and lease out the commercial property located at 120 West 72nd Street, New York, New York.

22.     Jobar sold the Property on May 12, 2006 for a sale price of $22,000,000.00, and net proceeds to its shareholders of $20,500,106.

23.     At the time of the sale of the Property, plaintiffs, Robert Buck, as Executor of the Estate of Joan Buck and Robert Buck, owned collectively as stockholders of record thirty-eight (38) shares of common stock of Jobar, representing a thirty-eight (38%) percent ownership interest in Jobar.

24.     Barbara has admitted that, upon the 2006 sale of the Property, Jobar "was solely concerned with winding up its affairs." David, a 12.5% shareholder in Jobar, was well aware that Jobar was no longer conducting any active business after the sale of the building in 2006 and that the multiple "loans" Barbara and David took from Jobar far exceeded the amounts their percentage shares of Jobar would have entitled them to receive.

11

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

25.    Upon information and belief, Barbara was the only authorized signatory on the Jobar banking accounts.

26.    During the period 2006 to present, Barbara, with the assistance of her children, perpetrated a systematic scheme to defraud Buck, and failed in her fiduciary duties to distribute assets and funds which were legally required to be delivered and/or paid to Buck.  Instead, Barbara breached her fiduciary duties owed to Buck.  One blatant example is that she did not honor her word given, in a sworn affidavit, to "pay Robert" out of value obtained from the sale of her vacation home, and instead misappropriated and converted funds and assets for the benefit of Barbara, her children, son-in-law and grandchildren, to the detriment of plaintiffs, without the knowledge, consent and/or authorization of Buck.

27.    Upon the sale of Jobar's 72nd Street building, substantial distributions to Jobar shareholders were made after the 2006 closing, and there remained a $1,500,000 "hold back" of remaining sale proceeds maintained in an interest bearing Jobar money market account at JPMorgan Chase Bank.  As part of her fiduciary duties as President and a Director of Jobar, Barbara was responsible for the protection, proper handling and the distribution of the Holdback that remained after winding down the Jobar operations.  The distribution of the Holdback was to be done proportioned to the percentage each of the Jobar shareholders owned in the company.  Without the knowledge, permission, consent and/or authorization of Buck, but with the aid and assistance of her children, Barbara distributed the holdback disproportionately to her immediate family members, while she misappropriated, misused, converted and/or embezzled the rest of the $1,500,000 holdback of Jobar funds, and moneys derived therefrom, resulting in direct financial harm to Jobar, and the loss to Buck of 38% of the $1,500,000 Holdback, and additional losses.

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2                                              INDEX NO. 161397/2023
                                                          RECEIVED NYSCEF: 11/20/2023

Case 1:23-cv-11217-JGLC   Document 1-1   Filed 12/27/23   Page 14 of 44

28.    After transferring moneys from Jobar to herself and/or to her children or others under her control and direction, Barbara used the funds directly for personal expenditures, transferred the funds to personal bank accounts and/or used the funds for other purchases, such as real estate and home renovations, improvements and costs of ownership, travel, luxury cars, art and other purchases and payments for herself and her immediate family, including her son David's medical malpractice insurance premium, among other things.

29.    Plaintiffs, Robert Buck, as Executor of the Estate of Joan Buck and Robert Buck, individually, commenced a mandamus proceeding in 2016, pursuant to the shareholder's rights of inspection, including but not limited to those rights under applicable common law and New York State Business Corporation Law §624, requiring Jobar Holding Corporation and Barbara Halio, its president, and its other officers, peremptorily to submit all books, records, papers and contracts, including minute books and stock transfer books, and income tax records kept or entered into in its business, to inspection and examination (See, *In the Matter of the Application of Robert Buck and Robert Buck as Executor of the Estate of Joan Buck v. Jobar Holding Corporation, by Barbara Halio, its President to permit inspection of its books and records*, Nassau County, Supreme Court, Index No. 605680/2016.)

30.    In conjunction with the aforementioned mandamus proceeding, Buck was able to secure only a portion of the bank and financial records of Jobar.

31.    The bank and financial records that were secured through those proceedings, although incomplete, reveal that Barbara fraudulently transferred most of the Holdback from Jobar to herself, her family members, including defendant David, or controlled persons, entities and accounts to whom it was fraudulent to transfer the funds.

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM INDEX NO. 161397/2023
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 11/20/2023

32.    Barbara did not act alone in carrying out her scheme. To help her orchestrate her scheme, and to keep Buck in the dark, Barbara had the material assistance of the actions of her children, including defendant David.

### DAVID HALIO AIDED AND ABETTED BARBARA'S FRAUD IN ACCEPTING AND KEEPING FRAUDULENT CONVEYANCES

33.    From at least 2007 to date, David provided assistance to Barbara in her scheme to defraud plaintiffs, and David has, to the present, been receiving, keeping and making false statements as to the fraudulent conveyances he received through Barbara's transfers to him of plaintiffs' funds.  This aided her scheme, which has continued to the present.

34.    David had and has actual knowledge that Barbara was systematically taking money out of Jobar's Holdback account in fraudulent transactions, using it for personal purposes not related to Jobar.  David was aware of checks paid to him, which he knew were falsely called "loans," yet were not treated as loans, and apparently were not intended by Barbara or David to be actually repaid. They were not repaid.  Similarly, transfers made out of the Holdback to non-Jobar accounts without any reasonable explanation were fraudulent conveyances.  For example, David has admitted that he did not repay Jobar's $43,996 payment of his professional malpractice insurance premium that Barbara sent to his insurer from the Holdback.

35.    Having participated repeatedly in the looting of the Holdback account, and being himself a substantial recipient of looted funds, David undoubtedly knew that moneys were being looted from the Holdback.

36.    David was also fully aware that he was not paying interest on any supposed loans, and that no provisions or demands for interest or repayment were ever made by Barbara on behalf of Jobar as its fiduciary.   David facilitated Barbara's looting of the Holdback, and the withholding and diverting of funds owed to plaintiffs, as described above.  He did so by

4886-3663-6818, v. 1

Case 1:23-cv-11217-JGLC    Document 1-1    Filed 12/27/23    Page 16 of 44

receiving proceeds thereof and in facilitating the dissemination of false and misleading information through the mails and by wire, including false and misleading documents and tax filings through and including to the present.

37.    From at least 2008 through the present, David filed false and misleading tax documents with the Internal Revenue Service and local tax authorities, in, among other things, failing to report as income monies David received out of the Holdback that exceeded his 12.5% ownership rights, and other payments forwarded to him by Barbara, such as the payment of his professional insurance policy premium.  These documents facilitated not only Barbara's looting of Jobar, but also apparently resulted in defendant's non-payment of income taxes on the undocumented and unrepaid Jobar "loans" and the hundreds of thousands of dollars of transfers and apparently improper payment of David's expenses by Barbara, including those made directly from or derived from the Holdback.  When deposed, David could not provide an explanation for the "loans," the payment of his professional insurance by Jobar, and other transfers or payments for his benefit by Barbara, while admitting that he knew about the "loans" and went along with what Barbara did over the years in denuding the Holdback and herself of assets.

38.    David has, thus, admitted that tax documents prepared and filed electronically by him, and on his behalf, and through the mails, materially failed to properly report his income. In his recent sworn statements, David admitted that he knew of and received the "loans" from Jobar, and that he never repaid a nickel of principal or interest on the "loans" and the other payments out of, or derived from, the Holdback orchestrated by Barbara.  David participated in Barbara's scheme and he is a direct beneficiary thereof.

39.    Upon information and belief, Turman & Eimer LLP ("Turman") prepared both Barbara's and David's personal and professional tax returns throughout the period of the

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

Holdback and thereafter until the institution of a lawsuit against Turman and Barbara by these plaintiffs in 2017.

40.    Upon information and belief, in filing his personal income tax returns throughout the period after the "loans" from Jobar were received by him by wires and checks sent to him by Barbara, David did not report as income any of the "loans" or other improper distributions of Holdback funds and funds derived therefrom.   In failing to report the "loans" and other distributions and payments for his benefit as income on his income tax returns, David facilitated and enabled Barbara's scheme to loot Jobar and not pay, or fraudulently defer, personal income taxes on their true incomes during the period. David knew or should have known that Barbara was purloining funds from Jobar in the years after 2006 to the present, including in the form of the fake "loans," since, among other fraudulent acts, a number of these "loans" were directly endorsed and deposited by David into his own bank account.

41.    Moreover, David knew that Jobar was, directly and indirectly, paying certain of his expenses, including for his medical practice, and for him.   But the tax filings and the K-1 's filed by David for the years after 2008, and until the present, did not reflect this.   Thus, David masked the "loans," and enabled Barbara to mask the existence of the fake "loans" and other improper transfers of Holdback funds, by his acts, including, but not limited to, the false and misleading tax documents prepared and disseminated after 2008 through the present.

42.    David knew Jobar was supposed to be "winding up its affairs" in 2006.   Yet, in serving as a recipient and beneficiary of numerous fraudulent transfers made by Barbara to him or for his benefit over the ensuing years, even continuing to the present, David knew that what he was reporting in his personal income tax returns was false.   The "winding up" of Jobar's affairs dragged on for over a decade serving no good purpose except to mask their deceptions, their

16

looting and their withholding of funds owed to plaintiffs. After the 2006 sale of its Property, there was no good reason the winding up of this inactive company with no assets or operations other than bank accounts with significant funds available for distribution to shareholders took this long. Jobar still exists, albeit without any assets or operations since 2017. The only reason Jobar was not dissolved was to aid and abet Barbara's hiding what she admitted, in her affidavit filed as Docket Number 169, at paragraph 15 in the Buck v. Barbara Halio Case: "I used the loans taken by me to pay for my daily living expenses…."

43. David knew of Barbara's looting of the Holdback funds as it was happening. According to Barbara's sworn statement in Docket Number 169 above, at paragraph 14: "I withdrew much of the remaining Holdback in loans, starting with my family's share and with their approval." David was a recipient of hundreds of thousands of dollars of the fake "loans" and of other distributions made to him or for his benefit out of the looted funds. David's false income tax filings sent electronically and in the mails, hiding his true income, affirmatively helped Barbara to continue her looting and to conceal her wrongdoing from Buck and from the taxing authorities. David's active personal and professional involvement, including payment of costs of his medical practice continuing to this day, assisted Barbara not only in the looting, but also in her subsequent continuing efforts to denude herself of her assets so as to frustrate her creditors, particularly these plaintiffs, to whom she admits she owes a seven figure amount.

44. Barbara now claims to have no material income or assets other than her Oceanside, New York home and funds deposited in a law firm's escrow account, both her home and the escrow account being held under court order for the benefit of the plaintiffs to secure any judgment they may obtain against her.

17

Case 1:23-cv-11217-JGLC    Document 1-1    Filed 12/27/23    Page 19 of 44

45.     David has maintained his medical offices on a cost-free basis in the Oceanside home for the years relevant to the instant claims.

46.     David admitted receipt of the hundreds of thousands of dollars of Jobar checks marked "Loan," and he admitted that he has not repaid any principal or interest on any of the checks marked "Loan" that he received from the Holdback. David admitted the receipt of other amounts that constitute fraudulent conveyances from the Holdback and from Barbara, and the free rent for his medical practice.  This constitutes wrongful conduct by defendant, in concert with, and in aid of Barbara's scheme to loot Jobar and to withhold payment she admits is owed to Buck; wrongful conduct continuing to this day.

47.     David's admission that he has never paid back any principal or interest on the "loans" nor on any of the fraudulent conveyances described herein, all support plaintiffs' claims against David of unjust enrichment.

48.     David acknowledged there are no documents or evidence of the "loans," other than that the checks he received for Jobar state the word "Loan" and there appear to be no documents supporting Barbara's wire and other transmissions and payments of funds to David, to his creditor or to pay costs and expenses from which David derived direct benefit, including payments made to this day.

**FIRST CAUSE OF ACTION**

(Unjust Enrichment)

49.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 48 above with the same force and effect as though fully set forth at length herein.

50.     Barbara and David have admitted facts showing that, from 2008 to the present, Barbara perpetrated a systematic scheme to defraud plaintiffs, which included fraudulent "loans"

18

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

and other transfers of funds to or for the benefit of the defendant.  David admitted that he received and retained the "loans," that he has not repaid a penny of principal or interest, and that he received other payments and benefits from payments made by Barbara.

51.    These payments to David and payments for his benefit were from the Holdback account or otherwise derived from funds owed to and/or promised to the plaintiffs, and were not payments made in exchange for fair consideration. Certain fraudulent conveyances of payments by Barbara for the benefit of defendant's medical office operations continue to this day.

52.    Defendant has obtained benefits which in equity and good conscience should be paid to the plaintiffs.

53.     Until recently, plaintiffs were not aware of defendant's past and continuing beneficial receipt of certain payments that were made to him or for his benefit without adequate consideration, nor were plaintiffs aware until long after the fact that there were hundreds of thousands of dollars of undocumented and unrepaid "loans" made to defendant of funds owed to plaintiffs, nor that transactions Barbara made with defendant, or instructed be made, were without adequate consideration being provided by defendant and at a time when she and Jobar were insolvent.

54.    Plaintiffs were unaware of many of the relevant and material facts regarding transactions and fraudulent conveyances that defendant had arranged with Barbara, or that defendant had repaid nothing, and that their scheme continued to the present, until David's January 19, 2023 deposition in the Buck v. Barbara Halio Case.

55.     Plaintiffs were unaware that Barbara had made, and continued to make, payments of funds and unrepaid loans to defendant when she made them in 2020, and were unaware until this year that Barbara continued to make payments for defendant's benefit, that serve to diminish

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2          Case 1:23-cv-11217-JGLC    Document 1-1    Filed 12/27/23    Page 21 of 44
INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

her assets to this day; fraudulent conveyances paid by Barbara to support defendnat and the operations of his medical practice. Material facts, including defendant's failure to repay anything and his receipt of beneficial payments from Barbara through the present day, were first learned by plaintiffs at David's January 19, 2023 deposition, conducted in the Buck v. Barbara Halio Case.

56.     Without the knowledge, permission, and/or authorization of Buck, the above actions by defendant, acting in concert with Barbara, resulted in direct financial harm to Buck, to the equitable owner of 38% of the Holdback funds, and to the promisee of repayment by Barbara, who instead transferred to defendant, without adequate consideration, hundreds of thousands of dollars she owed to Buck, thus denuding herself of assets owed to plaintiffs.

57.     After transferring money from Jobar to Barbara and/or for the retention or improvement of appreciated assets under the control and direction of Barbara, she paid monies to defendant or used the funds directly for defendant's benefit, paying his personal expenses and to pay his creditor, among other uses.

58.     Defendant received misappropriated funds by participating in Barbara's scheme, funds held for the benefit of, and promised to be paid to, plaintiffs. This occurred without the knowledge, permission, consent and/or authorization of plaintiffs, and, in most incidents without the proper corporate actions, authorizations and approvals. In so doing, defendant has been unjustly enriched.

59.     As a proximate result of defendant's actions in concert with and in support of Barbara's fraudulent activities as described herein, plaintiffs have sustained, and will continue to sustain damages, in an amount to be proven at trial, but in no event less than $1,500,000.

4886-3663-6818, v. 1

## SECOND CAUSE OF ACTION

### (Aiding and Abetting Barbara's Breaches of Fiduciary Duties)

60.     Buck repeats and re-alleges each and every allegation contained in paragraphs 1 through 59 with the same force and effect as though fully set forth at length herein.

61.     Jobar Holding Corporation is a small family-owned corporation organized on March 27, 1958 to purchase the commercial property located at 120 West 72nd Street, New York, New York where the family bakery known as Cake Masters was going to operate.

62.     Barbara become sole president of Jobar upon the death of her sister, Joan Buck, in 2005.

63.     Barbara has also been a Director of Jobar since at least 2005.

64.     By virtue of Barbara's acceptance of her respective offices in Jobar, she was a fiduciary towards Jobar's shareholders, including Buck, and owed them, a duty of faithfully, loyally, diligently, prudently, honestly and carefully conducting the business of Jobar and conserving Jobar's assets.  As a fiduciary, Barbara was bound to deal with Jobar shareholders, the Buck plaintiffs, and with Jobar, with the utmost fidelity, loyalty, care and good faith.

65.     After the 2006 sale of the Jobar Property, and the distributions made to the Jobar shareholders, Barbara's sole responsibility was maintaining and distributing the Holdback and closing the corporation.  She failed to perform her responsibilities, instead fraudulently denuding the Holdback for her own personal benefit and for the benefit of her children. From 2008 to the present, Barbara has perpetrated a systematic scheme to defraud plaintiffs, failed to distribute 38% of Jobar assets and funds as legally required and promised to be paid to Robert Buck, and misappropriated and converted assets and funds of Jobar which she diverted for her own benefit,

21

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2
INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

and/or for the benefit of members of Halio's immediate family, most prominently defendant, continuing to the present.

66.    Barbara accomplished these breaches of her fiduciary duties owed to plaintiffs with the cooperation and assistance of defendant, whom, aside from Barbara, was the primary beneficiary of Barbara's breaches of her fiduciary duties to the plaintiffs, including, but not limited to, her duties to maintain, safeguard and pay to plaintiffs the funds that were held or owed to plaintiffs.

67.    Upon information and belief, continuing to the present, defendant has received, without adequate and fair consideration, as much as one million dollars of payments and benefits from Barbara's breaches of her duties owed to plaintiffs to maintain and repay funds owed to plaintiffs.

68.    Defendant participated in, and he has directly benefited from, Barbara's multiple breaches of her fiduciary duties owed to plaintiffs as described herein.  Defendant conspired with Barbara to disguise their transactions as fake "loans," or payments with fair consideration that did not exist and other deceptive practices.  The "loans" defendant received from Jobar were never intended to be repaid, no interest or maturity dates were provided for, and defendant admits that neither interest nor principal on the "loans" were ever paid by him.

69.    Upon information and belief, after Barbara transferred money from the Jobar account to herself, and/or to those under her control and direction, including defendant, defendant received, kept and failed to repay the looted funds, or any other fraudulent conveyances, using them for his personal expenses and to pay his creditors, among other things.  At his January 19, 2023 deposition, defendant blithely acknowledged he received, kept and failed to repay the "loans" and other payment, claiming he never asked Barbara to send them.

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2
INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

70.    As a proximate result of defendant's actions in aiding and abetting Barbara's breaches of her fiduciary duties to plaintiffs, plaintiffs have sustained, and will continue to sustain, substantial damages, in an amount to be proven at trial, but in no event less than $1,500,000, together with legal fees of no less than $500,000, plus costs and interest.

### THIRD CAUSE OF ACTION

### (Civil RICO)

71.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 70 above with the same force and effect as though fully set forth at length herein.

72.    Barbara and David, acting pursuant to agreements and understandings in transactions over a period of  more than a decade, with certain activities continuing to the present, including, but not limited to repeated fraudulent transactions in which Barbara transferred funds using the mails and wire, for the purpose of hiding her and David's incomes from income tax liability, and as late as 2020 to divest and hide her assets, including, without limitation, transferring assets owed to plaintiffs to her children's possession, such as is described in paragraph 3 above,  so as to denude herself of assets reachable by plaintiffs.

73.    The transactions complained of hereinabove, each caused losses to plaintiffs, all in amounts of significantly more than $5,000 each over several different one-year periods in the past two decades and through the present day.  David and Barbara engaged in substantially more than two acts in the past ten years constituting a pattern of racketeering with acts of mail fraud, wire fraud, tax fraud, and other tortious acts.  Barbara engaged in thefts by deception and thefts by conversion, and David assisted her, receiving and keeping misappropriated funds and concealing the transactions and their true nature, such as is described in paragraph 3 above.  With David's assistance, Barbara continued her fraud and other predicate acts to the present with

23

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2
INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

regard to the looting, transferring and hiding of assets to the detriment of creditors, as further detailed above and below. The acts of Barbara and David include, but are not limited to, the following predicate acts of racketeering as defined in 18 U.S.C. §1962 (c), in New York Penal Code Article 460, et seq., in 18 U.S.C. §§1343 and 1951, and in other relevant statutory provisions. Barbara, acting in concert with David and others, utilized their positions to commit or assist in committing tortious acts, and breached, or assisted in the breaching of, fiduciary responsibilities to Jobar, to Jobar shareholders and Buck, through their associating together as the enterprise through and including to the present day, through the use of materially and intentionally false statements sent through the U.S. mail and electronic transmissions sent in interstate transmissions, including in and to the States of New York, California and in and to Washington, D.C.

    (a)    Mail fraud:

    (i)    Barbara and David violated 18 U.S.C. §1341, the mail fraud statute, through their scheme to defraud Jobar, the Estate of Joan Buck and Robert Buck using false and fraudulent statements they have made, directed or assisted in supporting, in tax, estate and corporate reports and filings purportedly for, on behalf of and in furtherance of Barbara's fiduciary duties to Jobar, the Estate of Joan Buck, Robert Buck and to the Estate of Kitty Buck. These include fraudulent Jobar bank transactions and corporate and tax reports and filings and insurance reports and filings as further specifically alleged hereinabove and below, within the last ten years and in a pattern extending over nearly two decades. As to Jobar, this pattern commenced on or about 2008, continuing to the present day, through communications placed in authorized depositories for mail to be sent or delivered. These mailings include, but are not limited to, tax reports and other documents furthering their scheme that were sent through the

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2
INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

mails by, or on behalf of, Barbara and David in each year on and after 2008 through at least February 2017 as to Jobar, and to the present as to their personal filings, including, but not limited to, those described above and elsewhere herein.

    (b)    Wire fraud:

    (i)    Barbara, with David's aid and assistance, acted in violation of 18 U.S.C. §1343, the wire fraud statute, in furtherance of their scheme to utilize Jobar by means of false pretenses which were contained in bank, corporate and tax documents repeatedly transmitted by means of wire in interstate commerce which David and Barbara knew contained false and fraudulent statements for the purpose of executing their scheme of using Jobar's continued corporate existence after 2008 for their fraud, to the detriment of plaintiffs. These include, but are not limited to transmissions by, between, for or from Barbara and David of Jobar tax returns and tax filings and K-1's in the years 2008 through at least February 2017, e-mails with attachments sent for and to Buck, to the Internal Revenue Service and local taxing authorities in 2008 up to and including the present, and wired payments to David, all in furtherance of their fraud and other wrongs alleged herein, including depriving the entitlements of the Estate of Joan Buck and Robert Buck to 38% of Jobar assets distributed to or for the benefit of Jobar shareholders, but which were not distributed to the Estate of Joan Buck and Robert Buck, all in connection with the fraudulent "loan" scheme and fraudulent transfers set forth above, including in paragraph 3 above, and below.

    (c)    Bank fraud:

    (i)    Barbara continued to control and engage in transactions in the bank account assets of Jobar through at least 2017. Barbara, with David's assistance, made false statements to the JP Morgan Chase Bank Jobar account custodians, to Jobar shareholders, and to

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
INDEX NO. 161397/2023
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 11/20/2023

taxing authorities, and through omissions, in failing to state to them the true facts, all for the purpose of advancing the "loan" scheme and other fraudulent conveyances, such as described in paragraph 3 above, and to hide assets from plaintiffs. In the instances of the numerous unexplainable "loan" transactions between Barbara and Jobar, and between David and Jobar, as well as more recent transactions described herein, Barbara, as an officer and director of Jobar, acting with the knowing aid and assistance of David, engaged in numerous fraudulent banking transactions, including in the accounts and acts described herein, all to the detriment of plaintiffs, in "loans" denuding Jobar of all of its "holdback" funds, and in transactions designed to denude Barbara of assets. 30% of those holdback Jobar funds, Barbara acknowledges, were the property of the Estate of Joan Buck and 8% the property of Robert Buck. Barbara's material omissions included her failure to disclose that she lacked the proper permission and authorization required for removal of the "Holdback" funds. The "loan" transactions were never approved of by plaintiffs. They were fraudulently effected by Barbara not first informing Buck of the proposed "loans" she effected from Jobar to herself, and by Barbara and David not preparing, distributing or informing the bank, and Buck, of the facts of the "loans" or of any terms of the "loans," for example, purpose, interest rate, duration and repayment. The funds were taken by Barbara and by David with none of these essential terms that would be required of anyone taking a loan, let alone a fiduciary responsible for the holding, management and proper distribution of the Holdback.

   (ii) In much of this, David was a beneficiary without whose aid and cooperation Barbara's scheme would not have been accomplished. David has been both an enabler and a facilitator, including, but not limited to permitting, facilitating, receiving, keeping and not repaying fraudulent conveyances he received as a result of Barbara's fraud, and filing

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

false reports with taxing authorities regarding the purloined funds and unreported income. These acts by David supported and allowed for Barbara to hide and continue her "loan" scheme, the plundering of the Holdback funds, and fraudulent conveyances continuing to the present. The scheme included destroying plaintiffs' rights and interest in the Holdback, diverting Barbara's assets so that they would not be available to plaintiffs to recover their losses at her hands, and hiding payments and assets. These were the purposes behind Barbara's and David's liquidation of the Jobar bank accounts and the fraudulent conveyances described herein, in which David assisted and from which he directly benefited. That is why they acted illegally, without informing the banks, Jobar or Buck, all in violation of 18 U. S. Code §1344, and with the knowing assistance, cooperation and participation of David.

**THE ENTERPRISE**

74.    Barbara, acting in concert with David and others, joined in association to use Jobar and the Estate of Kitty Buck as an enterprise which they both used to obtain funds from Jobar, to aid Halio in her fraudulent acts, and to cause plaintiffs losses through the present and Buck's loss of assets of the Kitty Buck Estate, diverted and hidden to this day. Barbara sought to obtain and did obtain by deceit, by threat, fear and under color of official right, certain material benefits to which she was not legally entitled, all in furtherance of a plan to benefit herself, with the aid of David and others, to obtain, transfer and hide or destroy the value or availability of assets to which plaintiffs were entitled, or for which certain plaintiffs had an expectancy as beneficiaries of the fiduciary positions Barbara held as an officer and director of Jobar, and as Executor of the Estate of Kitty Buck.

75.    Jobar is a privately held shell company, that operated a bakery business in Manhattan until 1990, and closed the operating business entirely when it sold the Property in

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2
INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

2006, several years after the 2001 death of its founder and CEO, Kitty Buck, the mother of Defendant Barbara Halio and of Joan Buck, and the grandmother of Robert Buck. Halio and Joan Buck were named co-Executors of the Estate of Kitty Buck and were each the equal beneficiaries of the substantial majority of the Estate of Kitty Buck, including 50/50% ownership and control of Jobar. Joan Buck died in 2005, and Robert Buck is the Executor of her estate.  From the 1990's to 2005, Jobar continued to own and rent out the building in which the bakery had been located, 120 West 72nd Street in Manhattan.  In 2006, Jobar sold the building for $22 million dollars, and, by 2008, all but $1.5 million of the net proceeds of that sale had been distributed to the Jobar shareholders, proportionate to their percentage of ownership interests in Jobar.

76.    The Estate of Kitty Buck, filed in New York County Surrogate's Court on her death in 2001 at the age of 93, included Jobar stock, two apartments and Florida real estate lots, IBM stock, jewelry, art, furnishings and other personal items.  Joan Buck and Barbara were named co-Executrices. However, because Joan fell deathly ill, Barbara soon took over the managing of the Kitty Buck Estate, and Barbara appropriated to her dominance and control portions of the Kitty Buck Estate properties and personal effects to which she was not entitled, including, without limitation, assets of Jobar, and which she has secreted, transferred and maintained away from the rights of the Buck plaintiffs.

77.    Robert Buck has made requests of Barbara to be informed of the whereabouts of the Jobar Holdback funds, undistributed properties and assets of the Kitty Buck Estate, and to this day Barbara has stalled, avoided, stonewalled and refused to pay Robert as she promised, and refused to account for and deliver Jobar assets and assets of the Kitty Buck Estate which were to be shared as provided for in the Kitty Buck will.

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM

NYSCEF DOC. NO. 2

INDEX NO. 161397/2023

RECEIVED NYSCEF: 11/20/2023

78.    After the Holdback of $1,500,000 was created in 2006, Barbara used the opportunity and control provided by her fiduciary position as Executor, as an officer and director of Jobar, as signatory on the Jobar bank accounts, and through her relationship with David, to treat the assets and funds entrusted to her as her own, instead of distributing them to the Estate of Joan Buck as to 30% of the Holdback, and Robert Buck as to 8% based upon their ownership of those percentages of Jobar equity, and the 50% share Joan owned in the Estate of Kitty Buck. Instead, Barbara took most of the Holdback as "loans" to herself, and transferred most of the balance to, or for the benefit of, David, including in transactions specifically described in paragraph 3 above. Acting in concert as to the fraudulent "loans," Barbara and David have each failed and refused to return to the Jobar account any of the purloined funds, including funds taken through other fraudulent conveyances.  Barbara and David, to this day, continue to knowingly falsely report Barbara's $1,140,975 of fake "loans," David's fake "loans" and other transfers he received from Barbara and from Jobar to the taxing authorities, all in continued knowing support of the false and fraudulent nature of the "loans" and the other transactions described herein.  None of the "loans" were reflected in promissory notes, no interest was provided for nor was any interest or principal repaid for these unsecured personal "loans" and no documented maturity date shown anywhere for repayment to Jobar.  Barbara transferred money out of the Jobar Holdback bank account, and subsequently, out of her own account, with the cooperation of David, and with his knowledge that hundreds of thousands of dollars of transfers he received or that were made for his benefit as described in paragraph 3 above and referenced elsewhere herein, were improper, being disproportionate dispersals to shareholders and fraudulent conveyances to David, including to the present.  David has failed and refused to

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM

NYSCEF DOC. NO. 2

INDEX NO. 161397/2023

RECEIVED NYSCEF: 11/20/2023

Case 1:23-cv-11217-JGLC    Document 1-1    Filed 12/27/23    Page 31 of 44

provide any explanation and failed and refused to return the fraudulent conveyances or to repay the "loans."

79.    The "loans" are the acts of a faithless servant, and the fraudulent conveyances are acts to defraud creditors, all in breach of Barbara's fiduciary duties, and David's obligation not to receive and keep the benefits of the fraudulent conveyances he knew to be improper.  They constitute a pattern of mail fraud, wire fraud and tax fraud.  Barbara and David have effectively engaged here in a pattern of theft by deception: obtaining the Jobar Holdback funds and the fraudulently conveyed funds by deceitful means or artful practice, with the intention and the effect of depriving plaintiffs of their property, the Holdback funds, and other assets described hereinabove and below.

80.    In furtherance of this scheme and pattern of racketeering, Barbara and David utilized the mails and wires in interstate commerce, and by omissions and failure to inform and obtain knowing consent to the numerous wrongful appropriations of funds and property effected by them, they have retained dominion and control over the purloined funds and the withheld and the fraudulently conveyed or hidden assets.

81.    Barbara and David, acting in concert for years, in part by sending and receiving purloined funds, and by filing and sending through the mails false and misleading tax returns and K-1 Forms filed on their instructions and approvals. K-1 Forms are annual reports filed with the IRS by entities, including Sub-Chapter S corporations such as Jobar.  The K-1's serve as official reports to the IRS and to shareholders, such as Buck, as to the individual shareholder's "Share of Current Year Income, Deductions, Credits, and Other Items."  K-1's are sent to shareholders with the intention that they rely on them to accurately prepare and report on their own taxable income and deductions to the IRS.  Barbara and David have admitted in sworn statements that

30

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

Case 1:23-cv-11217-JGLC    Document 1-1    Filed 12/27/23    Page 32 of 44

they have acted improperly with regard to Barbara's fiduciary duties as President and Director of Jobar, and Executor of the Estate of Kitty Buck, having been entrusted with the care and safe keeping of assets including, but not limited to, $1,500,000 of Jobar Holdback funds for the benefit of the Jobar shareholders. Those funds are gone to the coffers of Barbara and David, and their creditors, spent for their own benefit and purposes, causing losses to the plaintiffs. Barbara, with David's connivance and, as to himself, active participation, acted improperly in furthering the scheme by supervising and reporting materially false information, under-reporting their incomes to the IRS and local taxing authorities on official annual income and tax report documents which were filed by transmitting them in interstate commerce in the mails and over the wire to the present.

82.  The Estate of Joan Buck, owner of 30% equity in Jobar and Robert Buck, owner of 8% of Jobar equity, were entitled to notice of, and to approve of, Barbara and David taking "loans" and other transfers out of their 38% of the $1,500,000 Holdback funds, and other transactions, such as Barbara's fraudulent transactions with David, continuing to the present, contributing to losses of plaintiffs and their inability to collect funds owed to them. By the use of deceitful means or artful practice, with the aid of David, Barbara and David took and maintained wrongful possession and wrongfully retained plaintiffs' funds that had been entrusted to her management as an officer, director and bank signatory of Jobar for those funds, and as the recipient of further funds Barbara promised to repay, but instead secretly transferred away, including to David. Barbara and David disguised and hid from plaintiffs the wrongful taking as "loans" by not informing Buck that they were not truly loans, as evidenced by not taking steps to evidence them as loans, such as through promissory notes with provisions for interest and terms

31

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM INDEX NO. 161397/2023
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 11/20/2023

Case 1:23-cv-11217-JGLC Document 1-1 Filed 12/27/23 Page 33 of 44

for repayment, let alone satisfying the requirement for corporate documents approving such "loans."

83.     David and Barbara, through the preparation, filing, mailing and electronic communications containing materially false, fraudulent and misleading statements and information, avoided personal income tax on more than $1,500,000 of undeclared personal income, continuing to the present.  They did this by, among other things, falsely declaring each year, to the present, that the funds looted from Jobar were "loans," as well as other loans and gifts falsely labeled as such in transactions with others. These also include "loan" and other fraudulent conveyances by Barbara to David, such as gifts and other transactions, including, but not limited to a fraudulent conveyance "loan" in 2020, and fraudulent conveyance transactions with David, continuing through at least 2020 and thereafter, all to the detriment of and losses by plaintiffs.

84.     Shortly after having received Amended 2014 K-1's from the personal accountants for Barbara and for David, who were also the accountants for Jobar, in a March 11, 2017 telephone conversation between Robert Buck and Mark A. Bernstein ("Bernstein"), the Turman & Eimer, LLP partner in charge of the tax preparation personal accounts of both David and Barbara, and also of Jobar, Bernstein admitted that, for some years, Barbara had acted improperly when she disproportionately distributed holdback funds, primarily to herself, but also to or for her son, David and others.  In that call, Bernstein did not claim that Barbara's actions were proper; he acknowledged they were not. Bernstein told Robert that Jobar K-1's he had prepared regarding the Estate of Joan Buck and Robert Buck, particularly for the 2014 tax year, and that were distributed for 2014, were incorrectly prepared and were "mistakes."  Bernstein explained that the numbers attributed to the Estate of Joan Buck on the 2014 K-1 ($390, 000) and

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

on the Robert Buck 2014 K-1 ($104,000) represented moneys that Barbara Halio had misappropriated to herself from the Jobar Holdback. Bernstein admitted that it was a mistake; that it was wrong and needed amending. David aided the scheme by knowingly participating in and benefiting from the scheme through his own receipt of falsely reported "loans" and his own false and misleading tax filings, continuing to the present, sent through, and facilitated through the use of, the mails and electronic communications, and filed with the Internal Revenue Service and local taxing authorities in and before 2015, and continuing to the present.

**Predicate RICO Acts**

85.    In and for each of the tax years throughout the time period from at least January 2008 to the present, the defendant, acting in concert with his mother, Barbara, supported, caused to be created, filed and submitted materially false and/or fraudulent tax returns and Form K-1's, including to the plaintiffs, to the Internal Revenue Service of the United States and to local taxing authorities through the use of and/or knowledge of the use of United States mails and wires, and each of David and Barbara supported, aided and abetted the other in fraudulent conveyances such as those described in paragraph 3 above, and in creating, filing and submitting such falsified materials to the income taxing authorities.   These acts constitute a number of related predicate acts committed by David and Barbara over a substantial period of time.

Specific predicate RICO acts alleged herein include the following:

(i)    The use of false statements and omissions in connection with reporting David's "loans" and Barbara's "loans" from Jobar, which they transmitted electronically and by mail, falsely reported in the K-1's Jobar issued each year from at least 2008 through 2017, and in their personal income tax filings to this date.   Their plan was for David and Barbara to avoid paying income tax on the distributions by calling them "loans."

4886-3663-6818, v. 1

(ii)      The use of the mails and wire in interstate commerce, in false filings made and sent to the Jobar shareholders each year from 2008 and thereafter to the present, wherein David supported Barbara's failure to properly report his "loans" and her "loans." For example:

(a)      The 2014 K-1, and tax reports sent to the Estate of Joan Buck using the mails and wire in interstate commerce filings for Jobar with the Internal Revenue Service, directed by Barbara, prepared by Bernstein, falsely portrayed the "loans" Barbara took from Jobar as "Items affecting the [Estate of Joan Buck's] shareholder basis" in the materially untrue amount of $390,021, when the true amount was zero, and the true information was withheld from taxing authorities by Barbara, with David's aid and active participation and support through the present.

(b)      The 2014 K-1 sent to Robert Buck using the mails and wire in interstate commerce filings for Jobar with the Internal Revenue Service, directed by Barbara and prepared by Bernstein, falsely portrayed the "loans" that David and Barbara took from Jobar as "Items affecting [Robert Buck's] shareholder basis" in the materially untrue amount of $104,006 when the true amount was zero, and the true information was withheld from Robert Buck by Barbara, aided and abetted by David's active participation and support using false reports sent through the mails and electronically in interstate commerce through the present.

(c)      The Jobar annual tax returns that Barbara directed be prepared and disseminated by Bernstein each year after 2007 through 2017, sent to Jobar shareholders each year, including the Estate of Joan Buck and Robert Buck, using the mails and wire in interstate commerce, filed with the Internal Revenue Service, falsely reported the "loans" to David described in paragraph 3 above, among other falsely reported transactions, and falsely reporting the Jobar "loans" to Barbara as assets of Jobar for years after 2008 through 2017, even after

34

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM

NYSCEF DOC. NO. 2

INDEX NO. 161397/2023

RECEIVED NYSCEF: 11/20/2023

when Barbara had claimed she could not repay the loans; and David has failed and refused to repay them. This was and is a material part of the scheme to help David and Barbara avoid paying personal income taxes they owed to the government by false personal income tax filings transmitted to the IRS and local taxing authorities through interstate wire transmission in the years between 2008 to the present, after they had purloined the funds from the Holdback and sources derived therefrom.

(d)    There was a continuing course of conduct of violative and disproportionate distributions made by Barbara to David and to herself out of the $1,500,000 plus interest in the Jobar Holdback that Barbara and David had steadily removed, 38% of which was held in trust for the Estate of Joan Buck and for Robert Buck.  This was year after year theft, hidden from the plaintiffs by disguising them as "loans," such as those specifically described in paragraph 3, above, when there was no such agreement between David and Jobar or between Barbara and Jobar shown in any writings indicating interest terms, purpose of loans, repayment terms, and other considerations normally present when one party loans money to another, particularly in a corporate setting, with a number of independent shareholders.

86.    As a proximate result of David's actions made in concert with Barbara's actions, plaintiffs have sustained, and will continue to sustain damages, in a total amount to be proven at trial, but in no event less than $2,500,000, and $600,000 in legal fees.

### FOURTH CAUSE OF ACTION

(Civil RICO Conspiracy Against David)

87.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 86 above with the same force and effect as though fully set forth at length herein.

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

Case 1:23-cv-11217-JGLC    Document 1-1    Filed 12/27/23    Page 37 of 44

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

88.   18 U.S.C. §1962(d) allows for a claim based upon the ongoing conspiracy between David and Barbara, as more fully set forth above and below.  David and Barbara continue to maintain their fraudulent claims regarding the removal of $1,500,000 plus interest from the Jobar Holdback, and continue to divert and hide assets to which the Estate of Joan Buck has equitable title, and assets that are owed to and were promised to Buck, including through deceptive and fraudulent transfers of funds and properties alleged in paragraphs 3, 16, 28, 34, 37, 42, 73, 83, 84 and 92.  Thus, David, acting in concert with Barbara, has caused, and they are causing, injury to and loss of plaintiffs' properties as alleged herein, in their ongoing support of Barbara's dominion over wrongfully obtained and improperly transferred and held funds, while stating false and fraudulent reasons for their actions, all in aid and support of Barbara's admitted breaches of her fiduciary duties as officer and director of Jobar and as Executor of the Estate of Kitty Buck.  The false and fraudulent statements and acts of David and Barbara, aided by Bernstein, furthered the enterprise arrangement that Barbara and David made and have effected through this lengthy pattern of associated activity, continuing to the present, for their personal benefits and causing losses to the plaintiffs, including the utilization of Barbara's position as Executor of the Estate of Kitty Buck to effect, continue and exacerbate the Buck losses.

89.   David and Barbara, as set forth above, all with regard to their fraudulent acts in connection with the looting of assets and fraudulent processing of Jobar transactions, and in the Estate of Kitty Buck, caused losses as to assets owed to be held for and paid to Buck, continuing to the present.  These include assets that devolved upon, or should have devolved upon, the Estate of Joan Buck, and the diversion and withholding of assets held for and owed to Robert Buck, and the rights, funds and property asserted hereinabove, including but not limited to the Holdback funds, tax overpayments, property and other rights.  David's assistance to and benefit

36

from Barbara's thefts, removal and withholding of Kitty Buck Estate assets and those owed to Robert, constitute a pattern of racketeering, in material portions of which David participated and benefited personally. This pattern of behavior and transactions, included activities involving and affecting interstate and banking commerce caused losses to the plaintiffs.

90. As a proximate result of these actions that David committed in concert with Barbara, plaintiffs have sustained, and will continue to sustain damages, in an amount to be proven at trial, but in no event less than $2,500,000, and at least $600,000 in legal expenses and costs in protecting plaintiffs' interests, the Kitty Buck Estate and in recovery of the fraudulent conveyances.

### FIFTH CAUSE OF ACTION

#### (Fraud)

91. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 90 above with the same force and effect as though fully set forth at length herein.

92. David and Barbara have obtained benefits and funds, causing Jobar losses and causing Buck losses of 38% of the $1,500,000 plus interest Holdback amount, and Buck the loss of assets of the Estate of Kitty Buck, by their fraudulent acts and fraudulent statements in filed tax reports and other documents as alleged in paragraphs 3, 16, 28, 34, 37, 42, 73 and 84, and as set forth in this paragraph 92 below. Their fraudulent acts and materially false statements include:

(i) The use of false statements and omissions in connection with David's "loans" and Barbara's loans from Jobar, including those set forth in paragraph 3 above, which Barbara caused to be prepared and transmitted electronically and by mail, falsely reported in the K-1's and in Jobar's and her tax returns issued through at least 2017 in and for at least the years

4886-3663-6818, v. 1

INDEX NO. 161397/2023
NYSCEF DOC. NO. 2     Case 1:23-cv-11217-JGLC     Document 1-1     Filed 12/27/23     Page 39 of 44  RECEIVED NYSCEF: 11/20/2023

2008 through 2015, and that David and Barbara caused to be issued and falsely reported in their own personal tax returns to the present. Their scheme is that, in preparing and filing false tax documents, Barbara and David avoid paying income tax on the distributions by calling them "loans" or gifts, or just failing to identify and report the transactions and transfers of funds at all, to this day.

(ii)     Using the mails and wire in interstate commerce, to transmit Jobar tax report documents filed with the Internal Revenue Service and related documents that Barbara directed be sent by Turman & Eimer LLP to the Jobar shareholders each year, including in and after 2008 through 2015, in which the "loans" to Barbara and David by Jobar were reported falsely and in a materially misleading manner. For example:

(a)     The 2014 K-1 sent to the Estate of Joan Buck using the mails and by wire in interstate commerce filings directed by Barbara to be filed with the Internal Revenue Service, falsely portrayed the "loans" Barbara took from Jobar as " Items affecting the [Estate of Joan Buck's] shareholder basis" in the materially untrue amount of $390,021 when the true amount was zero, and the true information was withheld by Barbara until 2017 and thereafter.

(b)     The 2014 K-1 sent to Robert Buck using the mails and by wire in interstate commerce filings directed by Barbara to be filed with the Internal Revenue Service, falsely portrayed the "loans" Barbara took from Jobar as " Items affecting [Robert Buck's] shareholder basis" in the materially untrue amount of $104,006 when the true amount was zero, and true information as to Jobar "loans" was not told to Robert Buck until after 2017.

(c)     The Jobar annual tax returns that Barbara directed be prepared and disseminated each year after 2006 through 2017, using the mails and wire in interstate commerce, filed with the Internal Revenue Service and sent to Jobar shareholders each year,

38

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2
INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

including the Estate of Joan Buck and Robert Buck, falsely reported the "loans" to Barbara as assets, even after when Barbara had claimed she could not repay the loans; and the returns did not at all report the outstanding and unpaid "loans" and transfers to David for his benefit, including those set forth in paragraph 3 above. These fraudulent acts were done by Barbara, with David's cooperation and assistance as to his own "loans," to assist David and Barbara in misreporting their incomes on their tax returns so as to avoid paying personal income taxes they owed to the government through false personal income tax filings transmitted to the IRS through interstate wire transmission in the years between 2008 to the present, after they purloined the funds from Jobar that they continue to withhold from plaintiffs to this day.

(d)   The violative disproportionate distributions to Barbara and David by Jobar out of the $1,500,000 Jobar Holdback and other funds derived therefrom, that Barbara and David had steadily purloined from the Holdback, and in subsequent transactions, 38% of which were held in trust for the Estate of Joan Buck and for Robert Buck. These were accomplished, in part, in year after year purloining of funds, hidden from the plaintiffs by disguising them as "loans" when there was no loan agreement between David and Jobar or between Barbara and Jobar shown in any writings indicating interest terms, purpose of loans, repayment terms, and other considerations normally present when one party loans money to another, particularly in a corporate setting, with a number of independent shareholders, regardless of whether or not they are related to one another.

93.   The reliance by Buck on the Jobar documents and tax filings, reports and documents that Barbara caused to be provided to Buck was reasonable and justifiable under the circumstances. Barbara intended that Buck rely thereon, and David was aware that the shareholders, including Buck, were reliant upon the information reporting Jobar operations each

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM          INDEX NO. 161397/2023

NYSCEF DOC. NO. 2          Case 1:23-cv-11217-JGLC     Document 1-1     Filed 12/27/23     Page 41 of 44

RECEIVED NYSCEF: 11/20/2023

year that they received at Barbara's direction.  David was aware that the information regarding his "loans," and information withheld from Buck as to David's "loans" were similarly relied upon by Buck.  David knew the statements and omissions and misrepresentations regarding his "loans" from Jobar contained in or omitted from the documents, were false. Buck reasonably relied on Barbara's statements and misrepresentations, which were supported by David's actions in support of his own "loans" to Buck's detriment, and Robert Buck and the Estate of Joan Buck have lost the entirety of their 38% ownership interest in the Jobar Holdback funds, and other assets, as a direct result of the fraudulent acts of Barbara, aided and abetted by David as described herein.

94.    As a proximate result of Barbara's actions, aided and abetted by David as set forth hereinabove, Buck has sustained, and will continue to sustain damages, in an amount to be proven at trial, but in no event less than $2,000,000, together with legal fees in the amount of no less than $600,000, plus costs and interest.

### SIXTH CAUSE OF ACTION

#### (Aiding and Abetting Fraud)

95.    Plaintiffs repeat and re-allege each and every allegation contained in all of the preceding paragraphs with the same force and effect as though fully set forth at length herein.

96.    Barbara was employed by Jobar as its President from 2005 through the present, or such other time as it became inactive. After 2006, the material services she was required to perform as her duties were limited to maintaining the integrity and safety of the Holdback of $1,500,000 of funds and interest thereon held and earmarked to be distributed to the Jobar shareholders proportionate to their ownership interests in Jobar's shares, and not to be disproportionately distributed. Barbara was also required as a material part of her duties, to

4886-3663-6818, v. 1

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM INDEX NO. 161397/2023
NYSCEF DOC. NO. 2                                                      RECEIVED NYSCEF: 11/20/2023

supervise the records of the corporation, to carefully and accurately report transactions to shareholders and to taxing authorities, and to have accurate and truthful tax filings and reports made of the corporate results each year.

97.   In the performance of these duties, Barbara literally stole funds from the Jobar Holdback, with the assistance and support of David as to funds she sent to him.  Barbara has admitted that she took at least $1,140,000 of the Jobar Holdback funds in so-called "loans" that she never repaid. David admits that hundreds of thousands of dollars were sent to him out of the Holdback as "loans" which he has not repaid. David also received and benefitted from transfers of funds made by Barbara from the Holdback and assets supported by Holdback transfers which David admits he received, but now claims he never requested.

98.   To hide improper transactions, Barbara caused the preparation and filing of false tax returns and the issuance of false K-1's, as described above.  David, too, acting in concert with, and to facilitate her acts, also caused the preparation and filing of false personal income tax returns to the present day, all in support of their fraudulent scheme to loot Jobar, and to take improper control and possession of assets to which they had no legal right, all to the detriment of plaintiffs' rights to the assets, and causing direct losses to plaintiffs.

99.   Accordingly, David is liable to plaintiffs for his actions in aiding and abetting the fraud perpetrated by Barbara on the plaintiffs as set forth above, and for his own fraudulent actions as to the "loans" and other transactions in support of Barbara's tortious and fraudulent actions in her dealings with the assets that were and are owed to plaintiffs by them.

100.  As a result, David is liable to plaintiffs for funds looted from Jobar, and the amounts owed to Buck and assets wrongfully withheld from Robert Buck and from the Estate of

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2

INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

Joan Buck, in the amount of $2,000,000, together with plaintiffs' legal fees in an amount no less than $600,000, plus costs and interest thereon.

**WHEREFORE,** plaintiffs request a judgment:

1.      Granting the relief requested in the Complaint in the amount of $1,500,000 dollars in compensatory damages on the First Cause of Action, together with plaintiffs' legal fees, costs and interest.

2.      Granting the relief requested in the Second Cause of Action of the Complaint in the amount of $1,500,000 in compensatory damages, together with legal fees of no less than $500,000, plus costs and interest.

3.      Granting the relief requested in the Third Cause of Action of the Complaint in the amount of $2,500,000 in compensatory damages, together with legal fees of no less than $600,000, plus costs and interest.

4.      Granting the relief requested in the Fourth Cause of Action of the Complaint in the amount of $2,500,000 in compensatory damages, together with legal fees of no less than $600,000, plus costs and interest.

5.      Granting the relief requested in the Fifth Cause of Action of the Complaint in the amounts of $2,000,000 in compensatory damages, together with legal fees of no less than $600,000, plus costs and interest.

6.      Granting the relief requested in the Sixth Cause of Action of the Complaint in the amount of $2,000,000 in compensatory damages, together with legal fees of no less than $600,000, plus costs and interest.

FILED: NEW YORK COUNTY CLERK 11/20/2023 02:11 PM
NYSCEF DOC. NO. 2
INDEX NO. 161397/2023
RECEIVED NYSCEF: 11/20/2023

7.    Granting plaintiffs treble damages on the relief requested against defendant David

Halio, on the Third, Fourth, Fifth and Sixth Causes of Action in the Complaint.

Dated:    New York, New York
          November 20, 2023

                Respectfully submitted,
                **SCARINCI & HOLLENBECK, LLC**

                By:   /s/ Dan Brecher
                    DAN BRECHER, Esq.
                589 Eight Avenue, 16th Floor
                New York, New York 10018
                Telephone: (212) 286-0747
                E-mail: dbrecher@sh-law.com
                *Attorneys for Plaintiffs*

4886-3663-6818, v. 1

Exhibit "B"

# A55

FILED: NEW YORK COUNTY CLERK 12/04/2023 09:33 AM
NYSCEF DOC. NO. 3          Case 1:23-cv-11217-JGLC     Document 1-2     Filed 12/27/23     RECEIVED NYSCEF: 12/04/2023

INDEX NO. 161397/2023
Page 2 of 2

14.8 *

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
ATTORNEY(S) SCARINCI HOLLENBECK LLC
589 8TH AVENUE NEW YORK, NY 10018 |  PH: (212) 286-0747

Index Number: 161397/2023
Date Filed: 11/20/2023

**JOBAR HOLDING CORPORATION, ETAL**

*vs*

Plaintiff

**DAVID HALIO**

Defendant

---

STATE OF NEW YORK, COUNTY OF NASSAU, SS.:

**AFFIDAVIT OF SERVICE**

John Savage            , being sworn deposes and states that, the Deponent is not a party herein, is over the age of 18 years and resides in the State of New York.

That on 11/27/2023, at 5:24 PM at 257 FOXHURST ROAD, OCEANSIDE, NY 11572, Deponent served the within **SUMMONS AND COMPLAINT WITH NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING ,with the index number and the filing date of the action were endorsed upon the face of the papers so served herein.** On: DAVID HALIO, Defendant therein named, ( hereinafter referred to as "subject").

By delivering thereat a true copy of each to **BARBARA HALI O (Mother), a person of suitable age and discretion.**

Said premises is subject's **dwelling house (usual place of abode)** within the state. A description of **BARBARA HALI O** is as follows:

Sex: Female    **Color of skin**: White    **Color of hair:** Brown/Gray    **Age:** 55-70
**Height:** 5ft4in-5ft8in    **Weight:** 161-200 Lbs.  **Other** :

On **November 28, 2023**, service was completed by mailing a true copy of the above stated document(s) to the Defendant at the above stated address, in a First Class postpaid properly addressed envelope marked "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post Office in the State of New York.

I asked the person spoken to, on whether the subject was in active military service or financially dependent upon any one who is in the military service of the  United States or of the State of NEW YORK in any capacity whatever and received a negative reply. The source of my information and belief are the conversations above narrated. Upon that information and belief I assert that the recipient is not in the military service of NEW YORK State or of the United States as that term is defined in either the State or in Federal statutes.

Sworn to before me on November 29, 2023

Denise Bedell
Notary Public - State of New York
No. 01BE6091831; Qualified in Nassau County
My Commission Expires May 5, 2027

**Client's File No.:**

Process Server, Please Sign
John Savage
Lic#
Job #: 2366567

*INTER COUNTY JUDICIAL SERVICES, LLC, 6851 JERICHO TURNPIKE, SUITE 180, SYOSSET, NY 11791  LICENSE # 1371771*
*UNITED PROCESS SERVICE*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the
Estate of JOAN BUCK, and ROBERT BUCK, individually
and ROBERT BUCK, As Executor of the Estate of JOAN
BUCK, derivatively as shareholders on behalf of JOBAR
HOLDING CORPORATION,

        **Case No.:**
        **1:23-cv-11217 (JGLC) (GS)**

        **<u>NOTICE OF MOTION</u>**

              Plaintiffs,

   -against-

DAVID HALIO,

              Defendant.
--------------------------------------------------------------------X

    **PLEASE TAKE NOTICE**, that upon the accompanying memorandum of law in support, and all the prior papers and proceedings herein, Defendant Dr. David Halio will move this Court, before the Hon. Jessica G. L. Clarke, U.S.D.J., at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 20C, New York, NY 10007-1312, for an Order: (i) dismissing the complaint for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"); (ii) declining to exercise supplemental jurisdiction over any pendant state law claims pursuant to 28 U.S.C. § 1367; and (iii) for such other and further relief as this honorable Court deems just, equitable, and proper.

    **PLEASE TAKE FURTHER NOTICE,** that Pursuant to ¶ 4(a) of this Court's Individual Rules and Practices in Civil Cases, this is motion may be made on notice without a pre-motion conference.

**PLEASE TAKE FURTHER NOTICE,** pursuant to Local Civil Rule 6.1(b), Plaintiffs'

opposition papers are due on Thursday, March 14, 2024, and Defendant's reply papers in further

support are due on Thursday, March 21, 2024.

Dated:  Jamaica, New York
       February 29, 2024               Respectfully submitted,

                                     **SAGE LEGAL LLC**

                                     */s/ Emanuel Kataev, Esq.*
                                     Emanuel Kataev, Esq.
                                     18211 Jamaica Avenue
                                     Jamaica, NY 11423-2327
                                     (718) 412-2421 (office)
                                     (917) 807-7819 (cellular)
                                     (718) 489-4155 (facsimile)
                                     emanuel@sagelegal.nyc

<u>**VIA ECF**</u>
Scarinci & Hollenbeck, LLC
<u>Attn</u>: Dan Brecher, Esq.
589 Eighth Avenue, 16th Floor
New York, NY 10018-3005

*Attorneys for Plaintiffs*

2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the                    **Case No.:**
Estate of JOAN BUCK, and ROBERT BUCK, individually      **1:23-cv-11217 (JGLC) (GS)**
and ROBERT BUCK, As Executor of the Estate of JOAN
BUCK, derivatively as shareholders on behalf of JOBAR
HOLDING CORPORATION,

                                          Plaintiffs,

              -against-

DAVID HALIO,

                                          Defendant.

-----------------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Dated: Jamaica, New York
         February 29, 2024                          **SAGE LEGAL LLC**

                                                    */s/ Emanuel Kataev, Esq.__*
                                                    Emanuel Kataev, Esq.
                                                    18211 Jamaica Avenue
                                                    Jamaica, NY 11423-2327
                                                    (718) 412-2421 (office)
                                                    (917) 807-7819 (cellular)
                                                    (718) 489-4155 (facsimile)
                                                    emanuel@sagelegal.nyc

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STANDARD OF REVIEW ............................................................................. 3

    **i.**    **Rule 12(b)(1)** ..................................................................... 3

    **ii.**   **Rule 12(b)(6)** ..................................................................... 5

   **iii.**   **Documents Other than the Complaint may be Considered** ........................... 5

FACTS ........................................................................................................ 6

ARGUMENT ............................................................................................... 8

    **I.**    **THE STATUTE OF LIMITATIONS BARS RELIEF TO THE PLAINTIFFS** ........................................................................... 8

   **II.**   **COLORADO RIVER ABSTENTION REQUIRES DISMISSAL OF THE COMPLAINT** ........................................................... 10

  **III.**   **THE RICO CLAIMS ARE IRRETRIEVABLY DEFECTIVE** ................. 12

       **A. Plaintiffs Fail to Properly Plead an Association-in-Fact Enterprise** ...... 14

       **B. The Complaint Does not Allege the Continuity Required to Establish a "Pattern"** ..................................................................... 18

       **C. The Complaint Does not Allege an "Open-Ended" Pattern of Racketeering Activity** ......................................................... 21

       **D. Plaintiffs RICO Conspiracy Claims Under 18 U.S.C. § 1962(d) Must be Dismissed** ...................................................................... 23

  **IV.**   **This Court Should Decline to Exercise Supplemental Jurisdiction** ........... 24

## TABLE OF AUTHORITIES

**Cases**

2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.,
    717 Fed. Appx. 35 (2d Cir. 2017) ........................................................................ 9

Abbott Labs v. Adelphia Supply USA,
    2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. 2017) ................................................. 16

Abramo v. Teal, Becker & Chiarmonte,
    713 F.Supp.2d 96 (N.D.N.Y. 2010) .............................................................. 18, 19

Albunio v. Int'l Safety Grp.,
    2016 WL 1267795 (S.D.N.Y. Mar. 30, 2016) ................................................. 21

Alix v. McKinsey & Co., Inc.,
    No. 18-CV-4141 (JMF), 2023 WL 5344892 (S.D.N.Y. Aug. 18, 2023) ........... 8

Am. Fed'n of State v. Bristol-Myers Squibb Co.,
    948 F. Supp. 2d 338 (S.D.N.Y. 2012) ............................................................... 1

Am. Med. Ass'n v. United Healthcare Corp.,
    588 F. Supp. 2d 432 (S.D.N.Y. 2008) ............................................................. 22

Amsterdam Tobacco Inc. v. Philip Morris  Inc.,
    107 F. Supp. 2d 210 (S.D.N.Y. 2000) ............................................................. 17

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ........................................................................................... 5

Atl. Gypsum Co., Inc. v. Lloyds Intern. Corp.,
    753 F. Supp. 505 (S.D.N.Y. 1990) .................................................................. 23

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007) ................................................................................ 6

Ayers v. Piaker & Lyons, P.C.,
    748 Fed. Appx. 368 (2d Cir. 2018) ................................................................... 9

Azrielli v. Cohen Law Offices,
    21 F.3d 512 (2d Cir. 1994) ......................................................................... 12, 13

Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,
    820 F. Supp. 2d 490 (S.D.N.Y. 2011) ........................................................ 3 n. 1

Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,
    496 Fed. Appx. 131 (2d Cir. 2012).................................................................. 3 n. 1

Bankers Tr. Co. v. Rhoades,
    859 F.2d 1096 (2d Cir. 1988)........................................................................ 9

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)) ..................................................................................... 5

Blue Tree Hotels Inv. (Can.), Ltd., v. Starwood Hotels & Resorts Worldwide, Inc.,
    369 F.3d 212 (2d Cir. 2004).......................................................................... 6

Boyle v. United States,
    556 U.S. 938 (2009).................................................................................. 14, 15

BWP Media USA, Inc. v. Hollywood Fan Sites, LLC,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014)........................................................... 23

Castellano v. Bd. of Trustees,
    937 F.2d 752 (2d Cir. 1991).......................................................................... 25

Chambers v. Wright,
    No. 05-CIV.-9915 (WHP), 2007 WL 4462181 (S.D.N.Y. Dec. 19, 2007) ....................... 3

City of N. Y v. Smokes-Spirifs.com, Inc.,
    541 F.3d 425 (2d Cir. 2008).......................................................................... 13

Cofacredit, S.A. v. Windsor Plumbing Supply Co.,
    187 F.3d 229 (2d Cir. 1999)...................................................................... 12, 21

Cohen v. S.A.C. Trading Corp.,
    711 F.3d 353 (2d Cir. 2013).......................................................................... 8

Colorado River Water Conservation Dist. v. U.S.,
    424 U.S. 800 (1976) ............................................................................ 2, 4, 10, 11

Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC,
    2012 U.S. Dist. LEXIS 51841 (S.D.N.Y. 2012)............................................. 16

Conte v. Newsday, Inc.,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...................................................... 15, 17

Cosmos Forms Ltd. v. Guardian Life Ins. Co.,
    113 F.3d 308, 310 (2d Cir. 1997)........................................................ 15, 17, 18

De Sole v. Knoedler Gallery, LLC,
    2013 U.S. Dist. LEXIS 142111 (S.D.N.Y. Sep. 30, 2013)............................. 13

Dittmer v. Cty. of Suffolk,
        146 F.3d 113 (2d Cir. 1998)) ............................................................ 4

DLJ Mortg. Capital, Inc. v. Kontogiannis,
        726 F. Supp. 2d 225 (E.D.N.Y. 2010) ........................................... 1, 2

Dulsky v. Worthy,
        2013 WL 4038604 (S.D.N.Y. July 30, 2013) ................................ 23

Econ. Opportunity Comm'n v. Cnty. of Nassau,
        47 F. Supp. 2d 353 (E.D.N.Y. 1999) ............................................. 22

Elsevier, Inc. v. Grossman,
        2013 WL 6331839 (S.D.N.Y. Dec. 5, 2013) .................................. 14

F.D.I.C. v. Four Star Holding Co.,
        178 F.3d 97 (2d Cir. 1999)............................................................... 4

FD Prop. Holding, Inc. v. U.S. Traffic Corp.,
        206 F. Supp. 2d 362 (E.D.N.Y. 2002) ...................................... 19, 24

Fernandez v. City of New York,
        2017 WL 2894144 (S.D.N.Y. July 7, 2017) .................................... 4

Figueroa Ruiz v. Alegria,
        896 F.2d 645 (1st Cir. 1990)............................................................. 1

First Capital  Asset Mgmt., Inc. v. Satinwood, Inc.,
        385 F.3d 159 (2d Cir. 2004)...................................................... 18, 25

Flexborrow LLC v. TD Auto Fin. LLC,
        255 F. Supp. 3d 406 (E.D.N.Y. 2017) ........................................... 19

Foster v. 2001 Real Estate,
        2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015)................................ 15

Frederick v Wells Fargo Home Mtge.,
        2015 US Dist. LEXIS 41328 (E.D.N.Y. 2015)............................... 16

GICC Capital  Corp. v. Tech. Fin. Group, Inc.,
        67 F.3d 463 (2d Cir. 1995)............................................................. 18

Goldfine v. Sichenzia,
        118 F. Supp. 2d 392 (S.D.N.Y. 2000).............................................. 23

Grace International v. Festa,
        2019 WL 1369000 (E.D.N.Y., Mar. 26, 2019) ........................ 18, 22

Greenberg v. Blake,
　　2010 WL 2400064 (E.D.N.Y. June 10, 2010) .................................................. 15

Gross v. Waywell,
　　628 F. Supp. 2d 475 (S.D.N.Y. 2009) .......................................................... 2, 12

H.J. Inc., et al. v. Northwestern Bell Tel. Co.,
　　492 U.S. 229 (1989) ............................................................................ 14, 18, 20

Halvorssen v. Simpson,
　　2020 U.S. App. LEXIS 8512 (2d. Cir. 2020) .................................................. 19

In re Buck v. Jobar Holding Corp.,
　　Index No.: 605680/2016 (Nassau County Supreme Court) ............................... 9

In re Comverse Tech., Inc.,
　　06-CIV.-1849 (NGG) (RER), 2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006) .................... 4

Int'l Bhd. of Teamsters v. Blitz,
　　124 Fed. Appx. 41 (2d Cir. 2005) .................................................................... 22

Int'l Bhd. of Teamsters v. Carey,
　　297 F. Supp. 2d 706 (S.D.N.Y. 2004) .............................................................. 22

J.S. ex rel. N.S. v. Attica Cent. Sch.,
　　386 F.3d 107 (2d Cir. 2004) .............................................................................. 3

Jobar Holding Corp. v. Halio,
　　Index No.: 655689/2017 (New York County Supreme Court) .................... 8, 11

Katzman v. Victoria's Secret Catalogue,
　　167 F.R.D. 649 (S.D.N.Y. 1996) ....................................................................... 1

Katzman v. Victoria's Secret Catalogue,
　　113 F.3d 1229 (2d Cir. 1997) ............................................................................ 1

Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,
　　342 U.S. 180 (1952) ........................................................................................... 4

Koch v. Christie's Int'l PLC,
　　699 F.3d 141 (2d Cir. 2012) ........................................................................... 8, 9

LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,
　　951 F. Supp. 1071 (S.D.N.Y. 1996) ................................................................ 17

Levy v. Southbrook Int'l Investments, Ltd.,
　　263 F.3d 10 (2d Cir. 2001) ................................................................................. 5

iv

Levy v. Southbrook Int'l Investments, Ltd.,
    535 U.S. 1054 (2002)................................................................... 5

Magee v. Nassau Cnty. Med. Ctr.,
    27 F. Supp. 2d 154 (E.D.N.Y. 1998) .................................................. 3

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000)............................................................ 3, 6

Miranda v. Ponce Fed. Bank,
    948 F.2d 41 (1st Cir. 1991) ............................................................ 1

Morrison v. Nat'l Australia Bank Ltd.,
    547 F.3d 167 (2d Cir. 2008)............................................................ 3

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983).................................................................... 10

Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,
    102 F.3d 660 (2d Cir. 1996)............................................................ 6

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,
    673 F.3d 84 (2d Cir. 2012)........................................... 4, 10, 11 n. 4

O'Malley v. N.Y.C. Transit Auth.,
    896 F.2d 704 (2d Cir. 1990)........................................................... 23

Ray Larsen Assocs., Inc. v. Nikko Am., Inc.,
    No. 89 CIV. 2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ...................... 19

Redtail Leasing, Inc. v. Bellezza,
    1997 U.S. Dist. LEXIS 14821 (S.D.N.Y. Sep. 30, 1997)................................. 13

Reich v. Lopez,
    858 F.3d 55 (2nd Cir. 2017)...................................................... 20, 21

Reves v. Ernst & Young,
    507 U.S. 170 (1993)............................................................. 13, 17

Rosenson v. Mordowitz, 2012
    U.S. Dist. LEXIS 120077 (S.D.N.Y. Aug. 23, 2012) ....................................... 1

Rotella v. Wood,
    528 U.S. 549 (2000)................................................................... 8

Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.,
    466 F.3d 88 (2d Cir. 2006)........................................................... 10

Schlaifer Nance & Co. v. Estate of Warhol,
    119 F.3d 91 (2d Cir. 1997)............................................................ 18, 19

Shields v. Murdoch,
    No. 11-CIV.-4917 (PGG), 2012 WL 4097199 (S.D.N.Y. Sept. 18, 2012)........... 4, 11 n. 4

Shipping Fin. Servs. Corp. v. Drakos,
    140 F.3d 129 (2d Cir. 1998)................................................................ 3

Singh v. Parnes,
    199 F. Supp. 2d 152 (S.D.N.Y. 2002)............................................... 15

Spool v. World Child Int'l Adoption Ag.,
    520 F.3d 178 (2d Cir. 2008).............................................................. 12

Spoto v. Herkimer County Trust,
    2000 WL 533293 (N.D.N.Y, Apr. 27, 2000)................................. 18, 21

Superior Site Work, Inc. v NASDI, LLC,
    No. 14-CIV.-1061 (ADS) (SIL), 2017 WL 384325 (E.D.N.Y. Jan. 23, 2017) ............... 12

TPTCC NY, Inc. v. Radiation Therapy Servs.,
    453 Fed. Appx. 105 (2d Cir. 2011)..................................................... 25

United States v. Aulicino,
    44 F.3d 1102 (2d Cir. 1995)........................................................ 21, 22

United States v. Burden,
    600 F.3d 204 (2nd Cir. 2010)............................................................ 21

United States v. Turkette,
    452 U.S. 576 (1981)......................................................................... 14

Wee v. Rome Hosp.,
    1996 WL 191970 (N.D.N.Y., Apr. 15, 1996)...................................... 19

Woodford v. Cmty. Action Agency of Greene County, Inc.,
    239 F.3d 517 (2d Cir. 2001).............................................................. 10

World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,
    328 Fed. Appx. 695 (2d Cir. 2009)................................................... 8, 9

World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,
    699 F.3d 141 (2d Cir. 2012)............................................................. 8, 9

York Hunter Const., Inc. v Avalon Properties, Inc.,
    104 F. Supp. 2d 211 (S.D.N.Y. 2000).............................................. 12

Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi,
    215 F.3d 247, 253 (2d Cir. 2000)...................................................................... 3

**Statutes**

18 U.S.C. § 1961.............................................................................................. 14

18 U.S.C. § 1962.............................................................................. 12, 13, 16, 17, 23

28 U.S.C. § 1331.............................................................................................. 25

28 U.S.C. § 1367.......................................................................................... 24, 25

New York Civil Practice Law & Rules, Rule 3014 ......................................... 5 n. 2

**Rules**

Fed. R. Civ. P. 8.......................................................................................... 5, 5 n. 2

Fed. R. Civ. P. 9.................................................................................................. 1, 6

Fed. R. Civ. P. 12............................................................................... 1, 3, 5, 6, 16

Defendant Dr. David Halio (hereinafter "Dr. Halio" or the "Defendants") respectfully submits this memorandum of law in support of his motion, pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure (hereinafter "Rules" or "Rule"), to dismiss the third and fourth causes of action of Plaintiffs' complaint, under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), with prejudice, and to decline to exercise supplemental jurisdiction over the remaining causes of action set forth in the complaint.

## PRELIMINARY STATEMENT

"[I]t is well known that the federal courts are flooded with cases molded to the RICO form, even though they are truly little more than garden variety claims for fraud." See Am. Fed'n of State v. Bristol-Myers Squibb Co., 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2012) (citing Rosenson v. Mordowitz, 2012 U.S. Dist. LEXIS 120077, at *12 (S.D.N.Y. Aug. 23, 2012)). "Consequently, courts have an obligation to scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." See Am. Fed'n of State, 948 F. Supp. at 345 (quoting Rosenson, 2012 U.S. Dist. LEXIS 12007, at *13).

It must be noted that courts have described civil RICO as "'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" See Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), aff'd, 113 F.3d 1229 (2d Cir. 1997) (quoting Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991)). "Because the 'mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" Id. (quoting Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990)); see also DLJ Mortg. Capital, Inc. v. Kontogiannis, 726 F. Supp. 2d 225 (E.D.N.Y. 2010).

Indeed, although civil RICO may be a "potent weapon," plaintiffs wielding RICO almost always miss the mark. See Gross v. Waywell, 628 F. Supp. 2d 475, 479-83 (S.D.N.Y. 2009) (conducting survey of 145 civil RICO cases filed in the Southern District of New York from 2004 through 2007 and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage).

Accordingly, courts have expressed skepticism toward civil RICO claims. See, e.g., DLJ Mortg. Capital, 726 F. Supp. 2d at 236 ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations.").

Here, Plaintiffs plead that Dr. Halio conspired with his mother, a defendant in a related state court action, to ensure that the Plaintiffs did not receive their fair share of the assets held by Jobar Holding Corporation ("Jobar"); this is not a RICO claim, and the sensationalized allegations in the complaint properly paint this case as part of a decades-long family vendetta by Robert Buck ("Buck"), who was estranged from the family for years and years until after his mother passed away.  For a multitude of reasons, these dubious run-of-the-mill breach of contract and fraud claims – which are brought in an effort to engage in scorched earth litigation as part of Buck's family vendetta – can never be molded to fit the RICO form.

For one, the existence of parallel state-court litigation renders this case dismissed under the Colorado River abstention doctrine.  Moreover, Plaintiffs' RICO claims are defective and fail to state a claim upon which relief can be granted, both on the merits of the unnecessarily long allegations and on statute of limitations grounds as the transactions complained of occurred more than four (4) years ago.  Finally, this Court should not exercise its discretion to have supplemental jurisdiction over the remaining state law claims because no federal question exists and exile this case back to state court where it belongs.

Accordingly, this Court must dismiss the RICO claims and decline to exercise supplemental direction over the remaining state law claims.

## STANDARD OF REVIEW

i.    Rule 12(b)(1)

Rule 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. See Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. See Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings...." See Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004) (citing Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first,[1] because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." See Chambers v. Wright, No. 05-CIV.-9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting Magee v. Nassau Cnty. Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

---

[1] See Baldessarre v. Monroe–Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), aff'd, 496 Fed. Appx. 131 (2d Cir. 2012).

Federal courts may abstain from exercising jurisdiction over an action for which there is a parallel state court proceeding based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." See Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976) ("Colorado River") (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)).

A district court may *sua sponte* challenge subject matter jurisdiction, including through abstention principles. See F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 100 n.2 (2d Cir. 1999) (finding that a district court or appellate court could *sua sponte* address subject matter jurisdiction and applying Colorado River abstention principles).

"An analysis of whether a court should abstain under Colorado River begins with a determination of whether the concurrent federal and state proceedings are 'parallel' in nature." See Fernandez v. City of New York, 2017 WL 2894144, at *2 (S.D.N.Y. July 7, 2017) (citing Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998)).

Federal and state proceedings are "parallel" for abstention purposes when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) ("Niagara").

Crucially, "[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." See Shields v. Murdoch, No. 11-CIV.-4917 (PGG), 2012 WL 4097199, at *5 (S.D.N.Y. Sept. 18, 2012) ("Shields") (quoting In re Comverse Tech., Inc., 06-CIV.-1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)) (internal quotations marks omitted).

4

    ii.    <u>Rule 12(b)(6)</u>

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must allege in its complaint facts that, if accepted as true, "state a claim to relief that is plausible on its face." <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (<u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

To meet this plausibility standard, Plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged. <u>Id.</u>

A complaint must contain "a *short and plain statement*[2] of the claim showing that the pleader is entitled to relief." <u>See</u> Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

"[O]n a motion to dismiss[,] a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiffs favor." <u>See</u> <u>Levy v. Southbrook Int'l Investments, Ltd.</u>, 263 F.3d 10, 14 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 1054 (2002) (citations omitted).

However, the Court need not accept legal conclusions as true. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>See</u> <u>Iqbal</u>, 556 U.S.at 679.

---

[2] The import of Rule 8 and its state-court counterpart under Rule 3014 of the New York Civil Practice Law & Rules ("CPLR"), requiring pleadings to consist of short, plain, and/or concise statements, was apparently lost on the Plaintiffs.

Further, where – as here – Plaintiff bases claims sounding in fraud, they are also subject to the heightened pleading requirements of Rule 9(b), which requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." See Fed. R. Civ. P. 9(b).

To satisfy this requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Allegations that are conclusory or unsupported by factual assertions are insufficient." See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

    iii.    Documents Other than the Complaint may be Considered

While a district court deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim ordinarily "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference,"[3] "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." See Makarova, 201 F.3d at 113 (2d Cir. 2000).

Additionally, under either standard the court may take judicial notice of documents in the public record, including state court filings. See Blue Tree Hotels Inv. (Can.), Ltd., v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

**FACTS**

Cake Masters was a family bakery that operated until in or about 1990. See ECF Docket Entry 1-1 ¶ 21. After it ceased operating as a bakery, it continued in its business of owning and leasing commercial real estate located at 120 West 72nd Street, New York, NY. Id.

---

[3] See Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996).

The property was sold on May 12, 2006 and all proceeds from the sale save for $1,500,000.00 (the "Holdback") were distributed to creditors and shareholders.  Id. ¶ 22.  The Holdback was money set aside in the event of any claims, disputes, or obligations that existed related to Jobar.  Id. ¶ 9.

Buck and the Estate of Joan Buck (the "Estate"), of which Buck is the executor, collectively owned a thirty-eight percent (38%) interest in Jobar at the time of the sale, with Buck owning eight percent (8%) and the Estate owning thirty percent (30%).   Id. ¶ 23; see also Id. ¶¶ 10-11.  Dr. Halio holds a twelve-and-a-half percent (12.5%) interest in Jobar.  Id. ¶¶ 24, 37.  His mother is also a shareholder and officer of Jobar.  Id. ¶ 8.

Plaintiffs allege that Dr. Halio engaged in wire fraud by accepting monies from the Holdback funds and filing Internal Revenue Service ("IRS") Form K-1's from Jobar in relation to certain funds that were loaned, and Plaintiffs protest the nature and characterization of these funds as loans.  Id. ¶¶ 26, 28, 73, and 79.

Other than generally alleging wire fraud, the complaint is mostly bereft of any detail as to the amount of the transfers and when these wire transfers occurred; even when amounts are provided, the pleadings are still bare as to when.  Id. ¶¶ 3 (referencing $200,000.00 in 2017, including $20,000.00 on March 2, 2013, $10,000.00 on April 12, 2013, $43,996.00 on April 15, 2013, $50,000.00 on May 3, 2013, $60,000.00 on December 20, 2013, and an unidentified amount on November 22, 2013), 12 (referencing $30,000.00 on April 25, 2020), 78 (referencing an aggregate of $1,140,975.00).  Plaintiffs also allege mail fraud on the ground that Dr. Halio received IRS Form K-1s that were factually inaccurate.  Id. ¶¶ 73 and 79.

Of import, Plaintiffs filed a special proceeding against Dr. Halio's mother to require her to produce books and records, which Plaintiffs received.  Id. ¶¶ 29-31.

Critically, Buck admits in his pleadings that he has known Dr. Halio received funds from the Holdback since in or about 2016 or 2017; this is when Plaintiffs "discovered" Dr. Halio's involvement according to the pleadings.  Id. ¶ 31 ("The … records that were secured through those proceedings [in 2016] reveal that [Dr. Halio's mother] fraudulently transferred most of the Holdback from Jobar to … her family members, *including [Dr. Halio]*").  Equally vital, Plaintiffs' claims against Dr. Halio's mother have all been dismissed, except for a claim under the faithless servant doctrine, which is pending an appeal.  See Jobar Holding Corp. v. Halio, Index No.: 655689/2017 (New York County Supreme Court), NYSCEF Docket Entry 185.

## ARGUMENT

### I. THE STATUTE OF LIMITATIONS BARS RELIEF TO THE PLAINTIFFS

"The statute of limitations for a civil RICO claim is four years."  See Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013).  Critically, the statute of limitations "runs from when the plaintiff *discovered, or should have discovered*, his injury; it does not matter whether the plaintiff has uncovered the pattern of predicate acts necessary to make out a civil RICO claim."  See Alix v. McKinsey & Co., Inc., No. 18-CV-4141 (JMF), 2023 WL 5344892, at *5 (S.D.N.Y. Aug. 18, 2023) (citing, e.g., Rotella v. Wood, 528 U.S. 549, 555-56 (2000)) (emphasis added); accord Koch v. Christie's Int'l PLC, 699 F.3d 141, 150-51 (2d Cir. 2012).

Indeed, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."  See Rotella, 528 U.S. at 555; see also Koch, 785 F. Supp. 2d at 114 (the statute of limitations "runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry") (quoting World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 328 Fed. Appx. 695, 697 (2d Cir. 2009) (summary order), aff'd, 699 F.3d 141 (2d Cir. 2012)).

8

An injury is discoverable, triggering the running of the statute of limitations, when a plaintiff has actual or inquiry notice of the injury. See Koch, 699 F.3d at 150–51.

Inquiry notice is an objective standard, and "dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings." See Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 530 F. Supp. 2d 486, 525 (S.D.N.Y. 2007) (quotations omitted), aff'd, 328 Fed. Appx. 695 (2d Cir. 2009).

"[I]nquiry notice is tied to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury ... or precise cause." See Ayers v. Piaker & Lyons, P.C., 748 Fed. Appx. 368, 370 (2d Cir. 2018) (summary order) (internal quotation marks omitted); accord 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co., 717 Fed. Appx. 35, 38 (2d Cir. 2017) (summary order).

Furthermore, the continuing violations doctrine does not apply to claims under RICO; instead, "RICO actions are subject to a rule of separate accrual [per injury]." See Bankers Tr. Co. v. Rhoades, 859 F.2d 1096, 1105 (2d Cir. 1988).

In this case, Buck had inquiry notice as to Dr. Halio's so-called involvement in the alleged scheme at issue here since in or about 2017 following the records he received from the 2016 special proceeding. Indeed, the Hon. Jack L. Libert, J.S.C. issued an Order on October 17, 2016 directing Dr. Halio's mother to submit all documents requested in Buck's "Demand for Inspection of Books and Records" on or before November 9, 2016. See In re Buck v. Jobar Holding Corp., Index No.: 605680/2016 (Nassau County Supreme Court), NYSCEF Docket Entry 14. There is nothing to indicate that Dr. Halio's mother failed to comply with the Order based on the docket.

9

Tellingly, Buck's notice of Dr. Halio's alleged involvement is admitted in the complaint in this case.  See ECF Docket Entry 1-1 ¶¶ 29-31 (referring to Buck's ability to secure records from the 2016 special proceeding, which revealed Dr. Halio received funds).  Because Plaintiffs had inquiry notice since in or about November 2016, their RICO claims expired in November 2020.  As such, the RICO claims must be dismissed on statute of limitations grounds.

## II. *COLORADO RIVER* ABSTENTION REQUIRES DISMISSAL OF THE COMPLAINT

The complaint must also be dismissed due to the parallel state court action against Dr. Halio's mother, in which virtually every claim against her (almost the identical claims brought here) were dismissed.  Under Colorado River, *infra*, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources."  See Niagara, 673 F.3d at 100 (quoting Colorado River, 424 U.S. at 817.  In evaluating whether Colorado River abstention is appropriate, federal district courts are to consider six (6) factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). These six (6) factors are:

> (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction, (2) whether the federal forum is less inconvenient than the other for the parties, (3) whether staying or dismissing the federal action will avoid piecemeal litigation, (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other, (5) whether federal law provides the rule of decision, and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

See Woodford v. Cmty. Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir. 2001) (internal citations omitted). No one factor is necessarily determinative. See Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006) (quoting Colorado River, 424 U.S. at 818-19).

As Plaintiffs point out in their pleadings, there is a parallel action against Dr. Halio's mother pending in New York County Supreme Court, where the Plaintiffs brought substantially the same claims they bring against Dr. Halio here.  See Jobar Holding Corp. v. Halio, *supra*, at NYSCEF Docket Entry 152 (asserting causes of action for unjust enrichment, breach of fiduciary duty, civil RICO, RICO conspiracy, fraud, conversion, aiding and abetting fraud, constructive trust, and violation of the faithless servant doctrine).

As is evident by a review of the complaint in this case, virtually every cause of action brought against Dr. Halio's mother in the state court action has been brought against Dr. Halio here in this case, namely: unjust enrichment, aiding and abetting breach of fiduciary duty, civil RICO, RICO conspiracy, and fraud).  Based on the foregoing, virtually each of the Colorado River abstention factors weigh in favor of abstention.

*First*, the state court has jurisdiction over the *res* — the Holdback funds at issue in this case.  Indeed, as meekly referenced in the complaint, there are funds held in escrow account in relation to the state court action.  See ECF Docket Entry 1-1 ¶ 44.

*Second*, staying or dismissing this case would avoid piecemeal litigation as the same claims arising out of the same transactions are being litigated in the state court action brought against Dr. Halio's mother, a shareholder just like Dr. Halio.[4]  Based on the foregoing, the instant litigation currently exists in two legal *fora*, and this Court will be deciding essentially the same issue.

*Third*, the issue of whether state or federal law provides the rule of decision, similarly weighs in favor of abstention.  As discussed below, this is a run-of-the-mill fraud complaint improperly dressed as a RICO case. The resources of this federal court should not be wasted on this routine state court matter.

---

[4] Crucially, the parties need not to be identical.  See Niagara and Shields, *supra*, at 4.

11

*Fourth*, the claims brought here have already been dismissed by the state court.

*Fifth*, this case is in its initial stage with a pre-answer motion to dismiss filed by Dr. Halio.

As such, the Court's abstention here would conserve judicial resources and either dismiss this case or, at a minimum, stay all proceedings pending the resolution of the state court action.

Courts have routinely ruled in this fashion in similar circumstances. See York Hunter Const., Inc. v Avalon Properties, Inc., 104 F. Supp. 2d 211, 217 (S.D.N.Y. 2000) (dismissing case without prejudice for all parties to assert their claims in state court); see also Superior Site Work, Inc. v NASDI, LLC, No. 14-CIV.-1061 (ADS) (SIL), 2017 WL 384325, at *7 (E.D.N.Y. Jan. 23, 2017) (staying federal case pending outcome of two state court cases).

This Court should thus dismiss this case as independent reasons exist for dismissal as further set forth herein.

### III. THE RICO CLAIMS ARE IRRETRIEVABLY DEFECTIVE

To state a claim for a violation of RICO pursuant to 18 U.S.C. § 1962(c), Plaintiffs "must demonstrate, that while employed by or associated with an enterprise engaged in interstate or foreign commerce, and through the commission of at least two predicate acts constituting a pattern of racketeering, the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise." See Gross v. Waywell, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009); see also Spool v. World Child Int'l Adoption Ag., 520 F.3d 178, 183 (2d Cir. 2008).

"[A] plaintiff must [also] show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994)).

Furthermore, a RICO plaintiff must allege that the defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." See 18 U.S.C. § 1962(c); see also Reves v. Ernst & Young, 507 U.S. 170, 177-79 (1993) ("Reves").

In Reves, the Supreme Court explained that the defendant must have had "some part in directing [the enterprise's] affairs." See Reves, 507 U.S. at 179 ("[O]ne is not liable ... unless one has participated in the operation or management of the enterprise itself.").

"A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise." See Redtail Leasing, Inc. v. Bellezza,1997 U.S. Dist. LEXIS 14821, at *14 (S.D.N.Y. Sep. 30, 1997). Rather, he must "exert ... control" over the enterprise. See City of N. Y v. Smokes-Spirifs.com, Inc., 541 F.3d 425, 449 (2d Cir. 2008); see also De Sole v. Knoedler Gallery, LLC, 2013 U.S. Dist. LEXIS 142111, at *50-51 (S.D.N.Y. Sep. 30, 2013) ("one is liable under RICO only if he 'participated in the operation or management of the enterprise itself.'") (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512,521 (2d Cir. 1994).

The allegations in the complaint do not remotely evince the notion that Dr. Halio exercised any control over Jobar. Instead, the pleadings state that Dr. Halio's mother: (i) was the chief executive and operating officer; (ii) issued the funds at issue to Dr. Halio and others; and (iii) caused the tax forms to be submitted. There are no factual allegations whatsoever that give rise to an inference that Dr. Halio exercised any control over Jobar.

Thus, the RICO claims must be dismissed for failure to plead direction and control of the alleged RICO enterprise.

The RICO claims must also be dismissed because they do not adequately plead a "pattern of racketeering" activity.

In order to so plead, a plaintiff must plausibly allege multiple acts of racketeering activity occurring within ten (10) years of each other (see 18 U.S.C. § 1961(5); see also Elsevier, Inc. v. Grossman, 2013 WL 6331839, at *9 (S.D.N.Y. Dec. 5, 2013)), and the predicate acts must be "*related*" and "*continuous*." See H.J. Inc., et al. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238-44 (1989) (emphasis added).

An examination of the wordy complaint here evinces only seven (7) transactions, with six (6) in 2013, another in 2020, an unidentified number of transactions in 2017, and the aggregate amount of the transactions with no time span.  See ECF Docket Entry 1-1 ¶¶ 3, 12, and 78.  These transactions – years apart – are not related nor continuous in a manner to constitute a pattern of racketeering activity.

Accordingly, the RICO claims must be dismissed on this ground, as well.

**A. Plaintiffs Fail to Properly Plead an Association-In-Fact "Enterprise"**

To adequately state a civil RICO claim, a plaintiff must plead sufficient facts to establish that the defendants formed an "enterprise" on whose behalf they acted.

The enterprise is the essence of a RICO claim in that the defendants must have been acting on behalf of the enterprise and not merely for their own benefit.

Critically, there is only one (1) defendant in this case, which belies the essence of a RICO claim and evinces the bad faith nature of the instant complaint.

Plaintiffs seek to establish the "enterprise" component by pleading an "association-in-fact enterprise" between Dr. Halio and his mother.  An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." See Boyle v. United States, 556 U.S. 938, 945 (2009) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

At a minimum, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." See Boyle, 556 U.S. at 956 (internal quotations omitted).

The Second Circuit looks to the "'hierarchy, organization, and activities' of the association to determine 'whether its members functioned as a unit.'" See Foster v. 2001 Real Estate, 2015 WL 7587360, *4 (S.D.N.Y. Nov. 24, 2015) (quoting Conte v. Newsday, Inc., 703 F. Supp. 2d 126, 133-34 (E.D.N.Y. 2010)). "Although the Supreme Court's holding in Boyle establishes that a RICO enterprise need not have a formal hierarchy, a Plaintiff must still allege some structural features; otherwise, "any two thieves in cahoots would constitute an association–in–fact." See Foster, 2015 WL 7587360, *4 (quoting Greenberg v. Blake, 2010 WL 2400064, *7 (E.D.N.Y. June 10, 2010)).

Said otherwise, the complaint must "addresses the relationships among defendants in a manner that distinguishes between the "enterprise' and the 'person' who conducted the affairs of the enterprise through a pattern of racketeering." See Singh v. Parnes, 199 F. Supp. 2d 152, 162 (S.D.N.Y. 2002).

The Complaint here is bereft of allegations sufficient to establish "association-in-fact enterprise." Plaintiffs have merely alleged that a mother and son, both shareholders of Jobar, received funds from the Holdback fund of Jobar to the exclusion of Buck and the Estate.

The Complaint does not allege that Dr. Halio had any other association with Jobar other than as a shareholder. There are no allegations of hierarchy; no allegations that the individual defendants and corporate defendants are an "ongoing organization, formal or informal." There are no allegations that Defendants "function as a continuing unit" with the other defendants.

15

Plaintiffs at best provide nothing more than conclusory allegations in a futile effort to avoid immediate dismissal under Rule 12(b)(6). Such conclusory allegations of association-in-fact enterprise are insufficient to avoid dismissal. See Abbott Labs v. Adelphia Supply USA, 2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. 2017) (finding that plaintiff did not allege facts sufficient to allege an association-in-fact because plaintiff provided nonspecific factual allegations); see also Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC, 2012 U.S. Dist. LEXIS 51841 (S.D.N.Y. 2012).

Moreover, Plaintiffs do not allege that the Defendants' alleged unlawful collaboration existed for any other purpose other than just to misappropriate funds; in fact, the complaint pleads that Jobar's business was being wound down such that it could not exist for any other purpose to permit a finding of an association-in-fact enterprise.  This is not an organized crime case where the criminal enterprise exists (as an association or otherwise) and operates in addition to the main businesses providing a service.

Furthermore, Plaintiffs nowhere mention how or whether each of the defendants communicated with each other, nor how each of the sub-associations stands apart from their purported racketeering activities. Accordingly, Plaintiffs have failed to allege that Dr. Halio and others "associated together for a common purpose of engaging in a course of conduct" and, therefore, have not satisfied the "enterprise" element of a RICO claim. See Frederick v Wells Fargo Home Mtge., 2015 US Dist. LEXIS 41328, *29 (E.D.N.Y. 2015).

Finally, the existence of an enterprise alone is insufficient to successfully plead a RICO claim. A plaintiff must also plead that each defendant "conducted or participated, directly or indirectly, in the conduct of" the enterprise's affairs. See 18 U.S.C. § 1962(c). The Plaintiffs here cannot do so because there is only one Defendant, Dr. Halio.  Therefore, Plaintiffs unquestionably fail to plead the existence of an association-in-fact enterprise.

16

The Supreme Court has explained that for a RICO claim to be properly pled, the defendants must have participated "in the operation or management of the enterprise." See Reves, 507 U.S. at 185 (internal quotations omitted).

In the Second Circuit, a plaintiff must plead that *each* defendant played "some part in directing the enterprise's affairs." See Conte, 703 F. Supp. 2d at 135 (emphasis added) (internal quotations omitted).

"As interpreted by courts in this district and others, the 'operation and management' test set forth in Reves ... is a very difficult test to satisfy." See Amsterdam Tobacco Inc. v. Philip Morris Inc., 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000) (citing LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996).

"Liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." See Reves, 507 U.S. at 185.

Here, Plaintiffs provided nothing more than unnecessarily wordy and conclusory utterances in a futile effort to sufficiently plead that Dr. Halio conducted or participated in the affairs of the alleged enterprise.

Plaintiffs just plead facts about what Dr. Halio's mother did with respect to Jobar, and it is evident that – accepting the complaint allegations as true – Dr. Halio was a passive participant who merely received money and IRS Form K-1s.

Nothing in the Complaint explains how this alleged enterprise is anything other than the arbitrary, artificially created, reverse-engineered allegations specifically drafted in an attempt to satisfy 18 U.S.C. § 1962(a)'s requirement. Such tittup in light of the existence of funds held in escrow for Plaintiffs and the apparent family vendetta must be seen for what it is.

Consequently, the RICO claims must be dismissed.

17

**B.    The Complaint Does not Allege the Continuity Required to Establish a "Pattern."**

Predicate acts are 'related' for RICO purposes, when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997). Relatedness is indicated by "temporal proximity of the [underlying] acts, by common goal, methodology, and their repetition." See Cosmos Forms Ltd. v. Guardian Life Ins. Co., 113 F.3d 308, 310 (2d Cir. 1997).

Continuity, on the other hand, requires something more. And, in fact, the continuity element is where many would-be claims fall short of RICO's strict requirements and find dismissal. See, e.g., Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96, 110 (N.D.N.Y. 2010); Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000); Grace International v. Festa, 2019 WL 1369000, at *5 (E.D.N.Y., Mar. 26, 2019). "Continuity" may be established through either "a closed period of repeated conduct, or [ ] past conduct that by its nature projects into the future with a threat of repetition." See H.J. Inc., et al. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241 (1989) (citation omitted); see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004) (RICO plaintiffs "must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time) (quoting GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995))). "Closed-ended continuity" means that the underlying racketeering acts happened over a long time—it is rather strictly about duration. See First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir.2004) ("A closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time.").

18

"[P]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement." See Wee v. Rome Hosp., 1996 WL 191970, at *5 (N.D.N.Y., Apr. 15, 1996).  In fact, "The Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." See Abramo, 713 F. Supp. 2d at 110 (emphasis added) (citing First Capital Asset Mgmt., 385 F.3d at 181); see also DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001) (collecting cases). This duration "is measured by the RICO predicate acts the defendants commit"—that is, the span of time in which the actual acts of mail fraud, wire fraud, or other RICO crimes occurred. See Abramo, 713 F.Supp.2d at110-11.

In accordance with Second Circuit precedent, the courts in this Circuit repeatedly dismiss closed-ended pattern cases when the defendant fails to allege racketeering acts spanning at least two (2) years. See Id. at 110; see also Wee, 1996 WL 191970, at *5; FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002); Flexborrow LLC v. TD Auto Fin. LLC, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017); Ray Larsen Assocs., Inc. v. Nikko Am., Inc., No. 89 CIV. 2809, 1996 WL 442799, at *8 (S.D.N.Y. Aug. 6, 1996).

Here, while the Plaintiffs have incontrovertibly alleged that the purported scheme was carried out over a period of approximately nine (9) years, there are large spans of time in which no predicate acts are plead.  Indeed, the allegations merely consist of discrete transactions in 2013, 2017, and 2020, with none in the interim years between 2013 and 2016 or 2018 through 2019. Because Plaintiffs have failed to allege, as required, continuous predicate acts constituting a pattern of racketeering activity, the RICO claims must be dismissed.  See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997) (to establish a "pattern" of racketeering activity, a plaintiff must plead "at least two predicate acts, [and] show that the predicate acts are related, and that they amount to, or pose a threat of, *continuing* criminal activity") (emphasis added).

The Complaint's indisputable failure to allege continuous activity is not the only reason the "pattern" element is absent thereby requiring dismissal. "To establish a pattern, a plaintiff must identify at least two predicate acts and show that (1) the acts are related both to each other (horizontal relatedness) and to the enterprise (vertical relatedness) and (2) the conduct continued over a substantial period of time." See Halvorssen v. Simpson, 2020 U.S. App. LEXIS 8512, *6 (2d. Cir. 2020).  Plaintiff has failed to show the continuity required given the lack of any allegations in the intervening years between 2013 and 2020 (other than in 2017), thus mandating dismissal. Id. at *6 ("The requirement that the plaintiff establish a pattern of racketeering activity is intended to prevent the application of RICO to 'isolated or sporadic' criminal acts").

Nevertheless, Plaintiff has also failed to plead horizontal relatedness. "Horizontal relatedness requires that the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. (citing Reich v. Lopez, 858 F.3d 55, 61 (2nd Cir. 2017) (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989)). "Where the enterprise at issue is primarily a legitimate business, horizontal relatedness cannot be stablished 'simply by linking each act to the enterprise,' but rather there must be a relationship 'between the predicate crimes themselves.'" Id. (citing Reich, 858 F.3d at 61)). Where "[t]he only horizontal link between the predicate crimes is the overlap of participants" and "where the enterprise in question is not primarily in the business of racketeering, that is insufficient." See Reich, 858 F.3d at 62.

Here, there are no allegations that Dr. Halio and his mother acted for any other purpose than legitimate transactions related to their status as shareholders of Jobar – no history of any other alleged criminal conduct or simultaneous to the alleged conspiracy is pled. Plaintiffs have alleged nothing more than self-interested conduct in corporate affairs that does not rise to a RICO claim.

20

Such pleadings are insufficient for adequately pleading "horizontal relatedness" and the RICO claims must be dismissed.

As to vertical relatedness, the plaintiff must plausibly allege 'that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise.'" Id. (citing United States v. Burden, 600 F.3d 204, 216 (2nd Cir. 2010)).

Plaintiffs make no allegations concerning vertical relatedness.

Accordingly, the RICO claims must be dismissed for this reason, as well.

**C.    The Complaint Does Not Allege an "Open-Ended" Pattern of Racketeering Activity**

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). In other words, courts do not require a plaintiff to establish that the criminal conduct occurred for a long time in the past (two years or more) if the defendant threatened certain RICO criminal conduct in the future, as of the time that the plaintiff sued.

The Second Circuit has clarified that this theory only applies to "inherently unlawful" criminal activities in pursuit of "inherently unlawful" goals, such as murder, obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering. See United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); Albunio v. Int'l Safety Grp., WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016) (emphasis added); see also Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000).

21

"Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity." See Grace Int'l Assemby of God v. Festa, 2019 WL 1369000, at *8 (S.D.N.Y. Mar. 26, 2019) (citing Aulicino, 44 F.3d at 1111). That is because using the mails or wires is not *per se* criminal—whether a particular piece of mail or wire communication is deceptive or not depends on factual details surrounding the communication, which lend themselves to resolution within an ordinary civil remedy (such as a common law fraud claim).

In contrast, murder, bribery and drug trafficking, etc., are generally illegal *per se*. Open-ended continuity is reserved for those cases in which the defendant's threat of future conduct rises to that grave level of offense rather than ordinary fraud. See Int'l Bhd. of Teamsters v. Carey, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004) ("[F]raud (the object of which is by definition to obtain money or property from others) has been held not to be 'inherently unlawful' in the RICO continuity context." (citation omitted)), aff'd *sub nom.* Int'l Bhd. of Teamsters v. Blitz, 124 Fed. Appx. 41 (2d Cir. 2005); see also Econ. Opportunity Comm'n v. Cnty. of Nassau, 47 F. Supp. 2d 353, 366-67 (E.D.N.Y. 1999) (mail fraud, wire fraud and Hobbs Act predicates are not inherently unlawful for purposes of RICO continuity).

In this case, Plaintiff relies entirely on alleged mail and wire fraud predicates. There are no allegations that Defendants engaged in or threatened "inherently unlawful" crimes such as murder, drug trafficking, money laundering, or anything of the sort. Accordingly, the plaintiffs' claims are ineligible for an open-ended continuity theory, and the pleading fails to allege a "pattern" of racketeering activity.

Indeed, courts may dismiss RICO claims "where the purported acts of mail fraud consisted of nothing more than routine business communications." See Am. Med. Ass'n v. United Healthcare Corp., 588 F. Supp. 2d 432, 443 (S.D.N.Y. 2008).

22

This is because a routine business communication serving as the basis for mail fraud under RICO must have content sufficient to provide "a reasonable inference of fraudulent intent." See Atl. Gypsum Co., Inc. v. Lloyds Intern. Corp., 753 F. Supp. 505, 514 (S.D.N.Y. 1990); see also O'Malley v. N.Y.C. Transit Auth., 896 F.2d 704, 707 (2d Cir. 1990).

Here, the purported acts of mail fraud consist of mailing IRS Form K-1s, which Dr. Halio received (and thus did not send), and the receipt of such tax forms are nothing more than routine business communications.

Similarly, Dr. Halio is indisputably a shareholder of Jobar and his receipt of funds is likewise nothing more than a routine business transaction. As such, Plaintiffs' RICO claims fail on this ground, as well.

For the foregoing reasons, Plaintiff has failed adequately to allege a pattern of racketeering activity under RICO subsection 1962(c). Accordingly, the complaint must be dismissed.

**D.    Plaintiffs RICO Conspiracy Claims Under 18 U.S.C. § 1962(d) Must be Dismissed**

If a "complaint does not adequately plead a substantive RICO violation, the conspiracy claim under § 1962(d) also fails." See BWP Media USA, Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 363 (S.D.N.Y. 2014). Since Plaintiffs fail to properly plead a civil RICO violation, its claim alleging a RICO conspiracy also must fail as a matter of law.

Furthermore, assuming *arguendo* that Plaintiffs had properly pled a RICO violation, their conspiracy claim still fails because it fails to allege specific facts showing that Dr. Halio entered into an agreement to commit any of the predicate acts. See Dulsky v. Worthy, 2013 WL 4038604, *5 (S.D.N.Y. July 30, 2013) ("The core of a RICO conspiracy is an agreement to commit predicate acts, and a RICO civil conspiracy complaint must specifically allege such an agreement") (internal quotations omitted).  Indeed, Dr. Halio's testimony was that he never asked for funds.

"[A] RICO conspiracy allegation should be more than a conclusory add-on at the end of a complaint. It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." See FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002).

Plaintiffs do not allege any facts demonstrating that Dr. Halio actually entered into any specific conspiracy agreement to do anything in particular with anyone else. Plaintiffs allege no details about when the purported agreement amongst the various individuals, all of whom are shareholders, was entered into, nor about how they intended to go about carrying out the alleged scheme, for example.

Moreover, there are no allegations in the Complaint demonstrating that Dr. Halio was aware of the scope of the purported enterprise. See, Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 407 (S.D.N.Y. 2000) (holding that the plaintiff failed to properly plead a violation under section 1962(d) where the complaint was "devoid of any factual allegation whatsoever to indicate that any of the moving defendants were aware of the alleged scope of the purported enterprise.")

This failure is fatal to Plaintiff's RICO conspiracy claim, and it should therefore be dismissed.

### IV. This Court Should Decline to Exercise Supplemental Jurisdiction

This Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. The Court has discretion to hear such claims pursuant to 28 U.S.C. § 1367(a), which states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

See 28 U.S.C. § 1367(a).

24

Under 28 U.S.C. § 1367(c)(3), however, the exercise of supplemental jurisdiction over a party's remaining state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." See TPTCC NY, Inc. v. Radiation Therapy Servs., 453 Fed. Appx. 105, 106 (2d Cir. 2011).

The Second Circuit has repeatedly counseled against exercising supplemental jurisdiction in this circumstance: "'[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" See First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004) (quoting Castellano v. Bd. of Trustees, 937 F.2d 752, 758 (2d Cir. 1991)).

Accordingly, because this Court should dismiss all of Plaintiff's claims that are based on a federal question under 28 U.S.C. § 1331, and because there is no other basis for jurisdiction over this case, the Court should decline to exercise its supplemental jurisdiction over Plaintiff's state law claims.

Dated:  Jamaica, New York
        February 29, 2024

Respectfully submitted,

**SAGE LEGAL LLC**

*/s/ Emanuel Kataev, Esq.___*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

**VIA ECF**
Scarinci & Hollenbeck, LLC
Attn: Dan Brecher, Esq.
589 Eighth Avenue, 16th Floor
New York, NY 10018-3005

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the
Estate of JOAN BUCK, and ROBERT BUCK,
individually and ROBERT BUCK, As Executor of the
Estate of JOAN BUCK, derivatively as shareholders
on behalf of JOBAR HOLDING CORPORATION,

**Case No.:**
**1:23-CV-11217(JGLC) (GS)**

Plaintiffs,

-against-

DAVID HALIO,

Defendant.
--------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT**

Dated: New York, New York
     March 28, 2024

**DAN BRECHER, ESQ.**
**SCARINCI & HOLLENBECK, LLC**
519 8th AVENUE, 25th FLOOR
NEW YORK, NY 10018
Phone: 212-286-0747
Facsimile: 212-808-4155
dbrecher@sh-law.com
*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ................................................................................................................11

    Point I.  Rule 12(b)(6) Standard.............................................................................11

    II.  The Complaint Sufficiently Asserts a Civil RICO Cause of Action.................12

        A.  Enterprise ....................................................................................................13

        B.  The Pattern of Racketeering Activity..........................................................15

        C.  Predicate Acts of Mail Fraud and Wire Fraud ...........................................15

            i.  Mail Fraud..............................................................................................16

            ii.  Wire Fraud ............................................................................................17

        D.  Related and Continuous Acts.......................................................................18

        E.  Civil RICO Conspiracy ...............................................................................21

CONCLUSION.............................................................................................................21

i

## TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE(S)**

*Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007,
109 S.Ct. 1643, 104 L.Ed.2d 158 (1989) ........................................................................12

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) ...........................11

*D'Addario v. D'Addario,* 21-2105 (Ct. of App. 2d Cir, 2022) .........................................................2

*Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) .............................................................11

*Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21 (2d Cir.1990) ........................................21

*H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238–44, 109 S. Ct. 2893, 2900–93, 106
L.Ed.2d 195 (1989) .................................................................................................15, 18

*IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052–53 (2d Cir.1993) ......................11

*LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991) .............................................................11, 14

*McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) .........................................................17

*Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.
Ct. 1280, 79 L.Ed.2d 684 (1984) .............................................................................12, 13

*Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert.
denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990) ...........................................11, 13

*Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993) ......................................11

*Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993) .............14

*River City Markets v. Fleming Foods West*, 960 F. 2d 1458 (9th Cir. 1992) .................................3

*Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993) ...........................................11

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) ..................12

*United States v. Alkins,* 925 F.2d 541, 551 (2d Cir.1991) .............................................................15

*United States v. Angelilli,* 660 F.2d 23 (2d Cir.1981), *cert. denied,* 455 U.S. 945, 102 S. Ct. 1442,
71 L.Ed.2d 657, *rehearing denied,* 456 U.S. 939, 102 S. Ct. 1998, 72 L.Ed.2d 460 (1982) ........15

*U.S. v. Aulicino,* 44 F.3d 1102, 1111–12 (2d Cir.1995) .............................................................20

ii

*United States v Beasley*, 72 F.3d 1518, 1526 (11th Cir.), *cert. denied*, 518 ...................................5

*United States v Elliot*, 89 F. 3d 1360 (8th Cir. 1996) U.S.1027 (1996) ...........................................4

*United States v. Indelicato*, 865 F.2d 1370, 1381 (2d Cir.) (*en banc* ), *cert. denied,* 493 U.S. 811, 110 S. Ct. 56, 107 L.Ed.2d 24 (1989) ........................................................................................15

*United States v. Lemire,* 720 F.2d 1327 (C.A.D.C.1983) ...........................................................17

*United States v. Riddle*, 249 F.3d 529, 538 (6th Cir.), *cert denied*, 534 U.S. 930 (2001) ..............5

*United States v. Turkette,* 452 U.S. 576, 583, 101 S. Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) ....13

## **RULES**

Fed.R.Civ.P. 8(a)(2) ....................................................................................................................12

Fed.R.Civ.P. 8(f) .........................................................................................................................12

Fed.R.Civ.P. 12(b)(1) ..................................................................................................................12

Fed.R.Civ.P. 12(b)(6) ..................................................................................................................12

Fed.R.Civ.P. 9(b) .........................................................................................................................12

18 U.S.C. § 1341 ..........................................................................................................................18

18 U.S.C. § 1343 ..........................................................................................................................17

18 U.S.C. §§ 1961–1968 .............................................................................................................12

18 U.S.C. § 1961(1) .....................................................................................................................15

18 U.S.C. § 1961(4) .....................................................................................................................13

18 U.S.C. § 1961(5) .....................................................................................................................15

18 U.S.C. § 1962(c) & (d) ................................................................................................12, 13, 21

26 U.S.C § 7201 .......................................................................................................................2, 11

New York CPLR §6301..................................................................................................................2

Section 1964(c) of Title 18 ..........................................................................................................12

Plaintiffs Jobar Holding Corporation (hereinafter "Jobar"), Robert Buck, Individually and as the Executor of the Estate of Joan Buck (hereinafter "Robert" or "Buck") and Buck derivatively as shareholders on behalf of Jobar Holding Corporation (collectively, "Plaintiffs"), respectfully submit this memorandum of law in opposition to the motion of defendant David Halio ("David") to dismiss the third and fourth causes of action of Plaintiffs' complaint under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

<u>**PRELIMINARY STATEMENT**</u>

Defendant's Memorandum (Document 13 herein), at page 8, states: "Equally vital, Plaintiffs' claims against Dr. Halio's mother have all been dismissed, except for a claim under the faithless servant doctrine, which is pending an appeal."  On February 29, 2024, the same day that Defendant filed the instant Motion to Dismiss, New York County Supreme Court Justice Cohen issued a Decision + Order (Index No. 655689/2017, NYSCEF Doc. No. 269) granting Plaintiffs' motion for leave to amend and file their amended complaint (NYSCEF Doc. No. 264), asserting their six causes of action, including the fraud, unjust enrichment and conversion claims that parallel the causes of action asserted against David here.  Given Defendant's argument here that the dismissal of the claims against Barbara Halio ("Barbara") was "vital" to its argument, Plaintiffs argue that the restoration of the similar state claims by Justice Cohen supports their position here in opposing Defendant's motion to dismiss, that David and his mother acted together to defraud the Buck Plaintiffs, literally stealing the Buck Plaintiffs' funds.

Despite admitting the "loans" they took from Jobar Holding Corporation's holdback Chase Bank account (the "Jobar Holdback Account") were never repaid and were never documented as loans, Barbara and David have been filing false and fraudulent tax returns in that regard to this day. Justice Cohen's 2020 injunction Order (NYSCEF Doc. No. 182) impounded and escrowed

1

$420,000 of Barbara Halio's funds and allowed for Plaintiffs' filing of a lis pendens on Barbara Halio's Oceanside, New York home. At his deposition, David did not deny that he has, for years, maintained his medical practice in a separated portion of Barbara's home at no rental cost to him. David's testimony showed that for the past ten years, David has been getting substantial financial support for his medical practice from his mother, including in and since April 2020, by requesting his mother to include himself and his professional malpractice insurer in distributions of hundreds of thousands of dollars from funds he knew she was holding for the benefit of, but had not paid to, the Plaintiffs despite payment having been promised by Barbara to Robert Buck.

   David's behavior confirms he knew these were purloined funds he was using to support his medical practice, and that the payments were not being properly reported by David and Barbara, in an unusual mother/son mutually beneficial and coordinated scheme to embezzle funds and then defraud the governmental taxing authorities out of taxes owed on this illegal income in violation of 26 U.S.C § 7201.  The continuing scheme caused the Plaintiffs to suffer continuing substantial losses for which plaintiffs have not yet been able to recover, including legal fees. *D'Addario v. D'Addario*, 21-2105 (Ct. of App. 2d Cir, 2022).

   Justice Cohen's 2020 order of injunctive relief, issued pursuant to New York CPLR §6301, gives more than mere plausibility to Plaintiffs' claims here, as one of the requisite findings for granting pre-discovery injunctive relief is that there be a showing of a likelihood of success on the merits.

   At page 17 of his Memorandum, Defendant argues that Plaintiffs' claims are merely a "family vendetta" and at page 5 he argues that the claims lack plausibility.  The existing injunction issued by Justice Cohen vitiates those arguments, as does Justice Cohen's February 29, 2024 Decision + Order.

4872-6523-4610, v. 1

Defendant alleges that the person/enterprise distinction cannot be met here where an individual person, David, is also alleged to be part of an association-in-fact enterprise consisting of David and his family members, particularly his mother, Barbara, as the unquestionable leader of the group (Complaint at ¶ 1, 3, 13, 16 and 74). The RICO persons are alleged in the Complaint to be David, his professional corporation and his mother. David testified at his deposition that he and his siblings waived their distributive shares of the Jobar Holdback account funds in her favor. They then received payments from her in fraudulent conveyances, including in 2020 (Complaint at ¶¶ 1, 3 and 16). See, *River City Markets v. Fleming Foods West*, 960 F. 2d 1458 (9th Cir. 1992). David and Barbara, in particular, and David's professional medical corporation, used and substantially benefited from embezzlement and tax fraud, to the detriment of these Plaintiffs, and David and Barbara are named defendants in the pending cases for that reason. David's medical corporation is particularly involved in the RICO structure, with the benefits it directly derived from the fraud, including the $43,966 wired payment to its insurer, the free rent provided, to this day, by Barbara Halio, in order to defraud her creditors, the Plaintiffs (Complaint at ¶¶ 16 and 41. Other family members living in California were less involved, and were more akin to the type of passive recipients of fraudulent conveyances as alleged in the Complaint, particularly out of the Water Mill Proceeds Accounts in 2020.

Barbara specifically promised to hold and pay to Robert Buck certain funds, but she subsequently paid the proceeds held in her personal Chase Bank account from the 2020 sale of her Water Mill vacation home to David and other family members. The injunction requires $420,000 of the sale proceeds to be deposited into to be held in the trust account of the Nagel Rice law firm, Barbara's former attorneys who, pursuant to Justice Cohen's injunction order, continue to hold $420,000 of the proceeds of the 2020 secret sale of Barbara's Water Mill

3

vacation home.  Barbara's account and the trust account are hereinafter referenced as the "Water

Mill Proceeds Accounts."

David, his professional corporation, and Barbara, acting in their association-in-fact enterprise

capacity, embezzled as much as two million dollars from the Jobar Holdback Account and the

Watermill Proceeds Accounts over a ten year period, during which they sought to cover their

tracks by withholding information from the Plaintiffs, delaying David's deposition from 2021 to

2023, filing fraudulent personal tax returns and K-1's, and as to Barbara, filing fraudulent Jobar

tax returns and causing the mailing of fraudulent K-1's in 2014, 2017 and other years.

The Jobar Holdback Account and the Water Mill Proceeds Accounts had contained a total in

excess of $2,500,000. They are the Chase Bank accounts from which the Halio's embezzled

funds owed to the Plaintiffs over a ten year period that includes fraudulent conveyances in April

2020. These are in breach of Barbara's sworn representation submitted in 2017 to Justice

Scarpulla in opposition to Plaintiffs' motion for an attachment order in the New York Supreme

Court action (Index No. 655689/2017, NYSCEF Doc. No. 34 at ⁋10).  Barbara has admitted

that she paid a total of nearly $250,000 from the Water Mill Proceeds Accounts to David and

other family members identified in the Complaint at paragraphs 1 and 3. Plaintiffs alleged these

were fraudulent conveyances of funds owed to Robert Buck that Barbara wired and checks she

mailed that were paid to David and to other family members living in California in April 2020.

Together with the earlier Jobar Holding Account transfers and checks she sent and mailed to

David, to a Florida creditor, and to family members in California, these constitute interstate wire

and mail transactions in support of the RICO persons' embezzlement of the enterprise's funds.

These transactions, by wire and the mails, sent out of the Chase Bank accounts, are sufficient

to establish the nexus with interstate commerce. *United States v Elliot*, 89 F. 3d 1360 (8th Cir.

4

1996); "[t]o satisfy [RICO's] interstate commerce requirement, only a slight effect on interstate commerce is required." *United States v Beasley*, 72 F.3d 1518, 1526 (11th Cir.), *cert. denied*, 518 U.S.1027 (1996); "a de minimus connection suffices for a RICO enterprise that 'affects' interstate commerce" *United States v. Riddle*, 249 F.3d 529, 538 (6th Cir.), *cert denied*, 534 U.S. 930 (2001).

The funds Barbara paid out of the proceeds of Barbara's secret 2020 sale of her Water Mill New York vacation home had been specifically promised to that Court by Barbara in 2017 to be paid to plaintiff Robert Buck. Barbara admitted the April 2020 fraudulent conveyances in paragraphs 29, 30 and elsewhere in her sworn submission dated September 9, 2020 (NYSCEF Doc. No. 169).

Thereafter, and continuing to this day, as alleged in the instant Complaint, David, his professional corporation and Barbara, the RICO persons, have repeatedly violated mail and wire fraud statutes in efforts to cover up their embezzlements of funds from the Jobar Holdback Account and the Water Mill Proceeds Accounts, to hide their ill-gotten gains from the taxing authorities, and to keep the Plaintiffs from recovering any of the embezzled funds. Plaintiffs have never recovered a penny from these or any other accounts (Complaint at ¶1).

The series of multiple conversions of Plaintiffs' funds from the two assets Barbara controlled as fiduciary for the benefit of Plaintiffs are a pattern of racketeering: 1) the Jobar Holdback Account and 2) the Water Mill Proceeds Accounts containing proceeds from the 2020 sale of Barbara's Water Mill New York vacation home which was supposed to be held for the benefit of Plaintiffs. This refutes the Defendant's argument, at page 14 of his Memorandum that the transactions are "not related nor continuous." Barbara admitted that the 2020 Water Mill Proceeds Accounts funds were derived in substantial part from Jobar Holding account "loans"

(NYSCEF Doc. No. 34 at ¶ 9). The April 2020 fraudulent conveyances by Barbara to David and other family members out of the Water Mill vacation home sales proceeds are acts related to, and within the pattern of their embezzlements from the Chase Bank accounts to support Barbara's lifestyle and David's medical practice; that is support David acknowledged at his deposition. He also acknowledged that Barbara's support for his medical practice continues to the present in the form of free rent for his medical practice in a separate section of Barbara's home.

These fraudulent conveyances and false tax filings were and are related as they are in support of David's and Barbara's tax fraud scheme for the purpose of defrauding the Internal Revenue Service and state taxing authorities, including the New York and California taxing authorities, out of personal taxes owed on embezzled funds. The transactions specifically identified in the instant Complaint as engaged in by Barbara, and enacted in concert with, and aided and abetted by, David, that were effected in April 2020 and continued thereafter, were in clear breach of her 2017 promise to Justice Scarpulla. The acts and transactions include the fraudulent conversion of funds Barbara admitted were sent to David and to family members in California in 2020, through wires and the United States mail (NYSCEF Doc. No. 169 ¶¶29 and 30). These are transactions set forth and described in the instant Complaint, Document #1 herein, Attachment #1 at ¶¶ 1, 72 and 83.

Defendant, having been present in the state court proceedings and having attended and participated at court-ordered mediation, has known throughout of the continued impropriety of his actions. This is also abundantly clear from David's 2023 deposition testimony in which it was shown by documented evidence as exhibits that he and his professional corporation received wires totaling six figures, and that he received, signed and deposited six figures of unrepaid "loans." Most glaring, was the wire payment out of the Jobar Holdback Account that David

6

directed be paid to his corporation's professional malpractice insurer for its insurance premium which Barbara was directed to pay by wire to the professional corporation's insurance provider out of the Jobar Holdback Account after a check to the insurance carrier for the premium payment had bounced (Complaint at ¶ 3). Thus, David's argument at the top of page 10 of his Memorandum, that he did not participate in the enterprise, is shown to be false. These were not loans, and he clearly asked Barbara to wire funds to his malpractice insurer that he knew were funds held for and owed to the Plaintiffs. This shows that David influenced decisions in directing the embezzlement of funds and where they should be sent.

Defendant delayed his deposition, which was noticed in November 2021, and was not held until January 2023. After his own substantial delays, there came Barbara's motion to quash, and finally, even after Plaintiffs had applied for a court order requiring him to comply with the 2021 subpoena there were further delays after the Plaintiffs succeeded in getting such an order.

Defendant's own Memorandum of Law submitted herein (Document 13), at the bottom of page 23 therein, acknowledges defendant's implausible and clearly untrue defense here that "he never asked for funds." At paragraphs 3, 4, 12, 14, 16, 34 and 36 - 48 of the instant Complaint, the inanity of Defendant's contention of innocence is readily seen: for one example, why and how did his mother come to wire the exact amount of his professional medical malpractice insurance premium of $43,996 to his insurer out of the Jobar Holdback account; and, how did she get the insurer's wiring instructions, if not from David, after his check to the insurer had bounced? This transaction, alone, shows the lie to his claim that he did not participate in directing the enterprise. Other similar examples in this pattern of embezzlement abound in the backs of the numerous checks marked "Loan" that he received, that he knew were embezzled from funds in the Jobar Holdback account, and then the $30,000

7

check Barbara issued to him from the 2020 Water Mill proceeds, that he then signed and deposited in his personal account.

As is shown below, the instant Complaint, which Defendant removed from New York Supreme Court, pleads the factual and structural elements required of a complaint for civil RICO and for civil RICO conspiracy. The basic elements of a civil RICO action are all satisfied by the allegations of the instant Complaint which alleges embezzlement, mail fraud, wire fraud and tax fraud, among other crimes included in the RICO Act.  The instant Complaint alleges that Barbara and David committed far more than two acts, each act causing losses to the Plaintiffs of more than $5,000, in which David acted in concert with Barbara in directing the embezzled payments and hiding this income from U.S., New York and California taxing authorities in false corporate and personal tax filings (Complaint at ¶¶ 72-73).

In a sworn 2017 statement that Barbara submitted to the New York Supreme Court, and in certain federal tax filings that were filed as evidence therein, and are referenced in the instant Complaint, Barbara admitted that she had purloined by that time a total of $1,140,975 out of the $1,500,000 Jobar Holdback Account that had been established for the distribution to the shareholders of Jobar Holding Corporation.  The money in the Holdback account, plus interest earned thereon, had been converted by Barbara and David (Complaint at ¶¶ 1, 14, 37 and 38)..

The pattern of conversion of Plaintiffs' funds accomplished by Barbara and David was further effected in April 2020 by Barbara sending hundreds of thousands of dollars of additional fraudulent transactions, including to David, and a further "loan" to Nils Peyron, another family member in California, thereby continuing the fraudulent "loan" pattern out of funds owed to Plaintiffs, that continued through April 2020.   In 2017, Barbara had represented to Justice Scarpulla, in opposition to a requested attachment order, that the funds she wound up sending to

David and his family members in 2020 would be paid to Robert Buck, to whom she specifically admitted to the Court she owed payment.  This further shows the continuity and relationship of the Jobar Holdback Account, the Water Mill Proceeds Accounts, the embezzlements and the fraudulent conveyances of funds owed to the plaintiffs, still withheld from the Plaintiffs by David and Barbara.

   The purloining of funds from the Jobar Holdback account was accomplished over a seven year period of multiple acts of embezzlement accomplished repeatedly by the removal of funds in transfers through checks Barbara Halio wrote to herself marked "Loan," in checks to David marked "Loan" and by several wires Barbara sent to David, including a $43,966 wire she sent to defendant David Halio's professional medical malpractice insurer in payment of his professional malpractice insurance premium, made necessary after he had bounced his check to the insurer.  Barbara never further documented the transactions and neither David nor Barbara ever repaid Jobar anything for the wired funds nor for any of the Jobar Holdback Account checks deposited in their personal accounts, each marked as a supposed "Loan."

   For his part, David admitted in sworn deposition testimony last year in his mother's case, that he had received hundreds of thousands of dollars of undocumented and unrepaid "loans" out of the Jobar Holdback Account.  David also did not deny that a $43,996 wire was sent out of the Jobar Holdback Account showing it was sent to pay for his professional malpractice insurance premium.

   David's and Barbara's illegal acts during ten years of embezzling funds served to deny Plaintiffs the money owed to them. (Complaint at ¶¶38 and 73).  This was admitted by Barbara in the New York Supreme Court proceedings.  The instant Complaint's fact allegations of past and continuing acts of multiple fraudulent conveyances and the tax fraud committed in

9

concert by Barbara and David, who provided essential and substantial assistance to each other, and to David's professional corporation, are not denied either.

   Such concerted activity constitutes "substantial assistance," which can consist of when a defendant affirmatively assists, helps, conceals or fails to act when required to do so, thereby enabling the act to occur.

   The fraudulent scheme and conspiracy Barbara and David conducted and the direct losses that their active and continuing conspiracy has caused the Plaintiffs to suffer, were proven sufficiently in Plaintiffs' attachment motion to satisfy the New York Supreme Court to issue the pre-discovery injunctive relief to the Plaintiffs stated in the injunction order issued by Justice Cohen on September 24, 2020 (NYSCEF Doc. No. 182).  Plaintiffs convinced that court that there was sufficient evidence shown that the Plaintiffs are likely to prevail on their claims of fraud and fraudulent conveyances.  That Court's injunction remains in place, with $420,000 of the Water Mill Proceeds Account remaining held in escrow in Barbara's former attorneys' trust account "pending the final determination" of the action, and "enjoining and restraining Halio …and all persons acting in concert … with her from further encumbering…disposing …her Assets…." (*Id*. At page 5, ¶¶ B, C and E).

   The continuing fraud and embezzlement scheme caused the Plaintiffs to suffer continuing substantial losses for which the United States Supreme Court has allowed for the recovery of legal fees in RICO claims such as these.

    David's behavior confirms he knew these were purloined funds he was using to support his professional medical corporation, and that these transactions were not being properly reported by David, his professional corporation and Barbara.  This was coordinated as between this mother/son mutually beneficial and coordinated scheme to defraud the governmental taxing

4872-6523-4610, v. 1

authorities out of taxes owed on this illegal income in violation of 26 U.S.C § 7201.

Accordingly, as David and Barbara's own admissions and Justice Cohen's Order granting Plaintiff's continuing injunctive relief show the bona fides of Plaintiffs' claims against Barbara and David, it is respectfully submitted that Defendant's motion to dismiss be denied.

## ARGUMENT

### Point I.  Rule 12(b)(6) Standard

In considering Defendant's Motion to Dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052–53 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994).

The Second Circuit has stated that in deciding a Rule 12(b)(6) motion a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels,* 992 F.2d at 15).

Here, the Court is only required to determine whether the complaint itself is legally sufficient, *see Goldman,* 754 F.2d at 1067, and in doing so,  the court must accept the allegations of the complaint as true, *see LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,*  493 U.S. 1022, 110 S. Ct. 723, 107 L.Ed.2d 743 (1990).

11

The court should construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S. Ct. 1643, 104 L.Ed.2d 158 (1989).

   Under the modern rules of pleading, the Plaintiffs need only show that they are entitled to relief, Fed.R.Civ.P. 8(a)(2)  and that "[a]ll pleadings shall be so construed as to do substantial justice". Fed.R.Civ.P. 8(f) further provides that "[a]ll pleadings shall be so construed as to do substantial justice."

   The Defendant moves to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6) and 9(b).  Federal jurisdiction in this action is alleged by Defendant to be the basis upon which he had the original action removed, based on the complaint's allegations of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. The Defendant asserts, inter alia, that: 1) the Complaint fails to state a RICO claim upon which relief can be granted; 2) the Complaint fails to plead fraud with particularity; and 3) in the absence of the RICO claim, there is no jurisdictional basis for the pendant state claims.

## II.  The Complaint Sufficiently Asserts a Civil RICO Cause of Action

   Under civil RICO it is unlawful to participate in the conduct of an enterprise's affairs through a pattern of racketeering or to conspire to violate any of the substantive provisions of Section 1962. *See* 18 U.S.C. § 1962(c) & (d). Section 1964(c) of Title 18 creates a private right of action for individuals to enforce the RICO statute.

   *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S. Ct. 1280, 79 L.Ed.2d 684 (1984), states threshold pleading requirements of a private action under Section 1962 of the RICO statute as follows:

4872-6523-4610, v. 1

To state a claim for damages under RICO, the plaintiff[s] ha[ve] two pleading burdens. First, [they] must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as "criminal RICO." In so doing, [they] must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.... Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden—*i.e.,* invoking RICO's civil remedies of treble damages, attorneys fees and costs.... To satisfy this latter burden, plaintiffs must allege that he was "injured in his business or property *by reason of* a violation of section 1962" (*Moss, supra,* 719 F.2d at p. 17 [citations omitted] ).

Plaintiffs have already shown their losses as a result of the embezzlements of their funds by Barbara, David and David's professional corporation, with the acquiescence of their family members. Below, we discuss the elements of the RICO claims Plaintiffs allege which satisfy the other pleading requirements.

**A. Enterprise**

An "enterprise" within the meaning of the RICO statute includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This enterprise is generally described as "a *group of persons* associated together for a common purpose of engaging in a course of conduct." *Procter & Gamble,* 879 F.2d at 15 (emphasis in original). The existence of an enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452

13

U.S. 576, 583, 101 S. Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). The term "enterprise"

encompasses both legitimate and illegitimate enterprises. *Id.* The Supreme Court recently has

held that "one must participate in the operation or management of the enterprise itself" to be

liable as part of a RICO enterprise. *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 1173,

122 L.Ed.2d 525 (1993). "Participate" in the context of RICO has a narrower meaning than "aid

and abet," and "*some* part in directing the enterprise's affairs is required." *113 S.* Ct. at 1170.

The instant Complaint alleges an "enterprise" between family members, including defendant's

professional corporation. At page 17 of his Memorandum, the Defendant argues that the instant

facts do not satisfy the *Reves* "operation or management" test, because no evidence suggested

that the Defendant participated in the operation or management of the enterprise.

   We submit that the cases cited by the Defendant clearly do not foreclose the possibility of

Defendant's liability for his evidenced participation with his mother in the embezzlement of

Plaintiffs' funds, and with participating in the cover-up of their thefts. While additional family

members living in California contributed to Plaintiffs' losses and could thereby be considered as

RICO persons, as alleged in the Complaint at ⁋⁋ 1, 3 and elsewhere in the pleading, with

positions in the RICO enterprise, the focus is rightly on the prime movers and prime

beneficiaries, the group consisting of Barbara, David and David's professional corporation, and

their use of the Jobar Holding Account and the Water Mill Proceeds Accounts as their jointly

used tools for their embezzlement scheme and the RICO violating tax dodge.

   For these reasons, Plaintiffs respectfully request that the Court construe all allegations in favor

of these Plaintiffs in reviewing Defendant's motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6), and determine for the purposes of this Motion that the Complaint sufficiently pleads a

"RICO enterprise." *See LaBounty,* 933 F.2d at 123.

4872-6523-4610, v. 1

**B. The Pattern of Racketeering Activity**

A "pattern" requires at least two acts of "racketeering activity," occurring within ten years of each other. *See* 18 U.S.C. § 1961(5). The term "racketeering activity" refers to the predicate acts necessary to sustain a RICO claim and include mail fraud and wire fraud. *See* 18 U.S.C. § 1961(1). Those predicate acts must be crimes under state or federal law. *United States v. Angelilli,* 660 F.2d 23 (2d Cir.1981), *cert. denied,* 455 U.S. 945, 102 S. Ct. 1442, 71 L.Ed.2d 657, *rehearing denied,* 456 U.S. 939, 102 S. Ct. 1998, 72 L.Ed.2d 460 (1982).

Both the Supreme Court and Second Circuit have held that an allegation of two acts of "racketeering activity", without more, is not sufficient to establish a pattern. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238–44, 109 S. Ct. 2893, 2900–93, 106 L.Ed.2d 195 (1989); *United States v. Indelicato,* 865 F.2d 1370, 1381 (2d Cir.) (*en banc* ), *cert. denied,* 493 U.S. 811, 110 S. Ct. 56, 107 L.Ed.2d 24 (1989). In order to constitute a "pattern" of racketeering activity, the predicate acts must be related and constitute a threat of continued racketeering activity and this determination is to be made on a case-by-case basis. *H.J. Inc.,* 492 U.S. at 238–44, 109 S. Ct. at 2900–93; *see also United States v. Alkins,* 925 F.2d 541, 551 (2d Cir.1991) (predicate acts must be related and amount to or pose a threat of continued criminal activity). In addressing the determination about a "pattern" of racketeering activity the Second Circuit noted that "[a]n interrelationship between acts, suggesting the existence of a pattern, may be established ... [by] proof of their temporal proximity, or common goals, or similarity of methods, or repetitions." *Indelicato,* 865 F.2d at 1382.

**C. Predicate Acts of Mail Fraud and Wire Fraud**

In the present case, the plaintiffs allege that multiple wirings of funds and writing checks marked loan that were not loans from the Jobar Holdback Account in support of embezzlement

15

of funds from the Jobar Holdback Account, and the continuing tax fraud alleged against David

and Barbara in the Complaint, are predicate acts of mail and wire fraud.

The Plaintiffs allege that an additional thread running through their acts these last ten years,

was Barbara's self-harming and violative efforts to do whatever she could to keep Buck from

getting anything owed to him, even while acknowledging to the Court that Buck was owed

hundreds of thousands of dollars.  The absurdity of Defendant's position is manifest at page 2 of

the Defendant's Memorandum, describing the Plaintiffs' efforts to recover funds that the

Defendant and Barbara acknowledge are owed to the Plaintiffs as a "family vendetta." No, it is a

lawsuit to recover funds for the Plaintiffs that the Defendant stole from him, and refuses to

return, while compounding the crime by continuing to defraud tax authorities.  An example of

the brazen nature of the scheme is David's professional corporation's embezzlement of $43,966

from the Jobar Holdback account by wiring of the funds to its professional malpractice insurance

carrier because David had bounced a check to them. The fact that there were other wirings of

funds directly to David out of the Jobar Holdback Account, and checks marked "Loan" that were

not loans (Complaint at ¶3), shows the disdain the group had for their obligations to pay the

Plaintiffs. Hence these lawsuits.

### i. Mail Fraud

In discussing the predicate act of mail fraud, the Second Circuit has stated that

[a]llegations of mail fraud must be made with the particularity required by Federal Rule of Civil

Procedure 9(b) ... Pursuant to this higher pleading standard, the "complaint must adequately

specify the statements it claims were false or misleading, give particulars as to the respect in

which plaintiffs contend the statements were fraudulent, state when and where the statements

4872-6523-4610, v. 1

were made, and identify those responsible for the statements." ... Plaintiffs asserting mail fraud

must also identify the purpose of the mailing within the defendant's fraudulent scheme.

*McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992) (citations omitted).

   In reviewing the allegations of a pattern of racketeering activity with regard to mail fraud, the

Court is referred to the specific allegations in the Complaint, at ¶¶84 and 85 (ii)(a) and (b) of the

fraudulent 2014 K-1, (b) the fraudulent 2014 K-1 sent to and filed by David, and (c) the

fraudulent annual Jobar tax returns filed by Barbara, and ¶ 73(a).  Mark Bernstein, Jobar and

both Halios' accountant, sent the 2014 Amended K-1's to Robert by mail with a cover Memo

dated 2/2/17 (NYSCEF Doc. No. 126), stating: "Robert, Enclosed are the Amended K-1's for

2014. I have to have the K-1's for 2016 by the end of the month. -Mark Bernstein." He enclosed

the original fraudulent 2014 K-1's, indicating huge income to the Buck Plaintiffs, and the

Amended ones, including Barbara Halio's still fraudulent Amended 2014 K-1 showing a

deductible $14 loss and that Halio avoided personal income tax on $494,000 of unreported

income. (NYSCEF Doc. No. 264, at paragraphs 74, 77 and 78 (a) and (b)).

### ii. Wire Fraud

   The Plaintiffs have alleged and evidenced the wire fraud committed by David and by his

professional medical corporation as predicate criminal acts.  In paragraph 3 of the Complaint,

Plaintiffs set forth the $43,966 wire that David caused to be sent to the professional corporation's

malpractice insurance carrier, and the four other wires sent to David out of the Jobar Holdback

Account, among other wired funds Barbara sent out of that account.

   "The elements of wire fraud are 1) a scheme to defraud and 2) use of interstate wire

communication to further that scheme." *United States v. Lemire,* 720 F.2d 1327

(C.A.D.C.1983) (noting that the requisite elements of wire fraud [18 U.S.C. § 1343] are identical

17

to those of mail fraud [18 U.S.C. § 1341] ).  In their Second Amended Complaint (NYSCEF Doc. No. 264, at paragraphs 48, 72 and 73), Robert Buck's September 9, 2015 and September 11, 2015 telephone calls with Barbara are set forth in detail, wherein Barbara admitted that the Holdback funds were gone, stating to Buck: "I spent that money" and with regard to the Kitty Buck Estate, she stated: "I was in charge of the monies and I really spent the monies … I used the money."

   The Plaintiffs allege that the Jobar Holdback Account and the Water Mill Proceeds personal account, and at least five more Jobar accounts opened and controlled by Halio, were maintained at JP Morgan Chase Bank (NYSCEF Doc. No. 264, at paragraphs 31, 59, 70 and 76).  JP Morgan Bank is engaged in interstate commerce, and Halio used those accounts to send funds to persons and entities, including out of state taxing authorities and her California relatives. Defendant acknowledges in his Memorandum that the Court should accept the allegations of the Complaint as true, and the Plaintiffs submit that the Court should find that this element is sufficiently plead.

**D. Related and Continuous Acts**

   The Supreme Court explained: "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.... Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 242, 109 S. Ct. 2893, 2900, 2902, 106 L.Ed.2d 195 (1989) (emphasis in original).

   The relevant time period, with regard to the allegations of wire, mail and tax fraud as to Defendant is ten years, and is an "open-ended pattern" given the close and continuing relationships of David, Barbara and David's professional medical corporation, which is housed

18

in a separate section of Barbara's home. As alleged in a number of places in the Complaint,

David's professional corporation's free rent in Barbara's home constitutes a continuation of the

pattern of fraudulent conveyances, in that Barbara has claimed she is insolvent for years, while

paying out gifts and loans to her family, and she continues to provide free occupancy of offices

for David's professional medical corporation out of a separate section of her home (NYSCEF

Doc. No. 34 at ¶8; Complaint at ¶¶16 and 43).   Further, although inactive for years, Jobar

remains an existing corporation, subject to filing corporate and tax reports and paying

government fees; this is solely to facilitate and further the tax fraud by Barbara and David

(Complaint at ¶¶ 24 and 42).

   Defendant's Memorandum, at page 14, contends that the Plaintiffs allegations are of "multiple

acts of racketeering activity occurring within ten years of each other." These allegations are seen

by Defendant as being the years of 2013, 2017 and 2020. Ignoring that Plaintiffs were relying on

Barbara's 2017 sworn promise of payment she made to Justice Scarpulla, Defendant seeks to

rely on the three year gap between 2017 and the 2020 application to Justice Cohen for injunctive

relief as somehow being a showing of lack of a pattern.  The Complaint shows that the acts

alleged include embezzlement, wire, mail and tax fraud, as well as fraudulent conveyances which

are clearly related, as they come out of JP Morgan Bank accounts controlled by Barbara, with

payments going to her family members and creditors, and not one penny to the Plaintiffs.

   Moreover, there are monies Barbara acknowledged that are owed to Robert Buck, but

substantial monies remain unavailable to him because $420,000 remains escrowed in the trust

account of Barbara's former lawyers pursuant to the 2020 injunction, thus continuing to frustrate

Buck's rights as a creditor of Barbara. At his 2023 deposition, which had been noticed in 2021,

when confronted with proof of the $43,966 wire paid for his professional corporation's

malpractice insurance premium, David made the incredible claim that he had paid it, but he could provide no document or information showing he had done so (NYSCEF Doc. No. 264, at paragraph 9). But his present argument of repayment of the wire shows that Plaintiffs did not know whether payment was made and David and Barbara's active deceptions and delays should serve to provide equitable tolling and defeat statute of limitations arguments David advanced. Moreover, the fraudulent conveyance payment David received in April 2020 out of the Water Mill Proceeds accounts is well within the four year statutory period David claims applicable, as are other more recent fraudulent conveyances between Barbara and David alleged in paragraphs 3 and 16 of the Complaint.

In a decision of the Second Circuit, RICO's "pattern" element was discussed in regard to the nature of the alleged acts and the duration of the scheme, stating:

"... in cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short. In contrast, in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity arising from conduct that extended over even longer periods. *U.S. v. Aulicino,* 44 F.3d 1102, 1111–12 (2d Cir.1995). The alleged predicate acts in this case concern acts that are inherently unlawful, including embezzlement referred to in the Second Circuit decision.

20

**E. Civil RICO Conspiracy**

The Plaintiffs allege that David, acting with his professional corporation, conspired with Barbara to commit the complained of acts of embezzlement, wire, mail and tax fraud. The essence of a RICO conspiracy is an agreement to commit the predicate acts. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21 (2d Cir.1990). "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Id.* at 25 (affirming dismissal of a complaint that "does not allege facts implying any agreement involving … at least two predicate acts").

The instant Complaint lists a number of specific acts and facts, providing dates and amounts of the embezzlements of funds, dates and specifics of the wire and mail fraud, and the documents, amounts and other specifics of the tax fraud of the RICO persons. For example, there are numerous  paragraphs of the Complaint that refer to the arrangement that David made with Barbara and that specifically allege violations of 18 U.S.C. 1962(d), and David's agreement and complicity therein, summarized in paragraph 88, as including paragraphs 3, 16, 28, 34 37, 42, 73, 83, 84 and 92.

## <u>CONCLUSION</u>

For the reasons stated above, and given Plaintiffs' demonstration of the plausibility of their Claims and their entitlement to relief given the existing order of injunction against the Defendant's co-conspirator, Plaintiffs respectfully request that the Court find that the instant Complaint states a cause of action under 18 U.S.C. § 1962(c) or § 1962(d) upon which relief can be granted against Defendant David Halio.

21

Respectfully submitted,

**SCARINCI & HOLLENBECK LLC**

Dated:  March 28, 2024

By:___ */s/ Dan Brecher*_____
 DAN BRECHER, ESQ.
 519 Eighth Avenue 25th Floor
 New York, New York 10018
 (212)286-0747 (office)
 (917-861-5057 (cell)
 (212-808-4155 (facsimile)
 dbrecher@sh-law.com

*Via E-Mail and ECF*
Sage Legal LLC
Attn: Emanuel Kataev, Esq.
emanuel@sagelegal.nyc
*Attorneys for Defendant*

4872-6523-4610, v. 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the
Estate of JOAN BUCK, and ROBERT BUCK, individually
and ROBERT BUCK, As Executor of the Estate of JOAN
BUCK, derivatively as shareholders on behalf of JOBAR
HOLDING CORPORATION,

**Case No.:**
**1:23-cv-11217 (JGLC) (GS)**

Plaintiffs,

-against-

DAVID HALIO,

Defendant.
-----------------------------------------------------------------------X

**DEFENDANT DR. DAVID HALIO'S REPLY MEMORANDUM OF LAW**
**<u>IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT</u>**

Dated: Jamaica, New York
      April 11, 2024

**SAGE LEGAL LLC**
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
mail@emanuelkataev.com

*Attorneys for Defendant*
*David Halio*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT ................................................................................................................ 2

    A.  THE STATUTE OF LIMITATIONS BARS RELIEF TO PLAINTIFFS ......... 2

    B.  DR. HALIO'S TAX RETURNS DO NOT CONSTUTE PREDICATE ACTS
        UNDER RICO ............................................................................................. 3

    C.  PLAINTIFFS' RICO CLAIMS ARE NOT BASED ON CONTINUOUS
        CRIMINAL CONDUCT ............................................................................. 4

    D.  PLAINTIFFS' FAILURE TO ADDRESS ARGUMENTS CONSTITUTE
        WAIVER ................................................................................................... 5

III. CONCLUSION ............................................................................................................ 6

## TABLE OF AUTHORITIES

**Cases**

Bankers Tr. Co. v. Rhoades,
    859 F.2d 1096 (2d Cir. 1988)................................................................... 3

Boneta v. Rolex Watch USA, Inc.,
    232 F. Supp. 3d 354 (S.D.N.Y. 2017)..................................................... 2

Crawford v. Franklin Credit Mgmt. Corp.,
    758 F.3d 473 (2d Cir. 2014)................................................................ 4, 5

Gross v. Waywell,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................................. 4, 5

Kaplan v. N.Y. State Dep't of Labor,
    No. 18-CIV.-3629 (KPF), 2019 WL 3252911 (S.D.N.Y. July 19, 2019).......................... 5

Lynch v. Amoruso,
    232 F. Supp. 3d 460 (S.D.N.Y. 2017)..................................................... 3

Sedima v. Imrex Co.,
    473 U.S. 479 (1985)................................................................................ 3

Spool v. World Child Int'l Adoption Agency,
    520 F.3d 178 (2d Cir. 2008)................................................................... 4

Tabas v. Tabas,
    47 F.3d 1280 (3d Cir. 1995)................................................................... 4

Tellis v. United States Fidelity & Guar. Co.,
    826 F.2d 477 (7th Cir. 1986) ................................................................. 5

United States v. Watts,
    No. 09-CR-62 (CM), 2011 WL 167627 (S.D.N.Y. Jan. 11, 2011)..................... 3

**Statutes**

18 U.S.C. § 1961............................................................................................... 3, 4

18 U.S.C. § 1964............................................................................................... 3

26 U.S.C. § 7201............................................................................................... 1, 4

**PRELIMINARY STATEMENT**

In the frenetic fog of Plaintiffs' pleas to avoid dismissal, when the dust settles, it is clear that this case must be dismissed.  Plaintiffs' opposition papers, which are more akin to a manifesto, provide no basis to deny this relief.

As an initial matter, Plaintiffs fail entirely to address the fact that their claims against the Defendant Dr. David Halio (hereinafter "Dr. Halio" or the "Defendant") are time-barred.  Plaintiffs also puzzlingly point to allegations concerning Defendant's medical practice as a "RICO person," but the medical practice is curiously not a defendant in this case.  Instead, without any authority whatsoever in support, Plaintiffs advance the meritless position that their claims should be equitably tolled, and that the Defendant's *mother's* failure to repay loans upon the sale of her Watermill, New York property – which Dr. Halio does not own – in April 2020 somehow apply to the Defendant.  It does not, and this Court should deny Plaintiffs' passive request, bereft of any support, for such extraordinary relief.

Even if this case were not time-barred, which it undeniably is, given that Plaintiffs' own allegations establish their knowledge of Defendant's alleged involvement since at least November 2016, the complaint fails to state a claim upon which relief can be granted.  This is because, among other reasons, tax fraud does not qualify as racketeering activity to satisfy the predicate acts necessary to state a claim under the RICO statutory scheme.

In an effort to avoid the inevitable dismissal of this case, Plaintiffs argue that Defendant violated 26 U.S.C. § 7201 – a criminal statute, over which no private right of action lies – despite the fact Plaintiffs have no standing to pursue such a claim.  This blatant abuse of the litigation privilege should not be countenanced.

Plaintiffs also argue that Defendant's *mother's* decision not to charge Dr. Halio rent for running a medical practice out of her home somehow constitutes fraud. This argument rings hollow, and only establishes the true nature of Plaintiffs' tactics; to engage in scorched earth litigation. For the reasons set forth below, Dr. Halio's motion to dismiss must be granted.

### <u>ARGUMENT</u>

### POINT ONE

### THE STATUTE OF LIMITATIONS BARS RELIEF TO PLAINTIFFS

As set forth in Dr. Halio's moving papers, the statute of limitations on a RICO claim runs from when the plaintiff discovered, or should have discovered, his injury, and it is the discovery of the injury that starts the clock on the statute of limitations. <u>See</u> ECF Docket Entry <u>13</u> at 8.

To avoid dismissal, Plaintiffs seek the extraordinary relief of equitable tolling, and argue that the sale of Defendant's *mother's* home – which Defendant is not alleged to have owned – constitutes a separate predicate act from which the statute of limitations may run. The relief Plaintiffs seek, and the arguments they make, are both entirely unsupported by any authority whatsoever. More importantly, and again as set forth in Dr. Halio's moving papers, the continuing violations doctrine does not apply to claims under RICO. Even if the sale of Defendant's mother's home does constitute a predicate act, it is missing the required second predicate act. <u>See</u> <u>Boneta v. Rolex Watch USA, Inc.</u>, 232 F. Supp. 3d 354, 358 (S.D.N.Y. 2017) ("A pattern of racketing requires the commission of 'at least two predicate acts of racketeering activity that are related and continuous'"). Here, again assuming *arguendo* that the sale of the Defendant's mother's property constitutes a predicate act (which it does not), there is no accompanying predicate act related to the sale of the property. Further, none of the allegations in the complaint concerning other predicate acts are *related* to the sale of the property.

Moreover, no cause of action under RICO can accrue without an injury that results from an alleged violation of the statute. See Bankers Tr. Co. v. Rhoades, 859 F.2d 1096, 1102–03 (2d Cir. 1988) ("Until such injury occurs, there is no right to sue for damages under § 1964(c), and until there is a right to sue under § 1964(c), a civil RICO action cannot be held to have accrued") (citing Sedima v. Imrex Co., 473 U.S. 479, 496 (1985) (plaintiff "can only recover to the extent that he has been injured in his business or property by the conduct constituting the violation").

In this case, Plaintiffs cannot claim any injury from the sale of Defendant's mother's home for two distinct reasons. First, this act cannot be attributed to Dr. Halio, but only against his mother, who is already being victimized as a defendant in a separate state court action by the same Plaintiffs herein. Second, the sale itself cannot serve as a predicate act; rather, Plaintiffs apparently argue that the failure to pay Plaintiffs out of the sale of those homes based on an alleged promise by Dr. Halio's mother gives rise, somehow, to an injury. This attenuated argument is meritless.

As set forth in the pleadings, Plaintiffs received notice of Defendant's alleged involvement in November 2016, and thus should have sued him no later than November 2020. Plaintiffs failed to do so, and – as such – their claims against Dr. Halio are time-barred. Accordingly, Plaintiffs' complaint must be dismissed as untimely based on statute of limitations ground.

### POINT TWO

### DR. HALIO'S TAX RETURNS DO NOT CONSTUTE PREDICATE ACTS UNDER RICO

Plaintiffs rely heavily on allegations of tax fraud to support their RICO claims. However, while RICO statute sets forth an "exhaustive list of predicate acts that qualify as 'racketeering activity,'" Lynch v. Amoruso, 232 F. Supp. 3d 460, 466 (S.D.N.Y. 2017), tax fraud is not among them. See 18 U.S.C. § 1961(1); see also United States v. Watts, No. 09-CR-62 (CM), 2011 WL 167627, at *6 (S.D.N.Y. Jan. 11, 2011) ("[T]he tax fraud offense is not itself a RICO predicate").

3

Indeed, the law in the Second Circuit is unambiguous that an offense "*must* be among the various criminal offenses listed in § 1961(1)" to qualify as a RICO predicate.  See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008) (emphasis added).  Critically, 26 U.S.C. § 7201 is nowhere to be found in the criminal offenses listed in 18 U.S.C. § 1961(1). Accordingly, Plaintiffs' reliance on tax fraud criminal statutes is misplaced.  As such, Plaintiffs fail to state a RICO claim even if they somehow survive the statute-of-limitations defense.

**POINT THREE**

**PLAINTIFFS' RICO CLAIMS ARE NOT BASED ON CONTINUOUS CRIMINAL CONDUCT**

To avail themselves of relief under RICO, Plaintiffs argue that there have been dozens of wire transfers and mailing of returns sufficient to state a claim for relief thereunder.  But Plaintiffs' approach has been repeatedly rejected by courts in this Circuit and others.

The Second Circuit has cautioned that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." See Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 489 (2d Cir. 2014) (internal quotation marks omitted); cf. Tabas v. Tabas, 47 F.3d 1280, 1290 (3d Cir. 1995) (*en banc*) ("The inclusion within the scope of civil RICO of [mail and wire fraud], more prevalent in the commercial world than in the world of racketeers, has caused concern that RICO sweeps too broad a swathe").  That is so because mail and wire communications, which are not themselves inherently unlawful activities, are routinely used in business operations, and "even in connection with an actual fraudulent scheme, there may be substantial innocent or incidental use of the mail or wires that may not relate to the any unlawful activity of the enterprise or that involves no deception of the plaintiff." See Gross v. Waywell, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (citation omitted).  Such is the case here.

"[T]o find the necessary criminality in those activities requires substantive inquiry beyond the mere fact of the communication, ordinarily by reference to other relevant considerations such as the extent to which the mailings were part of an intentional scheme to defraud, and in fact deceived, the victim." Id.  Accordingly, a mere multiplicity of wire or mail communications does not automatically satisfy the requisite continuity to establish a pattern of racketeering activity. Id.; cf. Crawford, 758 F.3d at 489 (discussing Tellis v. United States Fidelity & Guar. Co., 826 F.2d 477, 478 (7th Cir. 1986), and agreeing with the Seventh Circuit's reasoning that "multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern" for a civil RICO claim).

This Court should similarly find here that there exists no RICO claim based on the episodic and irregular transactions Plaintiffs themselves plead.  In addition, the years-long hiatus between the alleged fraudulent transfers set forth in the complaint does not connote a continuous criminal enterprise that the RICO statute was designed to eliminate.

Thus, as attractive as treble damages and attorneys' fees may be to the Plaintiffs, they must be relegated to state court to secure the funds held in escrow and move on with their lives.

**POINT FOUR**

**PLAINTIFFS' FAILURE TO ADDRESS ARGUMENTS CONSTITUTE WAIVER**

Plaintiffs makes no argument that the Colorado River abstention doctrine does not require dismissal of the complaint, nor of supplemental jurisdiction.

As such, they have conceded same for purposes of this motion.  See, e.g., Kaplan v. N.Y. State Dep't of Labor, No. 18-CIV.-3629 (KPF), 2019 WL 3252911, at *14-15 (S.D.N.Y. July 19, 2019) ("Courts will normally deem a claim abandoned if a plaintiff fails to address or oppose a defendant's arguments …").

**CONCLUSION**

Based upon the foregoing, Defendant respectfully requests that the Court: (1) dismissal of

the RICO claims; (2) decline to exercise supplemental jurisdiction of the state law claims; and (3)

for such other and further relief as this honorable Court deems just, equitable, and proper.

Dated: Jamaica, New York
      April 11, 2024                  Respectfully submitted,

                                           **SAGE LEGAL LLC**

                                           _/s/ Emanuel Kataev, Esq._____
                                           Emanuel Kataev, Esq.
                                           18211 Jamaica Avenue
                                           Jamaica, NY 11423-2327
                                           (718) 412-2421 (office)
                                           (917) 807-7819 (cellular)
                                           (718) 489-4155 (facsimile)
                                           mail@emanuelkataev.com

                                           *Attorneys for Defendant*
                                           *David Halio*

**VIA ECF**
Scarinci & Hollenbeck, LLC
<u>Attn</u>: Dan Brecher, Esq.
519 Eighth Avenue, 25th Floor
New York, NY 10018
(212) 286-0747 (office)
(917) 861-5057 (cellular)
(212) 808-4155 (facsimile)
dbrecher@sh-law.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the
Estate of JOAN BUCK, and ROBERT BUCK, individually     **Case No.:**
and ROBERT BUCK, As Executor of the Estate of JOAN     **1:23-cv-11217 (JGLC) (GS)**
BUCK, derivatively as shareholders on behalf of JOBAR
HOLDING CORPORATION,

                                                 **<u>NOTICE OF MOTION</u>**

                           Plaintiffs,

       -against-

DAVID HALIO,

                          Defendant.
--------------------------------------------------------------------X

      **PLEASE TAKE NOTICE,** that upon the accompanying Declaration of Emanuel Kataev,

Esq. and the Memorandum of Law submitted herewith, Defendant Dr. Halio will move this Court

before the Hon. Jessica G. L. Clarke, U.S.D.J., at the United States District Court for the Southern

District of New York, 500 Pearl Street, Courtroom 20C, New York, NY 10007-1312, for an Order

directing Plaintiffs and their counsel Scarini & Hollenbeck, LLC and Daniel S. Brecher, Esq. to

pay monetary sanctions and attorneys' fees pursuant to (i) Rules 11(b)(1), (2) & (3), 11(c); (ii) 28

U.S.C. § 1927; and (iii) and the Court's inherent power, and for such other remedies as the Court

deems just and proper.


      **PLEASE TAKE FURTHER NOTICE,** that – pursuant to the Local Civil Rule 6.1(b) of

the Local Rules of the United States District Courts for the Southern and Eastern Districts of New

York – opposition papers must be served within fourteen (14) days of filing of the moving papers,

and reply papers must be served within seven (7) days of service and filing of the opposition

papers.

Dated:  Jamaica, New York
   April 12, 2024       Respectfully submitted,

                **SAGE LEGAL LLC**

                By:  */s/ Emanuel Kataev, Esq.*
                Emanuel Kataev, Esq.
                18211 Jamaica Avenue
                Jamaica, NY 11423-2327
                (718) 412-2421 (office)
                (917) 807-7819 (cellular)
                (718) 489-4155 (facsimile)
                emanuel@sagelegal.nyc

                *Attorneys for Defendant*
                *Dr. David Halio*

**<u>VIA CERTIFIED MAIL & ECF</u>**
Scarinci & Hollenbeck, LLC
<u>Attn</u>: Daniel S. Brecher, Esq.
519 Eighth Avenue, 25th Floor
New York, NY 10018
(212) 286-0747 (office)
(917) 861-5057 (cellular)
(212) 808-4155 (facsimile)
dbrecher@sh-law.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the
Estate of JOAN BUCK, and ROBERT BUCK, individually
and ROBERT BUCK, As Executor of the Estate of JOAN
BUCK, derivatively as shareholders on behalf of JOBAR
HOLDING CORPORATION,

                     Case No.:
                     **1:23-cv-11217 (JGLC) (GS)**

                Plaintiffs,

     -against-

DAVID HALIO,

                Defendant.
-----------------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR
SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Dated: Jamaica, New York
      April 12, 2024

              **SAGE LEGAL LLC**
              Emanuel Kataev, Esq.
              18211 Jamaica Avenue
              Jamaica, NY 11423-2327
              (718) 412-2421 (office)
              (917) 807-7819 (cellular)
              (718) 489-4155 (facsimile)
              mail@emanuelkataev.com

              *Attorneys for Defendant*
              *David Halio*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF RELEVANT FACTS & PROCEDURAL HISTORY ....................................2

ARGUMENT ....................................................................3

    I.       SANCTIONS ARE APPROPRIATE PURSUANT TO RULE 11 ........................3

        A.  Sage-Harbor Notice ................................................3

        B.  Rule 11 Standard....................................................5

             i.       There is No Basis in Law or Fact for Plaintiffs to Bring the Instant RICO Claims ..................................................6

             ii.      Sanctions Should Be Imposed ..................................7

             iii.     Proposed Sanctions ...........................................9

    II.      SANCTIONS ARE WARRANTED PURSUANT 28 U.S.C. § 1927................12

    III.    THE COURT SHOULD OTHERWISE ISSUE SANCTIONS PURSUANT TO ITS INHERENT POWER........................................................13

    IV.    PLAINTIFFS CANNOT AVOID SANCTIONS BY VOLUNTARILY DISMISSING THE COMPLAINT......................................................13

CONCLUSION..................................................................14

# A131

**TABLE OF AUTHORITIES**

**Cases**

Azrielli v. Cohen Law Offices,
    21 F.3d 512 (2d Cir. 1994) ................................................................ 6

Chambers v. NASCO, Inc.,
    501 U.S. 32, 47, 111 S. Ct. 2123, 2134, 115 L. Ed. 2d 27 (1991) ............................... 7, 13

Cofacredit, S.A. v. Windsor Plumbing Supply Co.,
    187 F.3d 229 (2d Cir. 1999) ................................................................ 6

Cooter & Gell v. Hartmarx Corp.,
    496 U.S. 384 (1990) ................................................................ 5, 8, 13

Edmonds v. Seavey, 2009 US Dist LEXIS 111915 (SDNY Dec. 2, 2009)
    496 U.S. 384 (1990) ................................................................ 12

Elsevier, Inc. v. Grossman,
    2013 WL 6331839 (S.D.N.Y. Dec. 5, 2013) ................................................................ 6

First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004) ................................................................ 6

Four Keys Leasing & Maint. Corp. v. Simithis,
    849 F.2d 770 (2d Cir. 1988) ................................................................ 5

Galasso v. Eisman, Zucker, Klein & Ruttenberg,
    310 F. Supp. 2d 569 (S.D.N.Y. 2004) ................................................................ 11

GICC Capital  Corp. v. Tech. Fin. Group, Inc.,
    67 F.3d 463 (2d Cir. 1995) ................................................................ 6

Guarino v. Resciniti (In re Resciniti),
    2019 Bankr. LEXIS 951, 2019 WL 1451278 (Bankr. E.D.N.Y. Mar. 29, 2019) ............... 3

H.J. Inc., et al. v.  Northwestern Bell Tel. Co.,
    492 U.S. 229 (1989) ................................................................ 6

Ideal Instruments, Inc. v. Rivard Instruments, Inc.,
    243 F.R.D. 322 (N.D. Iowa 2007) ................................................................ 4

Katzman v Victoria's Secret Catalogue,
    167 FRD 649 (SDNY 1996) ................................................................ 12

Knipe v. Skinner,
     19 F.3d 72 (2d Cir. 1994).................................................................................. 8

Landmark Ventures, Inc. v. Cohen,
     2014 U.S. Dist. LEXIS 165366 (S.D.N.Y. Nov. 25, 2014) ............................ 10

Lawrence v. Richman Grp. Of CT LLC,
     620 F.3d 153 (2d Cir. 2010)........................................................................... 4

LCS Group, LLC v Shire LLC,
     2019 US Dist LEXIS 43255 (SDNY 2019)..................................................... 12

Margo v. Weiss,
     213 F.3d 55 (2d Cir. 2000)............................................................................. 11

Morley v. Ciba-Geigy Corp.,
     66 F.3d 21 (2d Cir. 1995) .............................................................................. 5

Muthig v. Brant Point Nantucket, Inc.,
     838 F.2d 600 (1st Cir. 1988) ......................................................................... 14

Roeder v. Rogers,
     206 F. Supp. 2d 406 (W.D.N.Y. 2002)........................................................... 11

Schlaifer Nance & Co. v. Estate of Warhol,
     194 F.3d 323 (3d Cir. 1999).......................................................................3-4, 4

Schottenstein v. Schottenstein,
     230 F.R.D. 355 (S.D.N.Y. 2005) ................................................................... 11

Shangold v. Walt Disney Co.,
     2006 WL 71672 (S.D.N.Y. Jan. 12, 2006) ..................................................... 13

Shangold v. Walt Disney Co.,
     275 Fed. Appx. 72 (2d Cir. 2008) .................................................................. 13

Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
     682 F.3d 170 (2d Cir. 2012).......................................................................... 3, 4

Storey v. Cello Holdings, L.L.C.,
     347 F.3d 370 (2d Cir. 2003).......................................................................... 4

Szabo Food Service, Inc. v. Canteen Corp.,
     823 F.2d 1073 (7th Cir. 1987) ...................................................................... 14

iii

Szabo Food Service, Inc. v. Canteen Corp.,
    485 U.S. 901, 99 L. Ed. 2d 229 (1988) ............................................................ 14

Truong v. New York Hotel and Motel Trades Council,
    2011 U.S. Dist. LEXIS 3985 (S.D.N.Y. Jan. 12, 2011) ................................... 10

Weinraub v. Glen Rauch Sec., Inc.,
    419 F. Supp. 2d 507 (S.D.N.Y. Dec. 9, 2005) ................................................ 11

**Statutes**

18 U.S.C. § 1961 ....................................................................................................... 6

18 U.S.C. § 1962 ................................................................................................... 6, 7

28 U.S.C. § 1927 ................................................................................................. 2, 12

**Rules**

Fed. R. Civ. P. 11 ...................................................... 1, 2, 3, 3 n. 2, 4, 5, 7, 9, 12, 13, 14

Fed. R. Civ. P. 12 ................................................................................................... 11

**Other**

Amendments to Federal Rules of Civil Procedure, 97 F.R.D. 165, 192 (1983) (Letter from Judge
Walter Mansfield, Chairman, Advisory Committee on Civil Rules (Mar. 9, 1982)).............14

**PRELIMINARY STATEMENT**

In the annals of frivolity, the complaint in this case reigns supreme.  As suspected from outset of this case, Plaintiffs and their counsel either: (i) have no idea what a RICO[1] claim actually is; or (ii) do know and disgustingly decided to ignore that knowledge in order to continue to engage in their family vendetta against Dr. David Halio and his ninety (90) year old mother.  What is particularly revolting is how Plaintiffs, by and through their counsel, quickly made a circus out of its claims and attempted to make a monkey out of Dr. Halio, all the while ignoring the elephant in the room; that the Complaint on its face does not state a claim under RICO!

Almost as abysmally abominable is the fact that Plaintiffs are apparently currently represented by the same counsel who have failed to timely commence this case, thus committing malpractice, and preventing Plaintiffs' mastermind Robert Buck from continuing to engage in his family vendetta.  It is no wonder that they were so easily able to make, as ringleaders, such a circus out of these proceedings.

Rule 11 sanctions are therefore more than appropriate in this case. Specifically, the record establishes that Plaintiffs failed to reasonably investigate the RICO claim, improperly dragging Dr. David Halio into this stigma-inducing litigation without any basis in law or fact to bring such a claim in the first place.  Plaintiffs concocted this stigma-inducing litigation in order to engage in a family vendetta as an estranged member of the family.  In fact, prior to and during this case, Plaintiffs were repeatedly warned that their Complaint failed to allege facts that would bring this case above the threshold of ordinary fraud to rise to the level of a stigma-inducing RICO claim.

---

[1] RICO is an acronym for the Racketeer Influenced and Corrupt Organization Act ("RICO").  It is known by lawyers and laypersons alike to refer to mafia-related criminal activity, organized crime, and "the mob;" it therefore appropriately carries a negative stigma in legitimate society and is especially damaging when associated with a professional such as Defendant Dr. David Halio.

Notably, even when presented with the opportunity to amend its Complaint to allege necessary facts – which Plaintiffs knew they could not actually do – they failed to amend the Complaint.

Accordingly, Plaintiffs and their counsel should be sanctioned for their concerted, repeated, unjustifiable, and willful misconduct which includes, but is not limited to, their failure to conduct a reasonable inquiry into the legal and factual basis for the instant RICO claims.

Defendant alternatively requests that the Court issue sanctions as permitted by 28 U.S.C. § 1927 and/or its inherent power based on the egregious conduct of Plaintiffs and their counsel.

Accordingly, Defendant submits this memorandum of law in support of their motion for an Order (a) directing Plaintiffs and their counsel to pay monetary sanctions and attorneys' fees pursuant to (i) Rules 11(b)(1), (2) & (3), and 11(c); (ii) 28 U.S.C. § 1927; and/or (iii) and the Court's inherent power; and (b) issuing such other and further relief as this honorable Court deems just, equitable, and proper.

### STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

As set forth in detail in Defendant's Motion to Dismiss, Plaintiffs' RICO claims lack any basis in law or fact to proceed and is no more than a devious plan concocted by Plaintiffs and their counsel to attempt to engage in a family vendetta, all while casting a scarlet letter on Dr. Halio and harming Defendant due to the pending RICO claim that is readily searchable by anyone conducting research on him.  A Justice of the Supreme Court of the State of New York and Defendant himself has long ago placed Plaintiffs on notice that the Complaint lacked any merit and failed to properly allege facts that would warrant the instant RICO claim pled therein.  Additionally, Plaintiffs and their counsel refused an opportunity to seek leave to amend the Complaint, permitting the factually and legally insufficient RICO Complaint to remain.

2

Dr. Halio has been prejudiced by Plaintiffs maintaining the frivolous stigma-inducing RICO claim for the world at large to discover.

This Court must therefore issue appropriate sanctions.

## ARGUMENT

### POINT I

### SANCTIONS ARE APPROPRIATE PURSUANT TO RULE 11

#### A. **Safe-Harbor Notice**[2]

Before a court may consider the merits of a Rule 11 motion, the movant must have complied with the 21-day safe-harbor notice required under Rule 11(c)(2) by (1) first serving a motion for sanctions on the opposing party, and (2) providing the opposing party with a 21-day period to withdraw or appropriately correct the challenged document before a motion for sanctions is filed or presented to the court. See Fed. R. Civ. P. 11. "The safe-harbor provision is a strict procedural requirement." See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012); see also Guarino v. Resciniti (In re Resciniti), 2019 Bankr. LEXIS 951, 2019 WL 1451278, at *1 (Bankr. E.D.N.Y. Mar. 29, 2019).

The proposed Rule 11 motion must be served upon the opposing party prior to the motion being filed with the Court so that the opposing party will have "notice of the alleged violation and an opportunity to respond before sanctions are imposed." See Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Additionally,

> Rule 11 and principles of due process require that "the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." Schlaifer Nance & Co.

---

[2] The Court can also issue sanctions on its own initiative without affording the offending party a safe-harbor period pursuant to Rule 11(c)(3) for conduct that violates Rule 11(b).

v. Estate of Warhol, 194 F.3d 323, 334 (3d Cir. 1999). "Indeed, only conduct explicitly referred to in the instrument providing notice is sanctionable." Id. (citation omitted); accord Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 389 (2d Cir. 2003).

See Star Mark Mgmt., Inc., 682 F.3d at 175. There, the Second Circuit held that service of an informal letter outlining the basis for sanctions and an attached notice of motion meets the procedural requirements to trigger the safe-harbor period even though the defendant did not serve any supporting affidavits or memorandum of law. Id. at 175-77 citing Ideal Instruments, Inc. v. Rivard Instruments, Inc., 243 F.R.D. 322, 339 (N.D. Iowa 2007) ("Rule 11 says nothing about requiring service of the brief in support of a Rule 11 motion to trigger the twenty-one day 'safe harbor'"). In its analysis, the Second Circuit reasoned that requiring a party to go through the expense of preparing a fully supported motion with a memorandum of law and exhibits would undermine one of the main purposes of the safe-harbor provision, i.e., "to reduce, if not eliminate, the unnecessary expenditure of . . . adversary resources." See Id. at 177 (citing Lawrence v. Richman Grp. Of CT LLC, 620 F.3d 153, 158 (2d Cir. 2010) (per curiam)).

Here, Defendant served his Rule 11 Safe Harbor Notice on April 12, 2024. See Declaration of Emanuel Kataev, Esq. (hereinafter "Kataev Decl."), ¶ 3, Exhibit A. The Rule 11 Safe Harbor Notice consisted of a copy of the instant motion, outlining the reasons why sanctions are warranted and included a notice of motion for sanctions.

Despite the unequivocal notice, Plaintiffs not only refused to withdraw their Complaint but instead doubled down, forcing Dr. Halio and his mother to engage in costly motion practice. Defendant was therefore required to defend himself against the baseless allegations.

Based on the contents of Defendant's motion to dismiss and the arguments raised here, Plaintiffs received sufficient notice as required by Rule 11 such that the procedural prerequisites for Defendant's motion for sanctions have been satisfied.

4

B. <u>Rule 11 Standard</u>

Rule 11 requires that an attorney or party, certify to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that any pleading presented to the court contains claims that contain a legally sufficient basis, and that the allegations and other factual contentions have evidentiary support.  <u>See</u> Fed. R. Civ. P. 11(b).

One of the basic purposes of Rule 11 is to "deter baseless filings in the district court . . . ." <u>See</u> <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 393 (1990). Under Fed. R. Civ. P. 11(c), a district court may impose sanctions on a party or his counsel (or both), for failing to comply with Rule 11(b).

In fact, sanctions are appropriate where "it should have been patently obvious to any attorney who had familiarized himself with the law" that his action was frivolous. <u>See</u> <u>Four Keys Leasing & Maint. Corp. v. Simithis</u>, 849 F.2d 770, 773 (2d Cir. 1988); <u>see also</u> <u>Morley v. Ciba-Geigy Corp.</u>, 66 F.3d 21, 25 (2d Cir. 1995) ("An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions, if under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands")."

Moreover, where the arguments for asserting claims are made by counsel, the Rule 11 sanctions should be imposed on the lawyer and law firm responsible for making those arguments. <u>See</u> Fed. R. Civ. P. 11(c)(1).

Here, there was no basis in law or fact for Plaintiffs to initiate the instant RICO claims, nor was there any basis for Plaintiffs to continue this litigation despite being on notice from Defendant's motion that their claims lacked merit and were subject to dismissal.

For the reasons set forth below, the conduct of Plaintiffs and their counsel in the instant action warrants sanctions.

### i.  There is No Basis in Law or Fact For Plaintiffs to Bring the Instant RICO Claims

As outlined in detail in Defendant's Motion to Dismiss, there was no basis for Plaintiffs and their counsel to bring the instant RICO Complaint. See ECF Docket Entries 12-13.  Plaintiffs and their counsel knew this to be true, have been repeatedly cautioned that their RICO claims are frivolous, and continued to prosecute this case, even after Defendant moved to dismiss.

Plaintiffs assert alleged RICO violations under 18 U.S.C. § 1962.  "To establish a claim for a civil violation of section 1962(c), 'a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994)).  In order to plead a "pattern of racketeering," a plaintiff must plausibly allege multiple acts of racketeering activity occurring within 10 years of each other (see 18 U.S.C. § 1961(5); see also Elsevier, Inc. v. Grossman, 2013 WL 6331839, at *9 (S.D.N.Y. Dec. 5, 2013)), and the predicate acts must be "related" and "continuous." See H.J. Inc., et al. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238-44 (1989). "Continuity" may be established through either "a closed period of repeated conduct, or [ ] past conduct that by its nature projects into the future with a threat of repetition." Id. at 241 (citation omitted); see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004) (RICO plaintiffs "must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time) (quoting GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995))).

The Plaintiffs' RICO claims against the Defendant pursuant to 18 U.S.C. §§ 1962(c) and 1962(d) rely on sparse, conclusory allegations that Dr. Halio "knowingly" engaged in a scheme to defraud Plaintiffs.

Dr. Halio respectfully incorporates by reference the Hon. Joel M. Cohen, J.S.C.'s ("Justice Cohen") decision & Order dismissing the RICO claims against Defendant's mother, as well as the arguments set forth in his memorandum of law in support and reply memorandum of law in further support, as to why the RICO claims here have absolutely no merit.  Plaintiffs have failed to heed the warning of Justice Cohen and have repeated their conduct by suing Dr. Halio based on the same deficient allegations that have already been determined to be meritless.  The only way to purge Plaintiffs' conduct is by the issuance of appropriate sanctions.

For the foregoing reasons and those set forth below, Plaintiffs' RICO claims lack merit and are frivolous such that sanctions are warranted.

### ii. <u>Sanctions Should Be Imposed</u>

As discussed in the prior sub-sections, prior to filing the Complaint and during the course of this litigation, Plaintiffs did not conduct a reasonable inquiry to determine whether there was a factual and/or legally sufficient basis to continue with the instant RICO Complaint. Alternatively, and even worse, Plaintiffs pushed forward knowing that there were no such grounds to bring its RICO Complaint and did so with reckless disregard as to the consequences of emblazoning the scarlet letters of RICO upon Dr. Halio.

 The reasonable inquiry element is measured by an objective standard of reasonableness under the circumstances.  See Chambers v. NASCO, Inc., 501 U.S. 32, 47, 111 S. Ct. 2123, 2134, 115 L. Ed. 2d 27 (1991) ("Rule 11 . . . imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith.").

7

Subjective good faith on the part of the attorney is insufficient to avoid sanction. See Knipe v. Skinner, 19 F.3d 72, 75 (2d Cir. 1994). The court must examine the objective knowledge of the attorney at the time the challenged paper was signed to determine whether the claim was well grounded in both law and fact. See Cooter & Gell, 496 U.S. at 399; Knipe, 19 F.3d at 75.

Here, Defendant placed Plaintiffs on notice numerous times that its Complaint lacked the necessary allegations of fact to state a claim under RICO. Namely, Dr. Halio moved to dismiss the complaint, and Plaintiffs were aware from a prior related action that the RICO claims are completely devoid of merit. Indeed, Plaintiffs and their counsel were aware of these deficiencies as early as October 7, 2020, when Justice Cohen dismissed the RICO claims against Defendant's mother, which claims are a mirror image of those here. See NYSCEF Docket Entries 184 and 235 at 17:9-11, 18:8-14 ("Just to get something easy out of the way, Mr. Bretcher. I'm not a big fan of attaching RECO claims at the back of complaints. I don't see it. … Look, counsel, these are just run-of-the-mill allegations of fiduciary duty and other things relating to that. This is not what the RECO statute is about. This is not some criminal enterprise or something along those lines, I think you probably know that. And, you know, there's no proximate link between some sort of horrible credible act.") As early as October 7, 2020, Plaintiffs were aware of the need to conduct a reasonable inquiry into its RICO claims, which they did not do, as is apparent upon a review of the complaint and the relevant law concerning RICO. See NYSCEF Docket Entry 235 at 41:6-14 ("Count 3 and 4, which are the RECO [*sic*] counts, they are dismissed. They failed to allege facts sufficient to support what is a conclusory assertion that there was a pattern of racketeering activities, the existence of an enterprise and proximate cause. I note that, to the extent these are state related claims, there's nothing to suggest that it is a claim against someone in their position as an Executrix of an Estate; and, so, to the extent that it is a RECO [*sic*] claim it fails").

Plaintiffs and their counsel should be sanctioned. Had they conducted a reasonable inquiry into the issues raised herein or even understood how to plead a viable RICO claim, Dr. Halio would not have been forced to engage in litigation before this Court for months.

Based on the facts and circumstances of this case, with its unusual procedural history and trajectory, a darker scenario is also likely. Plaintiffs knew the facts and law at issue, but were likely subjecting Defendant to litigate and force them to expend attorneys' fees as a means to pressure Dr. Halio's mother to pay Plaintiffs more than what they were entitled to due to the cost of litigation. Based on the egregious conduct of Plaintiffs, Defendant has incurred and will continue to incur substantial expenses in the form of attorneys' fees in this process. There is also no quantification for the damage and carnage caused by Plaintiffs in: (i) damaging Dr. Halio's reputation with a RICO lawsuit; and (ii) causing Dr. Halio's ninety (90) year old mother severe emotional distress with a repeated barrage of scorched earth litigation tactics, including suing her son Dr. Halio. Consequently, sanctions must be imposed on Plaintiffs and their counsel for violations of Rule 11. See Fed. Rule Civ. P. 11(b).

### iii.  Proposed Sanctions

Rule 11 makes clear that sanctions are "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." See Fed. R. Civ. P. 11(c)(4). Sanctions may include an Order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation. Id. The most cursory review of the facts and law (e.g., in-depth conversations with Plaintiffs and a good-faith review of caselaw, including that in the related action against Defendant's mother, discussed *supra*) would have revealed that there are no set of plausible facts that could be alleged to make a *prima facie* RICO claim.

What's worse, Plaintiffs merely mirrored their prior RICO allegations – which Justice Cohen decided did not state a claim for relief under RICO – without in any way curing the pleading deficiencies.

While a review of the relevant case law and the facts of this case should have prevented Plaintiffs from filing the complaint, Plaintiffs maintained the instant proceeding without prosecuting it as required by the Federal Rules of Civil Procedure. notwithstanding the clear and convincing caselaw rebutting its unsupportable positions.

Defendant and his mother have been put through the proverbial "legal ringer" for over six (6) years since Plaintiffs filed a state court action in 2017 and the instant frivolous case by having to expend substantial legal resources on motion practice. In reality, no such litigation should have ever been commenced.

Accordingly, Dr. Halio requests this Court impose sanctions against Plaintiffs and their counsel including (a) dismissal of the complaint with prejudice; (b) an award of Defendant's reasonable attorneys' fees and costs incurred from the date of the filing of this case, (c) an award of monetary penalties; (d) an in-person conference with all parties, including each representative of Plaintiffs, present to conduct an evidentiary hearing and for this Court to apprise Plaintiffs of their counsel's conduct in this case; (e) payment of a sum to be determined by this Court to the Lawyers' Fund for Client Protection; and (f) such other and further relief as this court deems just, equitable, and proper.  See Landmark Ventures, Inc. v. Cohen, 2014 U.S. Dist. LEXIS 165366, *17 (S.D.N.Y. Nov. 25, 2014) (sanctioning plaintiff's counsel $20,000.00 for frivolous arguments in opposition to a motion to dismiss as a "reasonable and sufficient" sanction "to deter repetition of the conduct or comparable conduct by others"); see also Truong v. New York Hotel and Motel Trades Council, 2011 U.S. Dist. LEXIS 3985 (S.D.N.Y. Jan. 12, 2011) (awarding sanctions of

attorney's fees in the amount of $72,761.50); Weinraub v. Glen Rauch Sec., Inc., 419 F. Supp. 2d 507, 520 (S.D.N.Y. Dec. 9, 2005) (awarding sanctions of attorney's fees in the amount of $7,200.65).; Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569 (S.D.N.Y. 2004) (attorney sanctioned $5,000.00 for filing claims which were without merit or factual support); Schottenstein v. Schottenstein, 230 F.R.D. 355 (S.D.N.Y. 2005) (dismissal of most claims granted under Fed. R. Civ. P. 12 and attorneys required to pay attorneys' fees as sanction); Roeder v. Rogers, 206 F. Supp. 2d 406 (W.D.N.Y. 2002) (summary judgment granted and attorney required to pay the cost of legal services and expenses incurred in reviewing and defending against the complaint as sanctions); Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000) ("The district court acted well within its discretion in granting the defendants reimbursement for a portion of their attorney['s] fees to compensate them for the waste of the court's and counsel's time.").

Only severe sanctions against Plaintiffs and their counsel can provide the necessary salve for the great harm they inflicted upon the Court, Defendant Dr. Halio, his ninety (90) year old mother, and the judicial process as a whole.

Plaintiffs and their counsel have so wantonly disregarded clear pleading standards despite being on notice for so long.

Plaintiffs and their counsel clearly have no respect for the Court and its process, and have contributed to the reason why so many members of the public have no faith in the law. To demur in issuing the most severe sanctions would essentially ratify their conduct and operate as a green light for them to repeat in the future and set precedent that there's virtually no conduct that would warrant punishment.

Conversely, severe sanctions would send a powerful message to litigants and their counsel to refrain from using the courts (and the RICO statute) as a forced tool of the vulture

businessperson to avoid paying a debt. <u>LCS Group, LLC v Shire LLC</u>, 2019 US Dist LEXIS 43255, *48 (SDNY 2019) (dismissing RICO claims and granting Rule 11 sanctions stating RICO claim was "frivolous, not warranted by existing law, and intended to harass Shire and Haug, and, therefore, that sanctions are justified."); <u>Edmonds v. Seavey</u>, 2009 US Dist LEXIS 111915, * 12 (SDNY Dec. 2, 2009) (dismissing RICO claims and granting Rule 11 relief stating, "sanctions are particularly appropriate in this case because Plaintiff's case rose or fell on the complete absence of any evidence to support his allegations of RICO predicate acts.") (citing cases); <u>Katzman v Victoria's Secret Catalogue</u>, 167 FRD 649, 660 (SDNY 1996) (granting Rule 11 sanctions where "even a cursory examination of the requirements for bringing suit under RICO would have revealed the impossibility of the claim's success").

Accordingly, this Court should exercise its discretion in favor of issuing sanctions.

## POINT II

### SANCTIONS ARE WARRANTED PURSUANT TO 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." <u>See</u> 28 U.S.C. § 1927.

As outlined herein, Plaintiffs and their counsel have multiplied the proceedings in this case unreasonably and vexatiously.

Therefore, the Court should require Plaintiffs and their counsel to pay sanctions including all attorneys' fees and costs incurred by Defendant to date.

## POINT III

### THE COURT SHOULD OTHERWISE ISSUE SANCTIONS PURSUANT TO ITS INHERENT POWER

12

The "Court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." See Shangold v. Walt Disney Co., 2006 WL 71672, *4 (S.D.N.Y. Jan. 12, 2006) (Pauley, J.), aff'd 275 Fed. Appx. 72 (2d Cir. 2008). This inherent authority also includes the power to sanction a party for committing a fraud on the court and other abuses of the judicial process including "bad faith, vexatious[], [or] wanton[]' acts or actions undertaken for 'oppressive reasons.'" See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 44-46, 50 (1991).

Defendant needs to reiterate Plaintiffs' abuse of the judicial process in this case. As outlined at length *supra*, Plaintiffs have engaged in bad faith and vexatious conduct for the sole purpose of engaging in a family vendetta.

Even worse, Plaintiffs continued to ignore its lack of factual propositions to state a *prima facie* RICO claim, which also requires sanctions.

Accordingly, the Court should use its inherent power to sanction Plaintiffs and their counsel.

## POINT IV

## PLAINTIFFS CANNOT AVOID SANCTIONS BY VOLUNTARILY DISMISSING THE COMPLAINT

Lastly, sanctions cannot be avoided by withdrawal of a Complaint. That ship has sailed.

In fact, the Supreme Court has ruled that sanctions have no limitation based on status of dismissal. See Cooter and Gell v. Hartmarx Corp., 496 U.S. 384, 397-98 (1990) (holding that "If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to 'stop, think and investigate more carefully before serving and filing papers'") (quoting Amendments to Federal Rules of Civil Procedure, 97 F.R.D. 165, 192 (1983) (Letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules (Mar. 9, 1982)); see

13

also Muthig v. Brant Point Nantucket, Inc., 838 F.2d 600, 604 (1st Cir. 1988) (noting that neither

Rule 11 nor Rule 41 contains post-voluntary dismissal limitations); Szabo Food Service, Inc. v.

Canteen Corp., 823 F.2d 1073, 1079 (7th Cir. 1987) (likening Rule 11 sanctions to

contempt sanctions for purposes of post-voluntary dismissal jurisdiction), cert. dismissed, 485

U.S. 901, 99 L. Ed. 2d 229 (1988).

Accordingly, to the extent Plaintiffs withdraw their complaint, this Court should

nonetheless award sanctions given the circumstances in this case.

## CONCLUSION

For the foregoing reasons, Dr. Halio respectfully request that the Court issue appropriate

sanctions against Plaintiffs and their counsel for the reasons set forth herein.[3]

Dated: Jamaica, New York
       April 12, 2024                          Respectfully submitted,

                                               **SAGE LEGAL LLC**

                                                _/s/ Emanuel Kataev, Esq._
                                               Emanuel Kataev, Esq.
                                               18211 Jamaica Avenue
                                               Jamaica, NY 11423-2327
                                               (718) 412-2421 (office)
                                               (917) 807-7819 (cellular)
                                               (718) 489-4155 (facsimile)
                                               mail@emanuelkataev.com

                                               _Attorneys for Defendant_
                                               _David Halio_

---

[3] Upon this motion being granted, Dr. Halio respectfully requests leave to submit an accounting of
their legal fees and related expenses and costs.

14

**<u>VIA CERTIFIED MAIL & ECF</u>**
Scarinci & Hollenbeck, LLC
<u>Attn</u>: Dan Brecher, Esq.
519 Eighth Avenue, 25th Floor
New York, NY 10018
(212) 286-0747 (office)
(917) 861-5057 (cellular)
(212) 808-4155 (facsimile)
dbrecher@sh-law.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the
Estate of JOAN BUCK, and ROBERT BUCK, individually        **Case No.:**
and ROBERT BUCK, As Executor of the Estate of JOAN        **1:23-cv-11217 (JGLC) (GS)**
BUCK, derivatively as shareholders on behalf of JOBAR
HOLDING CORPORATION,

                                         Plaintiffs,      **DECLARATION OF EMANUEL**
                                                          **KATAEV, ESQ. IN SUPPORT OF**
                                                          <u>**MOTION FOR SANCTIONS**</u>

              -against-

DAVID HALIO,

                                         Defendant.
------------------------------------------------------------------------X

        **EMANUEL KATAEV, ESQ.,** an attorney duly admitted to practice law before the

Courts of the State of New York and before this Court declares the following to be true under the

penalties of perjury:

        1.      I am a member of Sage Legal LLC, counsel for Defendant Dr. David Halio

(hereinafter "Dr. Halio" or the "Defendant") in the above-captioned case.  As such, I am familiar

with all of the facts and circumstances heretofore had herein.

        2.      I make this declaration in support of Defendant's motion pursuant to Rule 11 of the

Federal Rule of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), 28 U.S.C. § 1927,

and this Court's inherent power for sanctions against Plaintiffs and their counsel.

        3.      Annexed hereto as **Exhibit "A"** is a copy of the Rule 11 safe harbor letter, notice

of motion, and memorandum of law that was served upon Plaintiff's counsel on April 12, 2024 via

certified mail.

        4.      Annexed hereto as **Exhibit "B"** is a copy of the certified mail receipt.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 12, 2024.

___/s/ Emanuel Kataev, Esq.____
Emanuel Kataev, Esq.

**VIA CERTIFIED MAIL & ECF**
Scarinci & Hollenbeck, LLC
<u>Attn</u>: Daniel S. Brecher, Esq.
519 Eighth Avenue, 25th Floor
New York, NY 10018
(212) 286-0747 (office)
(917) 861-5057 (cellular)
(212) 808-4155 (facsimile)
dbrecher@sh-law.com

*Attorneys for Plaintiffs*

# EXHIBIT A

# Sage Legal LLC

**18211 Jamaica Avenue ● Jamaica, NY 11423-2327 ● (718) 412-2421 ● emanuel@sagelegal.nyc**

April 12, 2024

<u>**VIA CERTIFIED MAIL**</u>
Scarinci & Hollenbeck, LLC
<u>Attn</u>: Dan Brecher, Esq.
519 Eighth Avenue, 25th Floor
New York, NY 10018

   *Re*: **Jobar Holding Corp.**, *et al.* **v. Halio**
     <u>**Case No.: 1:23-cv-11217 (JGLC) (GS)**</u>

Dear Mr. Brecher:

  As you know, I represent Defendant Dr. David Halio ("Dr. Halio") in the above-captioned case. We have reviewed the pleadings and your memorandum of law in opposition to Dr. Halio's motion to dismiss that you filed with the court on March 28, 2024. As explained further in the enclosed Defendant's motions for sanctions, which we have not yet filed, the the pleadings and your memorandum of law in opposition to Dr. Halio's motion to dismiss violate Rule 11 of the Federal Rules of Civil Procedure because there is no basis to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

  Pursuant to the safe harbor provision under Rule 11, <u>see</u> Fed. R. Civ. P. 11(c)(2), we send this letter to provide you with the opportunity to withdraw the complaint with prejudice and remedy the Rule 11 violation within twenty-one (21) days. If you do not so withdraw the complaint within this period, we will file the enclosed motion for sanctions with the court.

  If you have any questions or concerns, please do not hesitate to contact me directly at your convenience.

Dated:  Jamaica, New York
   April 12, 2024        Respectfully submitted,

             **SAGE LEGAL LLC**
              */s/ Emanuel Kataev, Esq.*
             Emanuel Kataev, Esq.
             18211 Jamaica Avenue
             Jamaica, NY 11423-2327
             (718) 412-2421 (office)
             (917) 807-7819 (cellular)
             (718) 489-4155 (facsimile)
             mail@emanuelkataev.com

             *Attorneys for Defendant*
             *David Halio*

Enclosures:
Notice of motion for sanctions with memorandum of law in support.

# EXHIBIT B



# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

| Certified Mail Fee | $4.40 | |
| $ | | $0.00 |
| Extra Services & Fees *(check box, add fee as appropriate)* | | |
| ☐ Return Receipt (hardcopy) | $ | $0.00 |
| ☐ Return Receipt (electronic) | $ | $0.00 |
| ☐ Certified Mail Restricted Delivery | $ | $0.00 |
| ☐ Adult Signature Required | $ | $0.00 |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $2.59 | |
| $ | | |
| **Total Postage and Fees** | | |
| $ | | |

0241
26

Postmark
Here

APR 12 2024

04/12/2024

Sent To  Scarci & Hollenbeck, LLC, Attn: Daniel S. Brecher

Street and Apt. No., or PO Box No.  89 Eighth Avenue  25th Floor

City, State, ZIP+4®  New York, NY 10018

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK, Individually,
and ROBERT BUCK, as Executor of the Estate of JOAN BUCK,
and ROBERT BUCK, individually and ROBERT BUCK, as
Executor of the Estate of JOAN BUCK, derivatively as
shareholders on behalf of JOBAR HOLDING CORPORATION,

                                       Plaintiffs,

                                                  Case No. 1:23-cv-11217 (JGLC)(GS)

                    -against-                     DECLARATION OF DAN BRECHER,
 .                                                ESQ. IN OPPOSITION TO MOTION .
 .                                                <u>FOR RULE 11 SANCTIONS</u>

DAVID HALIO,

                                       Defendant.

---------------------------------------------------------------------------X

        DAN BRECHER, ESQ., an attorney duly admitted to practice law in the courts of the State

of New York, and before this Court, declares the following to be true under the penalties of

perjury:

        1.    I am Counsel to the law firm of Scarinci & Hollenbeck LLC, counsel for the Plaintiffs

Robert Buck, individually, and Robert Buck, as Executor of the Estate of Joan Buck (hereinafter

collectively, the ("Buck Plaintiffs"), and the Buck Plaintiffs derivatively as shareholders on behalf

of Jobar Holding Corporation ("Jobar").

        2.    I make this declaration in opposition to the Defendant's motion pursuant to Rule 11 of

the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), 28 U.S.C. §

1927, and this Court's inherent power for sanctions against plaintiffs and their counsel.

        3.    In Defendant's motion, Defendant acknowledges that "only conduct explicitly referred

to in the instrument providing notice is sanctionable." There is no conduct explicitly referenced

in the instrument providing notice, Defendant's April 12, 2024 letter, other than the following:

"...the pleadings and your memorandum of law in opposition to Dr. Halio's motion to dismiss

violate Rule 11 of the Federal Rules of Civil procedure because there is no basis to state a claim under the Racketeer Influenced and Corrupt Organization Act ("RICO").

4.    Since there is no explicit issue raised in the motion for sanctions as to any untrue statement of fact, and no other specific violative conduct is explicitly stated, I assume that the only issue raised in the Defendant's sanction motion is whether or not the Complaint, and the Plaintiffs' memorandum of law submitted in opposition to Defendant's motion to dismiss, supported claims that had no chance of success and there is no reasonable argument to extend, modify or reverse the law as it stands.

5.    Accordingly, I respectfully submit that the detailed facts pleaded sufficiently support the state claims against Defendant included in the Complaint, of unjust enrichment, aiding and abetting the breach of fiduciary duty by Barbara Halio ("Barbara") with alleged fraudulent transactions specifically set forth in the instant state Complaint, filed and served in New York Supreme Court in November 2023.  The extant 2020 injunction and restraining order issued against Barbara in the state action showed there was sufficient proofs to provide Plaintiffs good reason and comfort in the bona fides of the Plaintiffs' state law causes of action. They were originally dismissed by Justice Cohen in 2020 but have now been restored against Barbara and are not contested in the instant motion to dismiss.  Here, the state law claims alleged against the Defendant in the Complaint are unjust enrichment, aiding and abetting breach of fiduciary duty, fraud and aiding and abetting fraud.  The dismissed state law claims against Barbara were recently restored by Justice Cohen, after I had obtained a court order requiring Defendant to attend and be deposed.  I deposed Defendant and included 2023 deposition admissions by him in my motion papers to restore state claims that Justice Cohen restored.  With the benefit of Barbara's sworn admissions in her 2017 affidavit (**Exhibit A** at paras. 9 and 10), Defendant's deposition admissions of unpaid "loans" from the Jobar Holdback Account (**Exhibit B**, selected pages), and Defendant's obfuscations in his deposition testimony, gave me confidence in the merit of not only the state claims, but also of the RICO claims here when I filed them last year in the State court. (Complaint at ❡ 69)

2

6.  At the time I signed the Complaint last year, and subsequently the memorandum in

opposition to the Defendant's motion to dismiss, I had every reason to believe the state claims

were valid.  I also had reason to believe that the RICO claims were adequately pleaded based

upon the admissions of wrongdoing that had been elicited over the course of seven years of

litigation.  Before I signed and filed the instant Complaint, I had in my possession Barbara's 2017

and 2020 affidavits and discovery documents, including Jobar tax returns, evidencing she took

$1,140,975 in fake "loans" (**Exhibit C**, 2013 and 2014 at page 4 of each return) out of the Jobar

Holdback fiduciary account and Defendant's deposition admissions of receipt of over $200,000

in unpaid undocumented "loans" and wires out of the Jobar Holdback Account.

7.  On examination of the tax returns prepared by T & E and signed by Barbara, as President

of the corporation, one can see how they are purposely misleading. For example, the first page

of the 2013 Jobar tax return, at Item F, claims the corporation has total assets of $1,303,819.

But the assets were mostly the phony loans to Barbara and Defendant. Nonetheless, at page 7

of the 2013 tax return, the "loans" are listed as current assets when Barbara and Bernstein and

Defendant all knew that these were not current assets.

8.  The first page of the 2014 tax return claims only $3,548 in total assets, but page 4, line 8

lists "Other current assets  Statement 4  $1,140, 975," which are the phony loans to

Barbara, certainly not eligible to be listed as "Other Current Assets." (**Exhibit C).** At that time,

Bernstein and Barbara knew the entries were false. (Complaint at ¶¶84, 85, 88 and 92).

Those are material facts that Defendant and Barbara cannot deny, that are documented and

underly the State and RICO causes of action, because the claims are based upon their own

sworn statements and the tax documents, including those referred to herein.

9.  Therefore, I had a reasonable belief at the time I signed the Complaint and motion papers

that the facts necessary to assert RICO claims, together with the allegations and the applicable

law were sufficient to defeat a motion to dismiss the causes of action in the Complaint,

including the RICO claims.

10.  Plaintiffs submit herewith their memorandum of law in opposition to the motion for Rule

11 sanctions, with citations showing that, notwithstanding whether or not the RICO claims are dismissed, sanctions are not called for here given the reasonable investigation, good faith presentation of material facts that the Defendant does not dispute, and that set forth a pattern of criminal behavior evidenced on numerous occasions over a period of years, in concert with others, causing losses to the Plaintiffs. The Complaint and the memorandum of law in opposition to the motion to dismiss do not contain any false statements of fact, and the allegations are not frivolous, as evidenced by the extant injunction and restraining order against Barbara and "all persons acting in concert or participating with her."

11.   I signed the Complaint and the memorandum of law in opposition to the motion to dismiss the Complaint relying upon clearly supportable allegations in the Complaint of seven years of embezzlement, multiple fraudulent conveyances, including in 2020, three years prior to the filing of the Complaint in State court, with mail fraud, wire fraud and ongoing tax fraud alleged in detail in the Complaint.

12.   The pleading alleges the Defendant's participation in and personal benefit from the open-ended scheme that included Defendant, Barbara and their personal accountants, who were also Jobar's accountants, and alleges the scheme that included dozens of predicate acts of embezzlement, committed through mail and wire fraud, and tax fraud, in a pattern of connected activities and transactions utilizing fake "loans" disguised for years by falsified tax returns and K-1's sent to Plaintiffs and other Jobar shareholders that the accountant told Buck were a "mistake." The Buck Plaintiff's reliance on the false returns and "mistake" laden K-1's contributed to the direct losses the Plaintiffs suffered as they facilitated the embezzlement resulting in the disappearance into the accounts of Defendant and his mother, Barbara, of the entirety of the $1,500,000 Jobar Holdback Fund and also the loss of earned interest thereon. The Defendant and Barbara both knew, at all times, that the Buck Plaintiffs were entitled to 38% of The Jobar Holdback Account and interest earned thereon. Nothing is left in the Jobar Holdback Account, Barbara and Defendant having embezzled virtually all of the Holdback Fund. Having transferred much of her assets to her children,

Barbara now claims poverty and inability to do what she swore to the Court she would do: "repay plaintiff Robert 38% of the loans I took from Jobar." Their accountants are alleged to have admitted contemporary knowledge of the problem of the "loans' taken by Barbara and Defendant from the Holdback Fund account and the "mistaken" K-I's. (**Exhibit D**)

13.    The parties in the state court case recently filed opening briefs in their respective appeals to the Appellate Division First Department of the motion court's denial of Barbara's motion to dismiss Jobar's faithless servant claim and of the motion court's 2020 dismissal of the Plaintiffs' Civil RICO and Civil RICO conspiracy causes of action, among other issues. Those claims remain at issue in the Plaintiffs' appeal pending before the Appellate Division in the State court case.

14.    As alleged, Jobar has remained in existence as a corporation for years only because Barbara and the Defendant are alleged to have continued to fail to file truthful amended tax returns, with substantial taxes being owed on at least the $1,140,975 Barbara admits to having taken as undocumented "loans" and the $168,996 of wires and checks in fraudulent conveyances that we know of that Barbara sent and Defendant admits he deposited the funds of the Jobar Holdback Account falsely described as "loan" on the checks, and the wires sent to Defendant without explanation or documentation, including the $43,966 wire to pay Defendant's professional medical malpractice premium. Defendant also deposited a $30,000 check Barbara paid him in 2020 in a fraudulent conveyance of funds that had emanated out of proceeds of the Jobar Holdback Account that Barbara admitted were used to pay the mortgage on the Water Mill property. Barbara had sworn to the Court, in opposing a 2017 attachment motion, that moneys that were owed to "Plaintiff Robert" Buck would be paid to him when her Watermill property was sold (**Exhibit A**), which occurred secretly in 2020 during the pandemic.

15.  Instead of paying plaintiff Robert, as she had sworn to the court in 2017 she would do, after the 2020 closing, upon receiving the proceeds of the sale of the property, Barbara sent more than $150,000 to her children, grandchildren and son-in-law in California, and sent a check for $30,000 to Defendant instead of paying "plaintiff Robert" as she had sworn to the

Court in 2017 she would do. When I filed the Complaint, it was clear that the continuity in the numerous "loans," including at least six transactions of funds sent to Defendant by Barbara out of the Jobar Holdback Account, and the more than a million dollars of undocumented "loans" Barbara admitted she took from the Jobar Holdback Account in dozens of transactions over a seven year period, together with other pleaded fraudulent transactions, was a sufficient pattern of continuity between the Defendant, Barbara and their accountants to satisfy the RICO pattern, continuity and Enterprise requirements, as explained in Plaintiffs' memorandum of law submitted herewith in opposition to the Defendant's motion for Rule 11 sanctions.

16.    Barbara admitted that the Buck Plaintiffs were entitled to 38% of the Jobar Holdback Account, which they never received.  In 2020, Barbara sent proceeds of the property sale to David, and to her family members in California, instead of to the Buck Plaintiffs, as she had promised the Court in 2017 she would do.  This was sufficient evidence to satisfy the RICO pleading requirement that the Plaintiffs had suffered direct losses as a result of a RICO scheme in which the Defendant actively participated and benefited.

17.    I also had reason to believe that transactions in aid of tax evasion in a more comprehensive open-ended scheme, utilizing mail fraud and wire fraud, is not the "mere fraud" that state and federal courts have decried.

18.    I had good reason to believe the Complaint satisfactorily alleged open-ended continuity based on the dozens of similar acts of "loans" and fraudulent conveyances continuing over a period of years, including in 2020.

19.    When I signed the Complaint and opposition memorandum of law, I had the reasonable belief that whether the Court considered it closed or open-ended, the Court would find for the required continuity to satisfy that RICO requirement.  Defendant continued to engage with Barbara in their fraudulent conveyance tax evasion scheme as alleged, including the 2020 payment he received from Barbara, and the newly learned fact of his maintaining of his medical offices in Barbara's house rent free.  I believed those acts to be in violation of the extant injunction and restraining order against Barbara and "all persons acting in concert or

6

participating with her." The Complaint alleges Defendant's continuing free rent arrangement for his medical offices in Barbara's home, to this day. Defendant was unable to disprove this allegation at his deposition. The Defendant is alleged to have engaged in an organized scheme to commit fraud through a pattern of substantially similar conduct over a period of years, acting in association with, and in support of, Barbara and their accountants misdeeds and fraud.

20. When I signed the Complaint and the memorandum in opposition to the motion to dismiss the Complaint, I understood the state of the law to be that a RICO Enterprise, as alleged here, could consist of an association of individuals, and that Defendant could be both the defendant and a member of the association-in-fact enterprise that includes the Defendant. That is the Enterprise pleaded in the Complaint.

21. When I signed the Complaint and the memorandum in opposition to the motion to dismiss the Complaint, I understood and was aware of case law that indicated that the RICO requirement of an affect on interstate commerce was satisfied by alleging the Jobar Holdback Account at Chase Bank, the wires and other inter-state payments, including funds Barbara sent to her California family members as alleged in the Complaint, together with the K-1's and tax filings sent interstate. I believed these allegations would be considered in satisfying this further requirement of a RICO cause of action.

22. In light of the lack of explicit reference in Defendant's safe harbor letter to any issue as to conduct of the Plaintiffs or their attorneys, and the lack of reference to material factual allegations in the Complaint being untrue, I have responded here to the assertion that "...the pleadings and your memorandum of law in opposition to Dr. Halio's motion to dismiss violate Rule 11 of the Federal Rules of Civil procedure because there is no basis to state a claim under the Racketeer Influenced and Corrupt Organization Act ('RICO')." I respectfully submit that the Complaint and the Plaintiffs' memorandum of law do provide facts and allegations that are confirmed by the Defendant's own testimony, Barbara's affidavit and these attached Exhibits.

7

23. The above documents support the plausible alleging in the Complaint of the elements of a RICO claim: a connected series of admitted embezzlements and tax fraud; accomplished through the use of the mails and wires; that directly resulted in Buck Plaintiffs suffering losses; as a result of acts of the Defendant, in a decade-long Enterprise that is an association in fact, headed by Barbara assisted by Defendant, and long-time family and business accountant, Mark Bernstein, T & E's partner on the Halio accounts (**Exhibit D**).

24. It is respectfully submitted that the pleading presents a plausible RICO claim. Based on my understanding that where multiple fraudulent tax returns are alleged to have been filed, mail fraud is a permissible RICO claim. I understood that mail pyramiding was permitted in the instance of a claim of tax fraud where, as here, there were multiple fraudulent tax fraud filings. I recognize that the alternative bank fraud claim was error. State claims alleged. I understood that the additional requirement for at least a slight effect on interstate commerce that has been held satisfied by bank transactions, wires sent, checks and tax returns sent interstate, all of which are present here.

25. I respectfully submit that the above representations, together with the case law cited in the accompanying Plaintiff's Memorandum of law in opposition to the Defendant's motion for Rule 11 sanctions, show that Plaintiffs had a reasonable belief in the merits of their claims asserted in the Complaint, that the Complaint is not frivolous, and that the RICO causes of action are claims that have a chance of success, as I believed when I filed the Complaint. To the extent that there are issues that the Defendant did not raise in this Rule 11 sanctions motion, that the Court may nonetheless consider, I believe the Complaint satisfactorily alleges and fulfills the RICO pleading requirements, and that there are reasonable arguments that exist under these unusual facts of long term embezzlement and tax fraud, together with the unusual admissions that could serve to extend, modify or reverse the law as it stands.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: New York, New York

August 12, 2024

_/s/ Dan Brecher_

Dan Brecher, Esq.

Via E-mail and ECF

Sage Legal LLC
Attn: Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, New York 11423-2327
emanuel@sagelegal.nyc

# EXHIBIT A

NYSCEF DOC. NO. Case 1:23-cv-11217-JGLC   Document 28-1   Filed 08/12/24   Page 2 of 5 RECEIVED NYSCEF: 12/02/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| JOBAR HOLDING CORPORATION, ROBERT BUCK, individually, and ROBERT BUCK, As Executor of the Estate of JOAN BUCK, and ROBERT BUCK, individually, and ROBERT BUCK, As Executor of the Estate of JOAN BUCK, derivatively as shareholders on behalf of JOBAR HOLDING CORPORATION, | Index No. 655689/2017 |

Plaintiffs,

against-

BARBARA HALIO, TURMAN & EIMER, LLP,
And YESKOO, HOGAN & TAMLYN, LLP

Defendants.

AFFIDAVIT IN OPPOSITION TO MOTION OF PLAINIFF FOR A PRE-JUDGMENT ATTACHMENT, A RESTRAINING ORDER OR, IN THE ALTERNATIVE, THE APPOINTMENT OF A RECEIVER

STATE OF NEW YORK    )
COUNTY OF NEW YORK   )

Barbara Halio, of full age, being duly sworn according to law, deposes and says:

1. I am one of the defendants in the above matter, and I respectfully submit this affidavit in opposition to the motion of plaintiff for a pre-judgment writ of attachment against my assets, a restraining order or, in the alternative, the appointment of a receiver.

2. As is relevant to this proceeding, Jobar owned a building located at 120 West 72nd Street, New York, New York ("the Building").

3. The shareholders of Jobar were my parents, Otto and Kitty Buck. On my father's death, my mother Kitty became the sole shareholder, and on her death in 2001, her shares were left to my family and Joan's family. Each family received 50% of the shares.

4. On our mother's death, Joan served as Jobar's presidents, and when Joan died in 2005, I became president.

NYSCEF DOC. NO.Case 1:23-cv-11217-JGLC    Document 28-1    Filed 08/12/24RECEIVED3Nf5CEF: 12/02/2017

5.  In 2006 the Building was sold, and all but $1,500,000.00 ("the Holdback"") was distributed to the shareholders in proportion to their shareholdings.

6.  The Holdback was to cover all outstanding obligations.  Jobar had been operating in the red for years and had, at one point, filed bankruptcy.  To bring it out of bankruptcy and keep it operating, I loaned it money.  And I continued to loan it money over the years until the Building was sold.  These loans came from a home equity loan of approximately $300,000.00 that I took out on my home located at 257 Foxhurst Road, Oceanside, New York, and from withdrawals from my late husband's pension.  As a result of the withdrawals that I made, I incurred income tax on this money and withdrawal penalties.  I had deferred taking both management fees and the salary I was entitled to as president, both of which Joan took when she was president.  I was executor of our mother's estate, and there were executor's commissions that I was entitled to that I did not take due to the lack of available funds at the time.  These were all paid to me from the Holdback.  There were also post-closing legal and accounting fees and banks fees that were paid from the Holdback.  Robert's sister, Ottilie, was entitled to a share of the Holdback, and she was paid from it.

7.  There was a remaining balance on the Holdback which I withdrew as loans.  These were carried on Jobar's books as loans.  They were not hidden from anyone who wished to examine its books and records.

8.  I am an 84 year old widow whose sole source of income is social security and money that my children give me to pay for my expenses.  This money goes into my only checking account.  I have no savings or money market accounts.

NYSCEF DOC. NO. Case 1:23-cv-11217-JGLC    Document 28-1    Filed 08/12/24    Page 4 of 5    RECEIVED NYSCEF: 12/02/2017

9. The money that I received from the Holdback as deferred salary, management fees, and as executor's commissions, as loan repayment, and as loans from Jobar has all been spent on such items are my mortgages, health insurance and general living expenses as my only source of income is my social security. It was not transferred to or assigned to anyone, and it has not been secreted by me. It has been spent.

10. I own my home in Oceanside. My husband and I bought it in the 1960's and raised our family there. I have no intention of selling it and plan to live there until I am no longer able to live on my own. It has a balance on a home equity loan of over $200,000.00, and payments are currently in arrears. I own a home in Water Mill, NY that I attempting to sell. It has a mortgage of over $300,000.00 that is currently in arrears. When the home in Water Mill is sold, I will use the net sale proceeds to repay plaintiff Robert 38% of the loans that I took from Jobar. That amount, however, will need to be determined, and is nowhere near what plaintiff Robert claims is owed.

11. These are my only assets and my only source of income.

12. After not having heard from plaintiff Robert for approximately 10 years, he called me and asked about the balance of the money that he was entitled to. I told him that I had taken it as loans and that he would be repaid whatever he was owed. After that I heard nothing from him until he filed this suit. Through my attorneys I have twice offered to settle this matter with any money owed plaintiff Robert to be paid on the sale of the Water Mill home. He has never responded either time.

13. Plaintiff Robert has already received over $7,000,000.00 from the sale of the Building and will receive whatever additional money that he may be entitled to. I have

never hidden the fact that I paid myself money that I was owed by Jobar and my mother's

estate or that I took loans from Jobar.

Barbara Halio

Sworn to and subscribed before
me this 2d day of December, 2017

Barry I Siegel
Notary Public
State of New York
Reg. No. 02S16180728
My Comm. Expires 1/14/20

# EXHIBIT B

NYSCEF DOC. NO. Case 1:23-cv-11217-JGLC    Document 28-2    Filed 08/12/24 RECEIVED NYSCEF: 02/29/2024

Page 1

```
 1     SUPREME COURT OF THE STATE OF NEW YORK
 2     COUNTY OF NEW YORK
       -------------------------------------X
 3     JOBAR HOLDING CORPORATION, ROBERT BUCK,
       INDIVIDUALLY, AND ROBERT BUCK, AS EXECUTOR
 4     OF THE ESTATE OF JOAN BUCK, AND ROBERT
       BUCK, INDIVIDUALLY, AND ROBERT BUCK AS
 5     EXECUTOR OF THE ESTATE OF JOAN BUCK,
       DERIVATIVELY AS SHAREHOLDER ON BEHALF OF
 6     JOBAR HOLDING CORPORATION,
 7             Plaintiffs,
 8                           Index No.:
                             655689/2017
 9        -against-
10     BARBARA HALIO,
11             Defendants.
       -------------------------------------X
12
                  DATE: January 19, 2023
13
                  TIME: 10:00 a.m.
14
15
16         DEPOSITION of DAVID HALIO, a
17     NON-PARTY WITNESS, taken by the Plaintiff,
18     pursuant Subpoena, held at the Offices of
19     Scarinci Hollenbeck, 589 8th Avenue, 16th
20     floor, New York, New York 10018, at
21     above-mentioned date and time, before
22     MARINA DUBSON, a Notary Public of the State
23     of New York.
24
25
```

NYSCEF DOC. NO. 69   Case 1:23-cv-11217-JGLC   Document 28-2   Filed 08/12/24   Page 3 of 6   RECEIVED NYSCEF: 02/29/2024

Page 66

D. Halio

2 Q. Would you read the April 25th
3 entry, please.
4     MR. WEISS: The typewritten
5 entry?
6 Q. Yeah, the second entry.
7 A. It says: Jobar Holding account
8 used by Barbara Halio to pay --
9 Q. No, no, not that. Not the
10 handwriting. Ignore the handwriting. Just
11 the typewritten, I'm sorry.
12 A. Which one?
13 Q. April 25th.
14 A. Where's April 25th?
15 Q. It's the second entry.
16 A. It says: Debt to Citibank.
17 Medical liability insurance, David A.
18 Halio, MD.
19 Q. What is the amount?
20 A. 43,995.
21 Q. And was that amount, to your
22 knowledge, paid to your insurer?
23 A. I write my own checks to the
24 insurance company.
25 Q. So you never had Jobar pay your

Page 67

D. Halio

2 medical liability insurance?
3 A. They never paid my medical
4 liability insurance.
5 Q. And they never sent any money
6 to your insurer?
7 A. I would have to look at the
8 check, I don't recall.
9 Q. Well, it's not a check. This
10 is a bank transfer.
11     MR. WEISS: What's the
12 question?
13 Q. You're not aware of Jobar
14 having made a bank transfer to your insurer
15 of 43,996 in 2013?
16 A. I am aware that I had to pay my
17 malpractice in that same exact amount, but
18 I wasn't aware.
19 Q. You weren't aware that Jobar
20 sent money?
21 A. I wasn't aware of that.
22 Q. Yeah. So is it your impression
23 that you paid twice?
24     MR. WEISS: Objection.
25 A. I don't understand your

Page 68

D. Halio

2 question.
3 Q. This says Jobar sent that
4 amount, and you say you paid that amount.
5 Wouldn't that be paying it twice?
6     MR. WEISS: Objection.
7     You can answer.
8 A. It wasn't paid twice.
9     MR. BRECHER: Well, I call for
10 the production of your payment to
11 your medical malpractice insurer of
12 that amount in that year, in 2013.
13     (Request noted.)
14     MR. WEISS: Take it under
15 advisement.
16 Q. So your testimony is that Jobar
17 never lent you any money to pay your
18 medical malpractice insurance?
19     MR. WEISS: Objection.
20 Q. Is that your testimony?
21     MR. WEISS: Can you just ask a
22 question?
23 Q. Did Jobar Holding Corporation
24 ever pay any of your medical malpractice
25 insurance?

Page 69

D. Halio

2 A. I don't recall.
3 Q. Did you ever repay Jobar for
4 paying your medical malpractice insurance?
5 A. No.
6 Q. Did you ever tell anyone that
7 you repaid Jobar for paying your medical
8 malpractice insurance?
9 A. No.
10 Q. Has anyone ever asked you
11 before whether that happened?
12 A. No.
13 Q. Look at the next page. And
14 again, on all of these, please ignore the
15 handwritten entries, those are mine.
16     The next page is Jobar 578.
17 The statement for May 2013.
18     MR. WEISS: I'm sorry. You
19 said Jobar 578. Mine says 616.
20     MR. RICE: So does mine. The
21 third page is 578.
22     MR. BRECHER: Okay. Well, my
23 copy didn't have it. Can somebody
24 lend me their page? My copy doesn't
25 have it for some reason.

18 (Pages 66 - 69)

NYSCEF DOC. NO. Case 1:23-cv-11217-JGLC     Document 28-2     Filed 08/12/24     RECEIVED NYSCEF: 02/29/2024

Page 70

1      D. Halio
2      MR. WEISS:  Are you looking for
3   616 or 578?
4      MR. BRECHER:  I have 578.  I
5   don't have 616.
6      MR. RICE:  Just let us know
7   which one you're --
8      MR. BRECHER:  616.
9      Q.   The entry for November 22nd
10  says:  Transfer to 7165.  You also stated
11  that's your account, right?
12     A.   Yes.
13     Q.   And the $15,000 transfer, did
14  you ever -- I'm sorry.  It's a check.  Did
15  you ever receive a check for $15,000 from
16  Jobar in that period?
17     A.   I don't recall.
18     Q.   Did you ever receive a wire
19  transfer during that period for $15,000?
20     A.   I don't recall.
21     Q.   Apparently I misspoke.  It's a
22  wire transfer, not a check.
23       Turn to next page, Jobar 618
24  for the period November 30th, 2013, through
25  December 31, 2013.  Do you have that, 618?

Page 71

1      D. Halio
2      MR. RICE:  That's the fourth
3   page.  Are we skipping page 578?
4      MR. BRECHER:  For the moment.
5      MR. WEISS:  Okay.
6      Q.   Do you see that's another wire
7   transfer?
8      MR. WEISS:  Just so we're
9   clear, we're on 618, correct?
10     Q.   618, second entry, December
11  20th, 2013, a wire transfer again to
12  Checking Account 7165.  That's your
13  account, correct?
14     A.   It is.
15     Q.   And it's for $60,000, correct?
16     A.   Which one is that?
17     Q.   The second entry.  The one at
18  12/20.
19     A.   Correct.
20     Q.   And did you receive that
21  amount?
22     A.   I don't recall.
23     Q.   Did you ask anyone to send you
24  $60,000 from Jobar?
25     A.   No. I did not.

Page 72

1      D. Halio
2      Q.   Did anyone tell you they had
3   sent $60,000 to you?
4      A.   No.
5      Q.   All right.  Turn back to 578.
6   There is a Jobar Production 578 for the
7   period May 2013 through May 31, 2013.  And
8   you see the second entry, again, May 3rd to
9   Checking Account 7165.  Is that your
10  account?
11     A.   Yes, it is.
12     Q.   And it's for $50,000, correct?
13     A.   Yes, it is.
14     Q.   Do you recall receiving that
15  amount in a wire transfer on May 3rd, 2013?
16     A.   I don't recall.
17     Q.   Did anyone tell you that they
18  had sent you a wire transfer of that
19  amount?
20     A.   No.
21     Q.   Did you ever ask for it?
22     A.   No.
23     Q.   Turn to the Check Number 1091
24  for $50,000 dated October 21, 2012, from
25  Jobar Holding Corp. in the amount of

Page 73

1      D. Halio
2   $50,000.  Did you receive that check?
3      A.   Yes.
4      Q.   Did you deposit that check in
5   your account 7165?
6      A.   I don't recall.
7      Q.   You see the back of the check
8   below it?
9      A.   Yes.
10     Q.   Is that your handwriting?
11     A.   Yes.
12     Q.   Do you recall signing this
13  check and depositing it into your account?
14     A.   I don't recall.  I don't
15  remember.
16     Q.   Do you have any reason to doubt
17  that you deposited it in your account?
18     A.   No.
19     Q.   You see the check says loan,
20  correct?
21     A.   Yes.
22     Q.   Was this a loan to you of
23  $50,000?
24     A.   That's what the check says.
25     Q.   Is that correct?

19 (Pages 70 - 73)

NYSCEF DOC. NO. Case 1:23-cv-11217-JGLC    Document 28-2    Filed 08/12/24 RECEIVED NYSCEF: 02/29/2024

Page 74

D. Halio

1
2   A.   The check says loan.
3   Q.   Do you dispute it?
4   A.   No.
5   Q.   Turn to the next check dated
6   10 -- Number 1069 in the amount of $20,000,
7   dated March 2nd, 2013, payable to David
8   Halio. Did you receive this check?
9   A.   Yes.
10  Q.   Did you deposit it in your
11  account?
12  A.   I don't recall.
13  Q.   Do you have any reason to
14  question whether you deposited it in your
15  account?
16  A.   No.
17  Q.   Do you see where it says loan?
18  A.   Yes.
19  Q.   Was this a loan to you of
20  $20,000?
21  A.   Yes.
22  Q.   Did you repay it?
23  A.   No.
24  Q.   Did you repay the $50,000 loan
25  that's Check Number 1081?

Page 75

D. Halio

1
2   A.   No.
3   Q.   Turn to the next check, 1075.
4   the next page dated April 13th, 2013, in
5   the amount of $10,000 payable to David
6   Halio. Did you receive this check?
7   A.   Yes.
8   Q.   Is that your signature?
9   A.   Yes.
10  Q.   Did you deposit it in your
11  account?
12  A.   I don't recall.
13  Q.   You see it says loan?
14  A.   Yes.
15  Q.   This was a loan?
16  A.   Yes.
17  Q.   Did you repay it?
18  A.   No.
19  Q.   Turn to the next page. Check
20  Number 1242 is on the Barbara Halio
21  account, payable to David Halio, MD, in the
22  amount of $30,000, dated April 25th, 2020.
23  Did you receive this check?
24  A.   Yes.
25  Q.   Did you deposit it in your

Page 76

D. Halio

1
2   account?
3   A.   I don't recall.
4   Q.   Look at the back of the check.
5   A.   Then the answer's yes.
6   Q.   You did deposit it in your
7   account?
8   A.   It was deposited.
9   Q.   Yes. What was this check for?
10  A.   I don't recall.
11  Q.   Well, see where it says on the
12  memo part, is that your mother's
13  handwriting?
14  A.   Yes, it is.
15  Q.   You would recognize your
16  mother's handwriting?
17  A.   Yes, I will -- do.
18  Q.   What does it say?
19  A.   I can't read it.
20  Q.   Does it say: Repayment,
21  parentheses, IRS insurance loan?
22  A.   It's illegible to me.
23  Q.   You can't tell?
24  A.   I see it says IRS loan.
25  Q.   Well, is that what it's for?

Page 77

D. Halio

1
2   A.   I don't recall.
3   Q.   You don't know what this check
4   was for?
5   A.   I don't know.
6   Q.   It wasn't for the repayment of
7   IRS insurance loan?
8   A.   I don't recall.
9   Q.   Was there an episode in which
10  you lent your mother money to repay a loan?
11  A.   I repaid my mother, but I don't
12  recall the episode.
13  Q.   You repaid this amount to your
14  mother?
15  A.   I repaid my mother over all of
16  these years.
17  Q.   I'm talking about this specific
18  check.
19  A.   I don't remember.
20  Q.   How did you repay her?
21  A.   How did I repay her?
22  Q.   Well, when you repaid her, what
23  do you mean?
24  A.   I mean, I don't recall the
25  exact amount.

20 (Pages 74 - 77)

# A174

Page 102

D. Halio

2  Q.  Do you see about five lines
3  from the end of paragraph 6 where your
4  mother says that she was the executor of
5  Kitty Buck's estate?  Do you know if that's
6  correct?
7  A.  I see where it says, yes.
8  Q.  And do you see the last line of
9  paragraph 6 where it says: Robert's
10 sister, Ottilie, was entitled to a share of
11 the holdback and she was paid from it?
12 A.  Yes, sir.
13 Q.  Do you know if that's correct?
14 A.  That's correct.
15 Q.  Did someone tell you that?  How
16 do you know that?
17 A.  Because, like I said before, I
18 wasn't following the goings on of Jobar,
19 but that is correct.
20 Q.  Did you ever speak to Ottilie
21 about money that she received?
22 A.  I never discussed anything
23 about money with Ottilie.
24 Q.  In paragraph 8, your mother
25 says that her sole source of income is

Page 103

D. Halio

2  Social Security and money that my children
3  give me to pay for my expenses.
4  Do you give her money to pay
5  for her expenses?
6  A.  I help her.
7  Q.  In what size amount have you
8  given her this year?
9  A.  I don't recall.
10 Q.  Last year?
11 A.  I don't recall.
12 Q.  You don't recall.  The same
13 answer -- would the answer be the same for
14 the years 2007 through 2021?
15 A.  I don't recall every year.  I
16 didn't help her every year.
17 Q.  You didn't help her every year?
18 A.  No.
19 Q.  When did you help her?
20 MR. WEISS:  Hold on.
21 MR. BRECHER:  No.  I'm talking
22 about --
23 MR. WEISS:  Hold on.
24 Objection.
25 MR. BRECHER:  Let me rephrase

Page 104

D. Halio

2  the question and ignore the
3  objection.  I understand the problem.
4  Q.  What type of expenses would you
5  help your mother with?
6  MR. WEISS:  I'm going to make
7  an objection and ask for a proffer,
8  what it has to do with this case.
9  MR. BRECHER:  The case is about
10 Barbara Halio claiming that she
11 needed to take the money from Jobar
12 because she had no other way of
13 supporting herself.  The witness has
14 testified that he helped her, so it's
15 relevant in that regard.
16 MR. WEISS:  I will withdraw my
17 objection to a certain extent, and
18 then I'll let you know --
19 MR. BRECHER:  I'm not going to
20 go too far into this.  I just want to
21 have an understanding of what he
22 helped her with.
23 MR. WEISS:  Okay.
24 Q.  What type of expense were you
25 helping your mother with?

Page 105

D. Halio

2  A.  I don't recall.
3  Q.  Was it every year?
4  A.  Not every year.
5  Q.  Was it the majority of the
6  years from 2006 to 2021?
7  A.  I don't recall.
8  Q.  There's a bank borrowing
9  against the Foxhurst home, correct?
10 A.  I don't know that.
11 Q.  You don't know that Chase has a
12 mortgage on the property?
13 A.  I know my mother pays the
14 mortgage because she had a home equity loan
15 to keep the business called Cape Masters
16 afloat all of these years.  It was all
17 coming from her to keep the business
18 afloat.  Every month she had to pay
19 Washington Mutual a certain amount of
20 money, because if you know the history of
21 the business --
22 MR. WEISS:  Just answer his
23 question.
24 THE WITNESS:  Okay.
25 Q.  Well, in any of these mortgage

27 (Pages 102 - 105)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK, Individually,
and ROBERT BUCK, as Executor of the Estate of JOAN BUCK,
and ROBERT BUCK, individually and ROBERT BUCK, as
Executor of the Estate of JOAN BUCK, derivatively as
shareholders on behalf of JOBAR HOLDING CORPORATION,

                                          Plaintiffs,

                                                      Case No. 1:23-cv-11217 (JGLC)(GS)

                    -against-                          **MEMORANDUM OF LAW IN**

                                                      **OPPOSITION TO MOTION**

                                                      <u>**FOR RULE 11 SANCTIONS**</u>

DAVID HALIO,

                                          Defendant.

--------------------------------------------------------------------------------X


### PRELIMINARY STATEMENT

   Defendant contends that the instant complaint is frivolous, and moves for sanctions against

the Plaintiffs and their counsel. It is not frivolous. Plaintiff submits this memorandum of law in

opposition to the Defendant's Motion for Rule 11 sanctions.

   Defendant's safe harbor notice, the April 12, 2024 letter from his attorney, provided only the

following safe harbor notice "…the pleadings and your memorandum of law in opposition to Dr.

Halio's motion to dismiss violate Rule 11 of the Federal Rules of Civil procedure because there is

no basis to state a claim under the Racketeer Influenced and Corrupt Organization Act

("RICO")." Defendant acknowledges in his motion that "only conduct explicitly referred

to in the instrument providing notice is sanctionable."

                                          1

Defendant cannot reasonably complain about any lack of a reasonable inquiry into the facts, which include Defendant's deposition admissions of substantial unrepaid so-called "loans" (Exhibit B to Declaration of Dan Brecher, Esq., dated August 12, 2024 (the "Brecher Declaration") and Barbara Halio's 2017 affidavit admitting she owed "plaintiff Robert" 38% of the Jobar Holdback Account's funds; $1,500,000 was the amount deposited into the Chase bank account, which subsequently earned interest, while the Defendant and his mother, Barbara Halio ("Barbara") embezzled the funds, leaving the account empty and Jobar unable to pay Robert Buck, Individually (:Buck") and Robert Buck, as Executor of the Estate of Joan Buck (hereinafter collectively, the "Buck Plaintiffs")  the 38% of the Holdback Account funds  Barbara had been entrusted with, as the President of Jobar and the only signatory on the Jobar Holdback Account, and other bank accounts Jobar had at the time.

Against the background of seven years of litigation, an appropriate investigation of the facts by Plaintiffs' counsel included the obtaining of material supporting facts and admissions through hard fought and frustrating discovery in which Defendant was uncooperative, requiring a year's delay, motion practice and a court order to obtain Defendant's deposition.  Barbara resisted discovery too, and was given substantial courtesies, based upon her health issues, to the extent that she has not yet been deposed. But in the sworn statements she submitted to the Court, such as in her affidavit dated December 2, 2017, **Exhibit A** to the Brecher declaration, Barbara admitted owing 38% of the Jobar Holdback Funds, she admitted using Jobar Holdback funds to pay for the Water Mill Long Island vacation home, and promised the Court she would pay "plaintiff Robert" out of the proceeds of the sale of her vacation home.  Then, in 2020, she secretly sold her vacation home for more than a million dollars, and instead of paying "plaintiff Robert" as she had promised the Court, she sent hundreds of thousands of dollars to her children, including Defendant and her other children,

2

her son-in-law and grandchildren in California. She then admitted to the Court what she had done, dishonoring her own sworn promise to the Court, and claimed poverty and inability to pay the Buck Plaintiffs the 38% she admitted remained owed to them, and that she could not repay the non-interest, undocumented Jobar "loans."

We provide all of this background information in response to the Defendant's motion and the highly charged accusations describing this lawsuit as a "vendetta." Judge Cohen, on being presented with this changed set of facts and the disrespectful behavior of Barbara, the breaking of her promise to the Court that she would pay the Buck Plaintiffs on the sale of the Water Mill property, a promise she made to defeat an attachment motion, decided that an injunction and restraining order was appropriate, and it was entered on September 24, 2020, as NYSCEF Doc. No. 182 under Index No. 655689/2017 in New York County Supreme Court.

The appeals of Justice Cohen's 2020 decision dismissing all but one of the claims against her, including the Civil RICO and Civil RICO conspiracy claim, are on appeal and on the October calendar of the Appellate Division for argument in October with opening briefs having been filed, and with reply briefs due next month, including on the cross-appeal of Turman & Eimer LLP., who are defending against the Plaintiffs' request to restore them as defendants to state and RICO claims. This year, Justice Cohen restored state claims against Barbara, and she recently filed a motion to dismiss the pending state claims against her in that case.

The Brecher Declaration shows that a reasonable investigation of the facts was made.

Therefore, the remainder of the brief will focus on whether the elements of a RICO claim were plausibly pleaded, with brief discussion as to each element required to be alleged in a Civil RICO claim or Civil RICO conspiracy claim and whether it was plausibly alleged.

**ARGUMENT**

<u>The Elements of a RICO claim were plausibly pleaded.</u>

The Defendant committed two or more of the requisite acts. The Complaint pleads more than six fraudulent "loans" in checks and wires he received out of the fiduciary account and proceeds thereof, over the course of seven years, constituting a "pattern" of "racketeering activity" in which he directly participated in an "Enterprise" that consisted of an association of individuals that included the Defendant, Barbara and T & E's partner, Mark Bernstein, who was the family and business accountant throughout. (**Exhibits C and D**)

The elements that were plausibly alleged in the Complaint show that a good faith effort to investigate and plead the RICO claims was made by Plaintiffs, and that any defect in the pleading is not such that it appeared to Plaintiffs' counsel when he signed the Complaint, that the RICO claims "had no chance of success and that there is no reasonable argument to extend, modify or reverse the law as it stands.

The Brecher Declaration shows that the Complaint alleges admissions sufficient to merit a motion for summary judgment on the state claims. Defendant, nonetheless, basis his sanctions motion on "frivolity" of the Complaint. For purposes of this memorandum, we will assume that the motion seeks sanctions for Plaintiffs' alleged failure to properly research and allege a RICO claim.

At paragraphs 7 and 8 of the Brecher Declaration, we explain the fraud content of the 2013 and 2014 Jobar tax returns prepared by T & E, signed by Barbara and filed at her direction as President of Jobar (**Exhibit C**). These false returns lulled the Plaintiffs into believing that there was nothing to worry about, because they showed substantially more than a million dollars owed to Jobar in non-shareholder loans. But these were undocumented shareholder loans to Barbara and Defendant, for which no interest was being charged, and despite the passage of years, nothing has been repaid. Disguising the loans as non-shareholder loans shows a consciousness of guilt. This tax fraud, through the use of the mails and wire, is underlying the mail fraud and tax fraud claims, and the Government has had an accepted practice of

pyramiding the tax fraud claim when suing tax cheats, using the mail and wire fraud statutes. That is one basis I had for reasoning that the RICO claims for mail fraud (Complaint ¶¶73 (a) had a chance of success.

   With regard to the bona fides of the § 1962 (c) (and (d) claims, Plaintiffs alleged (1) the details of the Defendant's mail and wire fraud in support of the embezzlement/tax fraud scheme (Complaint ¶¶ 73, 78, 81 and 84 -85) (tax evasion, 26 USC 7201); (2) the association-in-fact Enterprise, alleged to include Barbara in charge, with Defendant and their accountant, Mark Bernstein as the enabler of the scheme (Complaint at ¶¶ 74, 84, 85 and 88) *see, Cullen v. Margiotta*, 811 F. 2d 698, 730 (2d Cir.), cert. denied, 483 U.S. 1021, [107 S. Ct. 3266, 97L. Ed.2d 764 (1987); (3) committed more than six acts over a period of seven years in transactions with Barbara regarding funds emanating from the Jobar Holdback Account that were promised to the Buck Plaintiffs but never paid (Brecher Declaration, **Exhibits A** and **B**); (4) constituting a years long pattern from 2013 and as recent as a fraudulent conveyance and tax fraud in 2020 (four year statute of limitations for RICO claims, *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 147, 107 S.Ct. 2759, 2762 (1987),  and as early as 2013 (**Exhibit B**) in falsified tax filings to hide an embezzlement scheme; (5) directly causing Plaintiffs the entire loss of the funds Barbara had promised to pay, that Barbara controlled and paid to herself and Defendant, or for his benefit (**Exhibits A** and **B**); that affected interstate commerce (see, *U.S. v. Beasley*, 72 F. 3d 1518 (11th Cir.) *cert denied* 518 U.S. 1027(1996) only slight effect on interstate commerce required, *de minimis* connection, e.g. bank account can suffice) *U.S. v. Elliott*, 89 F. 3d 1360 (8th Cir. 1996).

### CONCLUSION

   When the Complaint and memorandum in opposition to the motion to dismiss were filed, Plaintiffs had a reasonable belief that the Complaint alleging embezzlement and tax fraud, using the mails and wires, in a RICO conspiracy over a period of years, in a pattern of connected acts, including a 2020 fraudulent transfer to defendant that year, could succeed.

   "[Plaintiffs] need not advance a winning argument to avoid Rule 11 sanctions. Any other

conclusion would chill an attorney's enthusiasm or creativity in pursuing legal theories, a result that the advisory committee sought to avoid." *Brubaker v. City of Richmond*, 943 F.2d 1363 at 1378 (4th Cir 1991) (quoting *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988(4th Cir. 1987).

Dated: New York, New York
      August 12, 2024

Respectfully submitted,

SCARINCI & HOLLENBECK LLC
By: */s/ Dan Brecher*, Esq
Dan Brecher,Esq.
519 Eight Avenue 25th Floor
New York, New York 10018
(212) 286-0747 (office)
(917-861-5057 (cellular)
(212) 808-4155 (facsimile)
dbrecher@sh-law.com

*Attorneys for Plaintiffs*

**VIA ECF and E-mail**

Sage Legal LLC

Emanuel Kataev, Esq.

emanuel@sagelegal.ny

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK,          **Case No.:**
Individually, and ROBERT BUCK, as Executor of the          **1:23-cv-11217 (JGLC) (GS)**
Estate of JOAN BUCK, and ROBERT BUCK, individually
and ROBERT BUCK, As Executor of the Estate of JOAN
BUCK, derivatively as shareholders on behalf of JOBAR
HOLDING CORPORATION,

                  Plaintiffs,

     -against-

DAVID HALIO,

                Defendant.
-----------------------------------------------------------------------X

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS
MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL
<u>PROCEDURE</u>**

Dated: Jamaica, New York
       August 19, 2024

                             **SAGE LEGAL LLC**
                             Emanuel Kataev, Esq.
                             18211 Jamaica Avenue
                             Jamaica, NY 11423-2327
                             (718) 412-2421 (office)
                             (917) 807-7819 (cellular)
                             (718) 489-4155 (facsimile)
                             mail@emanuelkataev.com

                             *Attorneys for Defendant*
                             *David Halio*

**PRELIMINARY STATEMENT**

Plaintiffs provide no basis for this Court to deny Defendant Dr. David Halio's (hereinafter "Defendant" or "Dr. Halio") motion for sanctions; indeed, Plaintiffs' conduct only further solidify Dr. Halio's entitlement to an Order issuing sanctions against them for their failure to address certain arguments, which should be deemed waived, and for their separate violation of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") by filing tax returns containing the full tax identification of Plaintiff Jobar Holding Corporation without redacting same as required by Rule 5.2.

Accordingly, Defendant submits this reply memorandum of law in further support of his motion for an Order (a) directing Plaintiffs and their counsel to pay monetary sanctions and attorneys' fees pursuant to (i) Rules 11(b)(1), (2) & (3), and 11(c); (ii) 28 U.S.C. § 1927; and/or (iii) and the Court's inherent power; and (b) issuing such other and further relief as this honorable Court deems just, equitable, and proper.

For the reasons set forth herein and those contained in the moving papers, this Court must issue appropriate sanctions.

**ARGUMENT**

**POINT I**

**SANCTIONS ARE APPROPRIATE PURSUANT TO RULE 11**

**A.**  **The Proceedings in the Barbara Halio State Court Action Fail to Save Plaintiffs**

Plaintiffs rely on the existence of an injunction, which Defendant's mother consented to, as well as the sufficiency of Plaintiffs' state law claims against Defendant's mother, to argue that sanctions are inappropriate.  Plaintiffs' arguments are misplaced; the only issue before this Court is whether the RICO claims are frivolous, and they cannot rely on other claims to defeat sanctions.

This is supported by a federal court's obligation to separate the wheat from the chaff in discerning between a true civil RICO claim and a run-of-the-mill fraud claim.  See Helios Intern. S.A.R.L. v. Cantamessa USA, Inc., No. 12-CIV.-8205, 2013 WL 3943267, at *5 (S.D.N.Y. July 31, 2013) ("[C]ourts must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing [as fraud claims]"); Rosenson v. Mordowitz, No. 11-CIV.-6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012) (to same effect); Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq., 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010) (to same effect).

Indeed, especially "in cases involving fraud, plaintiffs asserting RICO frequently miss the mark and have their cases dismissed at the outset." See Demaree v. Castro, No. 22-CIV.-8772, 2023 WL 6465881, at *5 (S.D.N.Y. Oct. 4, 2023); see also Gross v. Waywell, 628 F. Supp. 2d 475, 479-80 (S.D.N.Y. 2009) (discussing bleak success rates for civil RICO cases).

Thus, Plaintiffs' reliance on the existence of state law claims is unavailing to support a basis in law or fact for the civil RICO claim, which is assessed under an entirely different standard leaps and bounds apart from such state law claims.

Plaintiffs also argue that the discovery adduced in the Barbara Halio state court action, consisting of tax returns as well as deposition testimony and sworn affidavits concerning the tax returns, gives rise to the existence of a RICO claim.  This argument similarly fails.

*First*, the existence of these documents do not address the fact that they are time-barred.

*Second*, as discussed in Dr. Halio's motion papers, tax fraud is not a proper predicate for a RICO claim.

*Third*, Plaintiffs failed to include this alleged evidence supporting their RICO claims, nor did Plaintiffs include allegations of such evidence, in their copy-paste complaint from the Barbara Halio state court action.

This Court therefore cannot properly consider the same on this motion. See Emanuel v. City of New York, No. 23-CV-2980, 2024 WL 3638328, at *3 (S.D.N.Y. Aug. 2, 2024) ("[I]t is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion to dismiss" (cleaned up)) (citing Reed Int'l Trading Corp. v. Donau Bank AG, 866 F. Supp. 750, 756 (S.D.N.Y. 1994)).

Moreover, Plaintiffs mislead this Court in arguing that the parties have perfected their respective appeal and cross-appeal in the Barbara Halio state court action. While Barbara Halio perfected her appeal, Plaintiffs *withdrew* their appeal and have opposed Barbara Halio's appeal by arguing that the dismissed claims should be reinstated. See NYSCEF Docket Entry 64. This is improper, given Plaintiffs' withdrawal of their appeal, and will not revive their long-ago-dismissed civil RICO claims against Barbara Halio.

### B.  **The RICO Claims Were Not Sufficiently Pled & Are Demonstrably Frivolous**

In a futile effort to avoid the all-but-inevitable sanctions in this case, Plaintiffs unconvincingly argue that the pleadings allege more than six fraudulent "loans" over the course of seven years which Dr. Halio purportedly participated in. The basis for a RICO claim, Plaintiffs assert, is tax fraud.

### i.  **There was insufficient continuity**

Plaintiffs failed to rebut Dr. Halio's argument that open-ended continuity is appropriate in this case, where there is no allegation of inherently unlawful conduct, and the pleadings consist solely of allegations of fraud. See ECF Docket Entry 13 at 22 (citing See Int'l Bhd. of Teamsters v. Carey, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004)).

As such, only an analysis of closed-ended continuity may be conducted to determine the sufficiency of the RICO claims.

As set forth in Dr. Halio's moving papers in support of his motion to dismiss, the complaint does not sufficiently plead closed-ended continuity because the alleged predicate acts are few and far between spanning over nearly a decade.

They are therefore insufficiently continuous to constitute a pattern of racketeering activity. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997) (to establish a "pattern" of racketeering activity, a plaintiff must plead "at least two predicate acts, [and] show that the predicate acts are related, and that they amount to, or pose a threat of, *continuing* criminal activity") (emphasis added).

**ii.    The predicate acts pled were also insufficient**

Notwithstanding Dr. Halio's authority providing that tax fraud is not a predicate act under the RICO statutory scheme in its February 29, 2024 motion papers, Plaintiffs frivolously argue that the basis for the RICO claims against Dr. Halio consist of tax fraud.

Plaintiffs fail to offer a single authority in support of their unfounded argument.

Plaintiffs' RICO claims are therefore frivolous under Rule 11.

**iii.    Plaintiffs fail to show their claims are not time-barred**

Plaintiffs rely on alleged conduct in 2020 to argue that their RICO claims are timely. However, they entirely ignore – let alone fail to rebut – black-letter law that that continuing violations doctrine does not apply to RICO claims. See Bankers Tr. Co. v. Rhoades, 859 F.2d 1096, 1105 (2d Cir. 1988).

Because Plaintiffs ignore Dr. Halio's argument that they had notice of his alleged involvement in the so-called scheme since November 2016, Plaintiffs' failure to timely file the RICO claim before November 2020 was fatal, and is now time-barred.

Based on the foregoing, Plaintiffs and their counsel should be sanctioned.

4

Had they conducted a reasonable inquiry into the issues raised herein or even understood how to plead a viable RICO claim, Dr. Halio would not have been forced to engage in litigation before this Court for months.

## POINT II

### SANCTIONS ARE WARRANTED PURSUANT TO 28 U.S.C. § 1927

Plaintiffs and their counsel have failed to rebut Dr. Halio's assertion that they have multiplied the proceedings in this case unreasonably and vexatiously. As such, Plaintiffs have waived any argument to the contrary. See Felske v. Hirschmann, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. March 1, 2012) ("[a] Plaintiff effectively concedes a defendant's arguments by his failure to respond to them"); see also Rosenblatt v. City of New York, No. 05-CV-5521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) (same).

Therefore, the Court should require Plaintiffs and their counsel to pay sanctions including all attorneys' fees and costs incurred by Defendant to date.

## POINT III

### THE COURT SHOULD OTHERWISE ISSUE SANCTIONS PURSUANT TO ITS INHERENT POWER

Plaintiffs and their counsel have failed to rebut Dr. Halio's assertion that they abused the judicial process in this case.

As such, Plaintiffs have waived any argument to the contrary. See Felske, 2012 WL 716632, at *3; see also Rosenblatt, 2007 WL 2197835, at *7 (same).

Accordingly, the Court should use its inherent power to sanction Plaintiffs and their counsel.

**POINT IV**

**THE COURT SHOULD ALSO ISSUE SANCTIONS FOR RULE 5.2 VIOLATIONS**

Concomitant with Plaintiffs' Rule 11 violations, Plaintiffs have compounded their failure to follow the Rules by filing tax returns of Jobar Holding Corporation – the company they purportedly pursue claims on behalf of derivatively – without redacting its own and other tax-payer identification numbers as required by Rule 5.2.  This abject failure warrants separate sanctions altogether.

Rule 5.2 clearly dictates how parties are to file Court documents which contain an "individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number." See Scharnhorst v. Cantrall, No. 5:22-CIV.-5138 (TLB), 2023 WL 3012022, at *2 (W.D. Ark. Mar. 31, 2023), report and recommendation adopted sub nom. Scharnhorst v. Cantrell, No. 5:22-CIV.-5138, 2023 WL 3010191 (W.D. Ark. Apr. 19, 2023) (citing Fed. R. Civ. P. 5.2(a)).

It is within the inherent authority of the Court to sanction a party for violating this (or any other) procedural rule. See Engeseth v. Cnty. of Isanti, Minn., 665 F. Supp. 2d 1047, 1048 (D. Minn. 2009) (sanctioning plaintiff's counsel for failing to comply with Rule 5.2 because "[a]lthough electronic filing significantly improves the efficiency and accessibility of [ ] the court system, it also elevates the likelihood of identity theft and damage to personal privacy when lawyers fail to follow federal and local rules").  And courts exercise their discretion in favor of issuing sanctions for violations of Rule 5.2.  See Allstate Ins. Co. v. Linea Latina De Accidentes, Inc., 2010 WL 5014386, at *2–3 (D.Minn. Nov. 24, 2010) (imposing sanctions of $300 and pay for credit monitoring for violations of Rule 5.2); see also Baker v. FirstCom Music, No. 16-CIV.-8931 (VAP) (JPRX), 2018 WL 2584814, at *9 (C.D. Cal. Jan. 16, 2018) ($300.00 fine).

Here, this Court should exercise its discretion in favor of awarding sanctions for Plaintiffs' compounded failure to comply with Rule 5.2 where the tax-payer identification numbers are repeatedly shown unredacted.

## CONCLUSION

For the foregoing reasons, Dr. Halio respectfully request that the Court issue appropriate sanctions against Plaintiffs and their counsel for the reasons set forth herein and in his moving papers.

Dated: Jamaica, New York
       August 19, 2024            Respectfully submitted,

           **SAGE LEGAL LLC**

           */s/ Emanuel Kataev, Esq.*
           Emanuel Kataev, Esq.
           18211 Jamaica Avenue
           Jamaica, NY 11423-2327
           (718) 412-2421 (office)
           (917) 807-7819 (cellular)
           (718) 489-4155 (facsimile)
           mail@emanuelkataev.com

           *Attorneys for Defendant*
           *David Halio*

**VIA ECF**
Scarinci & Hollenbeck, LLC
<u>Attn</u>: Dan Brecher, Esq.
519 Eighth Avenue, 25th Floor
New York, NY 10018
(212) 286-0747 (office)
(917) 861-5057 (cellular)
(212) 808-4155 (facsimile)
dbrecher@sh-law.com

*Attorneys for Plaintiffs*

 **SCARINCI | HOLLENBECK** — ATTORNEYS AT LAW —

519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
sh-law.com

**DAN BRECHER | Counsel**
dbrecher@sh-law.com
Phone: 212-286-0747
Cell: 917-861-5057
Facsimile: 212-808-4155

**VIA ECF**
Hon. Jessica G. L. Clarke, U.S.D.J.                    August 21, 2024
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 20C
New York, New York 10007-1312

Re: Case No. 1:23-cv-11217(JGLC)(GS)
    Jobar Holding Corporation, *et al.* v David Halio

Dear Judge Clarke:

I write to request, in accord with ECF Rule 21.8, that I be permitted to replace Exhibits C and D to the filing of Doc No. 28, which inadvertently contained the unredacted EIN number for the defunct Jobar Holding Corporation. The Exhibits also contain social security numbers for individuals, but those were redacted to exclude all but the last four numbers.

I requested sealing of the Exhibits C and D by the Clerk's office as I go through the process of replacing the two exhibits with the Jobar Holding Corporation EIN number similarly redacted, upon your approval of that process, which is respectfully requested by this letter.

Respectfully submitted.

SCARINCI & HOLLENBECK LLC
By:/s/Dan Brecher. Esq.
Dan Brecher, Esq.
519 Eighth Avenue  25th Floor
New York, New York 10018
212-286-0747 (office)
917-861-5057 (cellular)
212-808-4155 (facsimile)
*dbrecher@sh-law.com*

*VIA ECF TO:*
*SAGE LEGAL LLC*

# A190



**SCARINCI | HOLLENBECK**
— ATTORNEYS AT LAW —

519 8TH AVENUE, 25TH FLOOR
NEW YORK, NY 10018
sh-law.com

**DAN BRECHER | Counsel**
dbrecher@sh-law.com
Phone: 212-286-0747
Cell: 917-861-5057
Facsimile: 212-808-4155

**MEMO ENDORSED**

**VIA ECF**
Hon. Jessica G. L. Clarke, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 20C
New York, New York 10007-1312

August 21, 2024

Re: Case No. 1:23-cv-11217(JGLC)(GS)
<u>Jobar Holding Corporation, <i>et al.</i> v David Halio</u>

Dear Judge Clarke:

I write to request, in accord with ECF Rule 21.8, that I be permitted to replace Exhibits C and D to the filing of Doc No. 28, which inadvertently contained the unredacted EIN number for the defunct Jobar Holding Corporation. The Exhibits also contain social security numbers for individuals, but those were redacted to exclude all but the last four numbers.

I requested sealing of the Exhibits C and D by the Clerk's office as I go through the process of replacing the two exhibits with the Jobar Holding Corporation EIN number similarly redacted, upon your approval of that process, which is respectfully requested by this letter.

Respectfully submitted.

SCARINCI & HOLLENBECK LLC
By:/s/Dan Brecher. Esq.
Dan Brecher, Esq.
519 Eighth Avenue  25th Floor
New York, New York 10018
212-286-0747 (office)
917-861-5057 (cellular)
212-808-4155 (facsimile)
<i>dbrecher@sh-law.com</i>

<i>VIA ECF TO:</i>
<i>SAGE LEGAL LLC</i>

Application GRANTED. The Clerk of Court is directed to terminate ECF No. 31.

SO ORDERED.


JESSICA G. L. CLARKE
United States District Judge

Dated: August 22, 2024
New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOBAR HOLDING CORPORATION, ROBERT BUCK, Individually, and ROBERT BUCK, As Executor of the Estate of JOAN BUCK, and ROBERT BUCK, individually and ROBERT BUCK, As Executor of the Estate of JOAN BUCK, derivatively as shareholders on behalf of JOBAR HOLDING CORPORATION,<br><br>Plaintiffs,<br><br>- against -<br><br>DAVID HALIO,<br><br>Defendant. | Case No. 1:23-cv-11217 (JGLC)(GS)<br><br><br>**DECLARATION OF DAN BRECHER, ESQ., AS TO REDACTED EXHIBITS C AND D IN OPPOSITION TO NEWLY STATED CLAIM FOR SANCTIONS IN REPLY BRIEF AS TO MOTION FOR RULE 11 SANCTIONS** |

DAN BRECHER, ESQ., an attorney duly admitted to practice law in the courts of the State of New York, and before this Court, declares the following to be true under the penalties of perjury:

1.      I am counsel to the law firm of Scarinci & Hollenbeck LLC, attorneys for the Plaintiffs herein, and make this declaration to confirm that, as directed by the Court, I have further redacted the Jobar EIN number as well as numbers identifying the accountants as the preparers of the tax returns and K-1's contained in Exhibits C and D to Plaintiffs' opposition to Defendant's Rule 11 Motion. We E-filed, today, the Plaintiff Jobar Holding Corporation's ("Jobar") 2013 and 2014 tax return excerpts that are Exhibits C and D to Document 28 herein, Plaintiff's opposition to Rule 11 sanctions, which Defendant, in his Reply papers, for the first time added that he also sought sanctions for our E-filing tax documents that included Jobar's EIN number and the tax filing accountant's identifying information.

2.      The Court will note that the unredacted 2013 and 2014 tax return excerpts I previously filed herein are stamped showing they were originally filed in 2017.  They were filed in the State court by Attorney Richard Yeskoo in the pending State court case Plaintiffs brought

1

against Barbara Halio. The tax return excerpts I filed herein are the same documents I copied out of the State court filings made years ago without anyone ever objecting. They are the same documents as filed therein copied almost seven years later, except for the further redactions we added.

3.      It is important to point out the hollowness of Defendant's complaint that the documents should not have been copied from the 2017 filing in the State court case, as filed here by me. As indicated on the re-filed redacted returns, they are NYSCEF Doc. Nos. 62 and 63 in the State court case. The Jobar 2013 and 2014 tax returns were filed in 2017 by Richard Yeskoo, Defendant David Halio's former attorney prior to the litigation (see NYSCEF Doc. No. 48). And, Yeskoo was Barbara Halio's and also Jobar's former attorney prior to the litigation (NYSCEF Doc. No. 50).

4.      Defendant's current counsel herein has represented Barbara Halio since 2023 in the State court case and appeal, and never previously complained about any filing of those same tax returns and K-1's in the pending State court case.

5.      Jobar's former accountants, Turman & Eimer, defendants in the State court case at the time the tax returns were filed by Yeskoo, and for six years thereafter, never objected to Yeskoo's filings of the unredacted tax filings they had prepared, even though their identifying information as tax preparers appeared on the tax returns Yeskoo E-filed in December 2017, which I re-filed herein.

6.      I did not represent Plaintiffs in 2017, and only commenced representing Plaintiffs in July of the year following after Yeskoo's filing of the unredacted tax returns.

7.      In his Reply, the new request made for sanctions is based on tax returns filed that

2

Defendant, for the first time, now objects to for the lack of certain redactions, despite that these returns show on their face that they were previously filed in the pending State court proceedings by an attorney who had previously represented this Defendant, his mother and Jobar.

8.     Defendant added in his Reply a new request for sanctions as to the lack of further redactions in Exhibits C and D to my opposition to the Rule 11 Motion.  I submitted documents that had sat unobjected to by Defendant, nor by the accountants who are defendants named in the State court action on appeal, and are being made now as to documents copied from the court record of more than six years standing without anyone's objection, and that I copied and filed herein but did not originally file in the State court.

9.     Similarly, the K-1's filed herein as Exhibit D to Doc. No. 28, are the same documents filed more than four years ago as NYSCEF Doc No. 126, without anyone's complaint about redactions needed for the EIN number of Jobar or other unspecified tax information which contained the unredacted EIN number for the defunct Jobar Holding Corporation.

10.     The exhibits also contain social security numbers for individuals, but those were all redacted in the original filing to exclude all but the last four numbers.  The Defendant's new request for sanctions does not claim that anyone's social security number was presented in unredacted form.  All social security numbers were all presented in redacted form in my original filing in response to the Rule 11 Motion.

11.     I have sought here to show Plaintiffs' compliance with Your Honor's authorization of the sealing and re-filing of Exhibit's C and D to the Opposition to the Rule 11 Motion and

to submit that no sanctions are merited for the partially redacted exhibits for the reasons set forth above including that no one, including all counsel, ever objected to the redaction of the documents for more than six years, and, that it is Defendant's former counsel prior to the proceedings who filed the documents in the State court in the form to which Defendant now objects, raised for the first time in Defendant's recent Reply.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: New York, New York
        August 26, 2024

                                            **SCARINCI & HOLLENBECK, LLC**

                                            By:  _/s/  Dan Brecher_
                                                 DAN BRECHER, ESQ.
                                                 *Attorneys for Plaintiffs*
                                                 519 8th Avenue, 25th Floor
                                                 New York, NY 10018
                                                 Tel: (212) 286-0747
                                                 Facsimile: (212) 808-4155
                                                 dbrecher@sh-law.com

_**Via E-Mail and ECF**_:
Sage Legal LLC
Attn: Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, New York 11423-2327
emanuel@sagelegal.nyc
*Attorneys for Defendant*

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOBAR HOLDING CORPORATION, et al.,

                              Plaintiffs,

              -against-

DAVID HALIO,

                              Defendant.

---

23-CV-11217 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

    Plaintiffs allege that Defendant received transfers of funds that should have gone, at least in part, to Plaintiffs. Although Plaintiffs dress up their allegations as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Plaintiffs do not state facts that meet the high bar that RICO requires. Even if Plaintiffs had done so, their RICO-related claims are time-barred. Accordingly, Defendant's motion to dismiss Plaintiffs' RICO claims is GRANTED and the case is REMANDED to state court. The Court further DENIES Defendant's motion for sanctions. Although Plaintiffs' RICO claims are meritless, the Court finds sanctions unwarranted here.

## BACKGROUND

    The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

    Joan Buck and Barbara Halio, sisters, were co-executrices in the will of their mother, Kitty Buck. ECF No. 1-1 ("Complaint" or "Compl.") ¶ 8. Joan Buck passed away in 2005. *Id.* Plaintiff Robert Buck is the son of Joan Buck and the executor of her estate (the "Estate of Joan Buck"). *Id.* Defendant David Halio is the son of Barbara Halio. *Id.* Jobar Holding Corporation

("Jobar," together with Robert Buck, individually; Robert Buck, as executor of the Estate of Joan

Buck; and Robert Buck, individually and as executor of the Estate of Joan Buck, derivatively as

shareholders on behalf of Jobar, "Plaintiffs") is a domestic organization that has its offices at 257

Foxhurst Road in Oceanside, New York, the home of Barbara Halio and where David Halio's

medical practice is located. *Id*. ¶ 16. Barbara Halio served as president of the inactive family-

owned corporation Jobar, as well as the chief executive and operating officer. *Id*. ¶ 8.

     Jobar operated a bakery business in Manhattan until 1990. *Id*. ¶ 75. From 1990 through

2005, Jobar continued to own and operate the building where the bakery was located, at 120

West 72 Street in Manhattan (the "Building"). *Id*. On May 12, 2006, Jobar sold the Building for

$22,000,000, with net proceeds of $20,500,106. *Id*. ¶¶ 9, 22. After paying the mortgage on the

building, fees, bills, taxes, and Jobar shareholders, the remaining sum of $1,500,000 was set

aside in a bank's money market account, to earn interest and to be further distributed

proportionately to the Jobar shareholders. *Id*. ¶ 9. This was to be done upon establishing that no

further claims, disputes, or obligations existed as to the remaining $1,500,000 proceeds of the

sale of the building (the "Holdback Funds"). *Id*. After the sale, Jobar had no other operating

business. *Id*. At the time of the sale, Robert Buck and the Estate of Joan Buck collectively had a

38% ownership interest in Jobar. *Id*. ¶ 23. David Buck was a 12.5% shareholder in Jobar. *Id*.

¶ 24.

     Barbara Halio distributed more than $1,000,000 of the Holdback Funds and derivatives

therefrom as loans (the "Loans"). *Id*. ¶ 10. Although the transfers were titled as loans, there were

no loan documents, no provisions or payments of interest, and no repayments by David or

Barbara Halio of any of the principal or interest for any transfers made to them out of the Jobar

account. *Id*. ¶ 2. Barbara Halio made payments totaling more than $500,000 to David Halio, two

of her other children, two of her grandchildren, and her son-in-law. *Id*. ¶¶ 1, 10. Barbara Halio also used some of the Holdback Funds for personal expenditures, including David Halio's medical malpractice insurance premium. *Id*. ¶ 28. These transactions were made without the knowledge of Robert Buck. *Id*. ¶ 10. Barbara Halio did not distribute any funds to Robert Buck or the Estate of Joan Buck. *Id*.

The Complaint alleges that Barbara Halio sent (1) a $20,000 check dated March 2, 2013, as a purported loan to David Halio; (2) a $10,000 check dated April 12, 2013, as a purported loan to David Halio; (3) a $43,996 wire transfer on April 15, 2013, to pay the overdue premium for David Halio's professional malpractice insurance policy; (4) a $50,000 wire transfer on May 3, 2013, to David Halio's bank account; (5) a wire transfer on November 22, 2013, to David Halio's bank account; and (6) a $60,000 wire transfer on December 20, 2013, to David Halio's personal account. *Id*. ¶ 3.

Plaintiffs allege that David Halio was aware that Jobar was no longer conducting any active business after the sale of the Building and that the Loans far exceeded the amount that he was entitled to receive. *Id*. ¶ 24. Plaintiffs further allege that David Halio has provided assistance to Barbara Halio by "receiving, keeping and making false statements as to the fraudulent conveyances he received through Barbara's transfers to him of plaintiffs' funds." *Id*. ¶ 33. David Halio contends that he did not ask for the Loans. *Id*. ¶ 4.

Barbara Halio promised that she would make payments to Robert Buck when her vacation home in Watermill, New York (the "Watermill Property") was sold. *Id*. ¶ 12. Instead, she transferred funds derived from the sale of the Watermill Property to the benefit of her children, grandchildren, and son-in-law. *Id*. She wrote a $30,000 check to David Halio on April 25, 2020, with the proceeds from the sale of the Watermill Property. *Id*.

3

According to the Complaint, David Halio also filed false and misleading tax documents with the Internal Revenue Service ("IRS") and local tax authorities by virtue of failing to report as income the funds that he received from the Holdback Funds that exceeded his 12.5% ownership rights, as well as other payments sent to him by Barbara Halio, such as the payment of his professional insurance policy premium. *Id*. ¶ 37. The Jobar annual tax returns from 2008 through 2017 also falsely reported the Loans. *Id*. ¶ 85(ii)(c). Plaintiffs allege that by failing to report the Loans and other payments on his income tax returns, David Halio facilitated and enabled Barbara Halio's scheme to loot Jobar. *Id*. ¶ 40.

The Complaint additionally alleges that Barbara and David Halio sent false K-1 Forms. *Id*. ¶ 81. K-1 forms are annual reports filed with the IRS and shareholders by entities such as Jobar and serve as reports as to the individual shareholder's "Share of Current Year Income, Deductions, Credits, and Other Items." *Id*. K-1 forms are sent to shareholders so that shareholders can use them to accurately prepare and report on their own taxable income and deductions to the IRS. *Id*. An accountant for Barbara Halio, David Halio, and Jobar stated that the numbers attributed to the Estate of Joan Buck on the 2014 K-1 ($390,021) and the Robert Buck 2014 K-1 ($104,006) represented funds that Barbara Halio had misappropriated to herself from the Holdback Funds. *Id*. ¶¶ 84, 85(ii)(a)–(b). Plaintiffs allege that the K-1s that Jobar issued each year from 2008 through 2017 contained false statements or omissions. *Id*. ¶ 85(i).

In 2016, Plaintiffs commenced a mandamus proceeding under common law and New York State Business Corporation Law § 624, to require Jobar and Barbara Halio to submit all books, records, papers, and contracts for inspection and examination. *Id*. ¶ 29; *see also Buck v. Jobar Holding Corp.*, No. 605680/2016 (N.Y. Sup. Ct.). Robert Buck was only able to secure a portion of the bank and financial records of Jobar. Compl. ¶ 30. The bank and financial records

revealed that Barbara Halio fraudulently transferred most of the Holdback Funds from Jobar to herself, her family members, or controlled persons. *Id*. ¶ 31.

Plaintiffs are concurrently suing Barbara Halio in an action pending in New York County Supreme Court. *Id*. ¶ 11; *see also Jobar Holding Corp. v. Halio*, No. 655689/2017 (N.Y. Sup. Ct.) (the "State Court Action"). There, Plaintiffs allege that Barbara Halio did not distribute Holdback Funds as required, distributing none to Robert Buck. State Court Action, NYSCEF No. 12. On October 7, 2020, the court dismissed all claims against Barbara Halio, including the civil RICO claim, other than the faithless employee claim brought derivatively on behalf of Jobar. *Id*., NYSCEF No. 184; *see also id*., NYSCEF No. 235 at 41:7–10 ("They failed to allege facts sufficient to support what is a conclusory assertion that there was a pattern of racketeering activities, the existence of an enterprise and proximate cause."). On March 15, 2024, the court granted plaintiff's motion for leave to amend, *id*., NYSCEF No. 269, and on the same day, Plaintiffs filed their Second Amended Complaint, *id*., NYSCEF No. 270. On September 27, 2024, the court denied the motion to dismiss Plaintiffs' Second Amended Complaint. *See id*., NYSCEF No. 306.

## LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does

not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

### DISCUSSION

The Court first addresses Defendant's statute of limitations argument, holding that

Plaintiffs were on inquiry notice in 2017 such that the statute of limitations has run on Plaintiffs'

RICO claims. Even if the claims were timely, Plaintiffs failed to state any viable RICO claims.

First, the Court finds that Plaintiffs lack RICO standing as to the allegedly fraudulent tax and

corporate reports because Plaintiffs have not demonstrated that such reports caused Plaintiffs

injury. Next, the Court finds that Plaintiffs fail to plead an association-in-fact enterprise because

Plaintiffs have failed to plead facts demonstrating that the alleged members of the association-in-

fact enterprise functioned as a unit. Plaintiffs additionally fail to demonstrate that David Halio

exerted some control over the alleged association-in-fact enterprise. The Court next finds that

Plaintiffs fail to allege facts showing open-ended continuity, such that Plaintiffs fail to show a

pattern of racketeering activity. Plaintiffs fail to state a RICO conspiracy claim because it is

based on the same facts as Plaintiffs' substantive RICO claim. Because the Court dismisses the

only federal claims in this action, the Court declines to exercise supplemental jurisdiction over

the remaining state law claims.[1] Turning to Defendant's motion for sanctions, although finding

that Plaintiffs brought meritless claims, the Court declines to impose sanctions.

## I.    The RICO Claims Are Barred by the Statute of Limitations

Defendant first argues that the statute of limitations has run on Plaintiffs' RICO claims.

"The statute of limitations for a civil RICO claim is four years." *Cohen v. S.A.C. Trading Corp.*,

711 F.3d 353, 361 (2d Cir. 2013) (citing *Rotella v. Wood*, 528 U.S. 549, 552 (2000)). The

discovery accrual rule applies in RICO cases, "under which the limitations period begins to run

when the plaintiff discovers or should have discovered the RICO injury." *Id.* (internal citation

and quotation marks omitted). In other words, "the limitations period does not begin to run until

the plaintiff has actual or inquiry notice of the injury." *Id.* (internal citation omitted).

"A duty to inquire is triggered by information that relates directly to the

misrepresentations and omissions the Plaintiffs later allege in their action against the

defendants," although the information "need not detail every aspect of the subsequently alleged

fraudulent scheme." *Id.* (internal citations and quotation marks omitted). "[W]hether a plaintiff

had sufficient facts to place it on inquiry notice is often inappropriate for resolution on a motion

to dismiss under Rule 12(b)(6)." *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148,

156 (2d Cir. 2003) (internal citation and quotation marks omitted). However, where the facts

needed for the inquiry notice determination "can be gleaned from the complaint and papers

---

[1] Defendant also argues that abstention under the *Colorado River* doctrine applies. However, this action is not parallel to the State Court Action and therefore, *Colorado River* abstention is unwarranted. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 101 (2d Cir. 2012); *DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 645 (S.D.N.Y. 2011) ("[L]awsuits are not parallel, and *Colorado River* abstention is not appropriate, simply because some factual and legal issues involved in a later RICO action in federal court overlap with the issues involved in an earlier state court action.")

integral to the complaint, resolution of the issue on a motion to dismiss is appropriate." *Id*. (cleaned up).

David Halio argues that Robert Buck had inquiry notice as to David Halio's alleged involvement since in or about 2017, following Robert Buck's receipt of records in *Buck v. Jobar Holding Corp.*, No. 605680/2016. ECF No. 13 ("Mot.") at 9. He contends that the court directed Barbara Halio to submit the documents requested, and that there is nothing to indicate that Barbara Halio failed to comply with the court's order. *Id*. Plaintiffs acknowledge that they received bank and financial records through those proceedings and that they "reveal[ed] that Barbara fraudulently transferred most of the Holdback [Funds] from Jobar to herself, her family members, including defendant David, or controlled persons, entities and accounts to whom it was fraudulent to transfer the funds." Compl. ¶ 31. Plaintiffs also state that Robert Buck was only able to secure a portion of the bank and financial records and that Plaintiffs were unaware of certain facts related to allegedly fraudulent conveyances until David Halio's January 19, 2023 deposition in the State Court Action. *Id*. ¶¶ 30–31, 54–55.

The bank and financial records Plaintiffs received, "reveal[ing] that Barbara fraudulently transferred most of the Holdback [Funds] from Jobar," were sufficient to have put Plaintiffs on inquiry notice of Plaintiffs' alleged injuries here. The fact that Plaintiffs did not know the full extent of Defendant's alleged fraud does not save these claims. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008) (stating that the triggering information "need not detail every aspect of the alleged fraudulent scheme"). Accordingly, the RICO claims are dismissed as time barred. Even if the RICO claims were not time barred, Plaintiffs still fail to state a claim and would be dismissed, as discussed *infra* Section II.

## II.     Plaintiffs Fail to State a Substantive Civil RICO Claim

Plaintiffs' RICO cause of action against Defendant is brought pursuant to 18 U.S.C.

§ 1962(c). To establish a civil RICO claim pursuant to 18 U.S.C. § 1962(c), "a plaintiff must

plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity.'" *Needham & Co, LLC v. Access Staffing, LLC.*, No. 15-CV-2487 (NRB),

2016 WL 4399288, at *12 (S.D.N.Y. Aug. 12, 2016) (quoting *DeFalco v. Bernas*, 244 F.3d 286,

306 (2d Cir. 2001)). "RICO defines racketeering activity to mean 'any act which is indictable'

under specified provisions of Title 18," including mail, wire, and bank fraud. *Yien-Koo King v.

Wang*, No. 14-CV-7694 (LJL), 2020 WL 6875403, at *20 (S.D.N.Y. Nov. 23, 2020); *see also* 18

U.S.C. § 1961(1).

"[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal

courts by dressing up run-of-the-mill fraud claims as RICO violations." *DLJ Mortg. Cap., Inc. v.

Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010). Accordingly "courts have an obligation

to scrutinize civil RICO claims early in the litigation-to separate the rare complaint that actually

states a claim for civil RICO from that more obviously alleging common law fraud." *Rosenson v.

Mordowitz*, No. 11-CV-6145 (JPO), 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012); *see also

Acklin v. Eichner*, No. 20-CV-7042 (GHW), 2021 WL 4442819, at *5 (S.D.N.Y. Sept. 27, 2021)

(internal quotation marks and citation omitted) (noting that courts carefully scrutinize RICO

claims at the motion to dismiss stage because "civil RICO has resulted in a flood of what are and

should be state court cases that are being reframed and brought in federal court as RICO actions

because of the carrot of treble recovery and the availability of a federal forum"); *Demaree v.

Castro*, No. 22-CV-8772 (CM), 2023 WL 6465881, at *5 (S.D.N.Y. Oct. 4, 2023) ("[P]laintiffs

asserting RICO frequently miss the mark and have their cases dismissed at the outset.").

This case is essentially about a family dispute where Defendant received money from his mother that allegedly belonged to Plaintiffs. This is not the "rare complaint that actually states a claim for civil RICO." *Rosenson*, 2012 WL 3631308, at *5. Instead, Plaintiffs attempt to dress up what seem to be conversion claims – as well as claims about allegedly fraudulent tax and corporate reports, which they lack RICO standing to pursue – as ones for civil RICO and conspiracy. For these and the additional reasons stated below, Plaintiffs' allegations fail to meet the high standard required for such claims.

### A. Plaintiffs Lack RICO Standing as to Certain Allegations

Part of Plaintiffs' RICO claim relies on allegations that Defendant, along with Barbara Halio, created and filed fraudulent tax documents and other corporate reports. Plaintiffs, however, do not adequately demonstrate RICO standing as to these allegations. "To satisfy RICO's standing requirements, a plaintiff must demonstrate, (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (internal citation and quotation marks omitted). Standing in the RICO context is limited "to those plaintiffs who allege that the asserted RICO violation was the legal, or proximate, cause of their injury, as well as a logical, or but for, cause." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283–84 (2d Cir. 2006) (internal citation and quotation marks omitted). A plaintiff "does not have standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the injury was proximately caused by some non-RICO violations committed by the defendants." *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003); *see also Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1344 (2d Cir. 1994) (internal citation omitted) (stating that standing to assert a RICO conspiracy claim "may be founded only upon injury from overt acts

that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO

conspiracy"). "The defendant's racketeering activity must have caused the plaintiff to suffer

economic loss." *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08-CV-6150

(PAC), 2010 WL 3026510, at *8 (S.D.N.Y. Aug. 2, 2010) (internal citation and quotation marks

omitted).

Plaintiffs allege that the Loans included funds that should have been transferred to Robert

Buck and the Estate of Joan Buck but were instead transferred to Defendant and other third

parties. *See* Compl. ¶ 13 ("It is beyond dispute that the Estate of Joan Buck and Robert Buck

have not received a nickel of the unpaid 38% of the Holdback [Funds], plus years of unpaid

interest on the withheld funds."). This is a cognizable injury as to Robert Buck and the Estate of

Joan Buck. And, the cause of this injury as alleged in the Complaint is clear: the actions of

Barbara Halio in distributing funds to Defendant. This conduct is entirely distinct from allegedly

fraudulent tax or corporate reports. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458

(2006). There is simply no connection between alleged fraudulent tax or corporate reports and

these injuries. Plaintiffs have also not otherwise alleged how any fraudulent tax or corporate

reports could have caused or did cause any other injury to any of Plaintiffs.

Accordingly, the Court will analyze Plaintiffs' RICO claim only with respect to the

Loans; Plaintiffs do not have RICO standing as to the allegedly fraudulent tax and corporate

reports. *See Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210, 219 (S.D.N.Y.

2000) ("Where, as here, the primary purpose of an alleged racketeering enterprise is to avoid

paying taxes or otherwise defraud the government, indirectly injured parties do not have standing

to bring RICO claims.").

**A.  Plaintiffs Fail to Plead an Association-In-Fact Enterprise**

Plaintiffs fail to state a substantive RICO claim because they fail to sufficiently plead an association-in-fact enterprise. An "association-in-fact enterprise is a group of persons associated together for a common purpose engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (internal citation and quotation marks omitted). It consists of three features: (1) a purpose, (2) relationships among the individuals associated with the enterprise, and (3) longevity sufficient to permit the associates to pursue the purpose of the enterprise. *Id*. "The enterprise must also exist 'separate and apart from the pattern of activity in which it engages.'" *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 667 (2d Cir. 2014) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Plaintiffs argue that the Complaint alleges an enterprise between David Halio, Barbara Halio, and others, the purpose of which was to embezzle Plaintiffs' funds. Compl. ¶ 74. Plaintiffs, however, have not alleged any facts that such enterprise "was an ongoing organization, formal or informal, or any evidence that the various associates of the alleged enterprise functioned as a continuing unit." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (internal citation and quotation marks omitted). Plaintiffs also have not advanced any factual allegations "regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise, from which [the Court] could fairly conclude that its members functioned as a unit." *Id*. (cleaned up). Plaintiffs fail to make any concrete factual assertions as to the mechanics of the interactions between David Halio and Barbara Halio. Neither do Plaintiffs allege facts as to how Jobar was a part of the purported association-in-fact enterprise, apart from the Loans deriving from funds from the sale of Jobar's building. Accordingly, Plaintiffs have failed to plead the existence of an association-in-fact enterprise.

**B. Plaintiffs Fail to Plead that Defendant Conducted the Affairs of the Alleged Association-in-Fact Enterprise**

The Complaint also fails to state a claim because it does not sufficiently allege that David Halio "conducted" the affairs of the alleged association-in-fact enterprise. "RICO liability does not automatically extend to RICO 'persons' associated with an enterprise. To be held liable under § 1962(c), the defendant person must 'conduct or participate in the conduct of such enterprise's affairs.'" *Palatkevich v. Choupak*, No. 12-CV-1681 (CM), 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) (quoting 18 U.S.C. § 1962(c)). "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). RICO liability is not limited to those with primary responsibility for the enterprise's affairs, nor is RICO liability limited to those with a formal position in the enterprise. *Id*. However, a "defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise." *Redtail Leasing, Inc. v. Bellezza*, No. 95-CV-5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997).

The Complaint alleges that David Halio "aided and abetted" Barbara Halio's scheme by "receiving, keeping and making false statements as to the fraudulent conveyances he received through Barbara's transfers to him of plaintiffs' funds." Compl. ¶ 33. By virtue of being a "substantial recipient of looted funds," the Complaint claims that David Halio "undoubtedly knew that moneys were being looted from the Holdback [Funds]." *Id*. ¶ 35. The Complaint additionally claims that David Halio "facilitated Barbara's looting of the Holdback [Funds]" by filing false tax documents that failed to properly report his income. *Id*. ¶ 36–38. And Plaintiffs attempt to argue in their opposition that David Halio participated in directing the enterprise because "how did [David Halio's] mother come to wire the exact amount of his professional

13

medical malpractice insurance premium of $43,996 to his insurer out of the Jobar Holdback account; and, how did she get the insurer's wiring instructions, if not from David, after his check to the insurer had bounced?" *See* ECF No. 17 ("Opp.") at 7.

These allegations – and, in part, arguments made in opposition rather than factual allegations – do not amount to direction or control. Instead, they, at most, "merely indicate[] that [Defendant] engaged in wrongful conduct that assisted" Barbara Halio's conduct. *See Palatkevich*, 2014 WL 1509236, at *16 (internal citation and quotation marks omitted). Plaintiffs utterly fail to allege that Defendant directed the affairs of the alleged enterprise. For this reason, the Complaint fails to state a claim as its allegations are insufficient to fulfill the conduct element of Section 1962(c).

### C.  Plaintiffs Fail to Establish a Pattern of Racketeering Activity

Finally, Plaintiffs fail to state a substantive RICO claim because they fail to establish a pattern of racketeering activity. "A plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Cap.*, 385 F.3d at 180 (internal citation omitted). These patterns are also referred to as open-ended or closed-ended continuity.

Defendant does not argue that the predicate acts constituting the pattern were insufficiently pleaded, and so the Court assumes without deciding that the predicate acts were sufficiently pleaded. Here, the predicate acts that Plaintiffs allege are (1) the purported loans to David Halio, made through wire transfers and checks and (2) false tax documents filed with the IRS. As discussed *supra* Section II(A), Plaintiffs do not have RICO standing as to the allegedly fraudulent tax and corporate documents; thus, the Court only looks to the Loans for the purposes

of the continuity analysis. As to the purported Loans, the Complaint alleges that Barbara Halio

sent six transfers in 2013 and one in 2020. Compl. ¶¶ 3, 12.

Defendant argues that Plaintiffs have failed to plead both open-ended and closed-ended

continuity. Mot. at 19, 21–23. Plaintiffs only argue that there is an "open-ended pattern," Opp. at

18; thus, the Court only analyzes whether there is open-ended continuity.[2] "To satisfy open-

ended continuity, the plaintiff need not show that the predicates extended over a substantial

period of time but must show that there was a threat of continuing criminal activity beyond the

period during which the predicate acts were performed." *First Cap.*, 385 F.3d at 180 (internal

citation omitted). There are two ways to show open-ended continuity:

> (1) where the acts of the defendant or the enterprise are inherently unlawful, such
> as murder or obstruction of justice, and are in pursuit of inherently unlawful
> goals, such as narcotics trafficking or embezzlement, or (2) where the enterprise
> primarily conducts a legitimate business but there is some evidence from which it
> may be inferred that the predicate acts were the regular way of operating that
> business, or that the nature of the predicate acts themselves implies a threat of
> continued criminal activity.

*Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019) (quoting *United*

*States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995) and *Cofacredit, S.A. v. Windsor Plumbing*

*Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999)) (internal quotation marks omitted).

The Court agrees with Defendant that the "inherently unlawful" category is inapplicable

here. The predicate acts alleged in the Complaint consist of mail, wire, and bank fraud. It is well-

established that fraud does not imply a threat of continued criminal activity in the RICO

---

[2] The Court declines to analyze whether there is closed-ended continuity. "[W]hen a party fails
adequately to present arguments in a brief, a court may properly consider those arguments
abandoned, especially in the case of a counseled party where a court may infer from a party's
partial opposition that relevant claims or defenses that are not defended have been abandoned."
*Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (cleaned up).

continuity context. *See Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 136–37 (S.D.N.Y. 2023) (collecting cases).

Next, the Court turns to whether the predicate acts were part of Defendant's regular way of doing business or whether the predicate acts imply a threat of continued criminal activity. "RICO caselaw disfavors finding continuity where the alleged scheme targeted few victims . . . and is inherently terminable . . . ." *Black v. Ganieva*, 619 F. Supp. 3d 309, 346 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). Here, the Complaint alleges that Barbara Halio sent six transfers in 2013 and one in 2020, which is insufficient to make out a claim of racketeering.

First, such few transfers – here, only seven – does not support a finding of continuity. *See Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 407–08 (S.D.N.Y. 2013) (holding that six purported instances of fraud over eight years did not make out a claim of racketeering based on a theory that such fraud was the regular way of conducting business). Second, the small number of victims weighs against a finding of continuity. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 186 (2d Cir. 2008) (finding allegations of "a serious, but discrete and relatively short-lived scheme to defraud a handful of victims" to be insufficient to establish open-ended continuity). And third, there are no allegations that the alleged RICO acts are continuing or likely to continue, especially when the last relevant allegation is from 2020. *See Lefkowitz v. Bank of New York*, No. 01-CV-6252 (VM), 2003 WL 22480049, at *9 (S.D.N.Y. Oct. 31, 2003), *aff'd in part, rev'd in part on other grounds and remanded*, 528 F.3d 102 (2d Cir. 2007) ("There is no indication in [plaintiff's] RICO counts that Defendants will continue their alleged scheme once the probate proceedings in the [defendants'] estates are completed. Thus, the Court finds that there is no open-ended continuity sufficiently asserted here.").

Accordingly, Plaintiffs have not pleaded open-ended continuity and the Complaint fails to state a substantive RICO claim. Because Plaintiffs have not pleaded continuity, the Court declines to address Defendant's arguments as to whether the Complaint meets RICO's relatedness requirement.

### III.    Plaintiffs Fail to State a RICO Conspiracy Claim

Like the substantive RICO claim, Plaintiffs' RICO conspiracy claim fails. The Complaint's RICO conspiracy allegations, as pleaded, are derivative of its allegations of a substantive RICO violation. For substantially the same reasons that the Complaint fails to plead a substantive RICO violation, it fails to plead a RICO conspiracy, and the RICO conspiracy claim is dismissed. *See First Cap.*, 385 F.3d at 182 (affirming district court's dismissal of a RICO conspiracy violation based on plaintiffs' failure to allege a substantive RICO violation); *D. Penguin Bros.*, 587 F. App'x at 669 ("The failure to state a claim for a substantive RICO violation, moreover, is fatal to plaintiffs' RICO conspiracy claim under § 1962(d).").

### IV.    The Court Declines to Exercise Supplemental Jurisdiction

District courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*. at 122 (quoting *Cohill*, 484 U.S. at 350 n.7).

This is such a "usual case." Plaintiffs' federal law claims are dismissed here, on a motion to dismiss, prior to the investment of significant judicial resources. Thus, the Court remands Plaintiffs' state law claims to the Supreme Court of the State of New York, County of New York. *See In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, No. 14-CV-7228 (CS), 2016 WL 1181727, at *15 (S.D.N.Y. Mar. 25, 2016), *aff'd sub nom. Hampshire Recreation, LLC v. The Vill. of Mamaroneck*, 664 F. App'x 98 (2d Cir. 2016) (internal citation omitted) ("[W]here the Court declines to exercise supplemental jurisdiction, it has discretion to remand the case back to state court."); *see also* Mot. at 2 ("[T]his Court should . . . exile this case back to state court where it belongs.").

## V.    The Court Declines to Issue Sanctions

Defendant moves for sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and/or the Court's inherent power, arguing that the RICO claims were frivolous. ECF No. 24 at 2, 5. Although Plaintiffs' RICO claims are meritless, the Court does not find that Plaintiffs' actions rise to the level of sanctionable conduct.

### A.    Rule 11(b)

Rule 11 requires an attorney's certification that, for any filing, "the claims, defenses, and other legal contentions are warranted by existing law . . . " and "the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(2)–(3). It "thus imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)).

"[S]anctions are appropriate only where 'it should have been patently obvious to any attorney who had familiarized himself or herself with the law' that the action was frivolous." *Id*.

(quoting *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988)). "The imposition of Rule 11 sanctions is discretionary and should be reserved for extreme cases, and 'all doubts should be resolved in favor of the signing attorney.'" *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017) (quoting *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995)).

First, Defendant argues conclusorily that "Plaintiffs did not conduct a reasonable inquiry to determine whether there was a factual and/or legally sufficient basis to continue with the instant RICO Complaint." ECF No. 24 at 7. However, as Plaintiffs rebut, Plaintiffs relied on discovery in the State Court Action, including Defendant's deposition and Barbara Halio's affidavit. ECF No. 29 at 2.

Defendant next argues that Plaintiffs were on notice that their RICO claims lacked merit, both from Justice Cohen's decision in the State Court Action and Defendant's Rule 11 safe harbor notice. ECF No. 24 at 4, 8. Although Plaintiffs' RICO claims are meritless, the Court does not find that the inclusion of such claims in the instant Complaint is sanctionable. *See Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) ("We conclude, however, that although [plaintiff's] amended complaint ultimately failed to state a RICO claim, his claims were not so obviously foreclosed by precedent as to make them legally indefensible."); *Chester Park View, LLC v. Schlesinger*, No. 23-CV-5432 (CS), 2024 WL 2785140, at *15 (S.D.N.Y. May 29, 2024) ("Plaintiffs' RICO claims are without merit, but I do not consider them to be so frivolous as to warrant sanctions.").

Defendant also alleges that Plaintiffs filed the action "subjecting Defendant to litigate and force them to expend attorneys' fees as a means to pressure Dr. Halio's mother to pay Plaintiffs more than what they were entitled to due to the cost of litigation." ECF No. 24 at 9. Defendant

# A214

provides no support for this claim. And, although the Court finds that Plaintiffs' civil RICO-related claims lack merit, the Court has not concluded that Plaintiffs have no viable claims against Defendant.

Although Defendant cites to three cases where courts granted Rule 11 sanctions in the RICO context, all are distinguishable. *See* ECF No. 24 at 12. In *LCS Group, LLC v. Shire LLC*, plaintiff "failed to prosecute [its RICO] claim by refusing to address the merits in its opposition brief while simultaneously refusing to dismiss the claim with prejudice." No. 18-CV-2688 (AT), 2019 WL 1234848, at *15–16 (S.D.N.Y. Mar. 8, 2019). And in the two other cases Defendant cites, the courts held that there was no evidence to support plaintiffs' allegations of RICO predicate acts and plaintiffs' claims were presented for an improper purpose. *See Edmonds v. Seavey*, No. 08-CV-5646 (HB), 2009 WL 4404815, at *3–4 (S.D.N.Y. Dec. 2, 2009); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660–61 (S.D.N.Y. 1996). Accordingly, the Court declines to issue sanctions pursuant to Rule 11(b).

### B.  28 U.S.C. § 1927 and the Court's Inherent Power

Defendant also moves for sanctions under 28 U.S.C. § 1927 and the Court's inherent power, arguing that "Plaintiffs and their counsel have multiplied the proceedings in this case unreasonably and vexatiously." ECF No. 24 at 12. "To award attorney's fees against an attorney under § 1927, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *Chester Park View*, 2024 WL 2785140, at *15 (internal citation and quotation marks omitted). The Court has inherent authority to sanction any party that "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *United States v.*

*Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018) (quoting *Chambers v.*

*NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

"In practice, the only meaningful difference between an award made under § 1927 and

one made pursuant to the court's inherent power is that awards under § 1927 are made only

against attorneys or other persons authorized to practice before the courts while an award made

under the court's inherent power may be made against an attorney, a party, or both." *Enmon v.*

*Prospect Cap. Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (internal citation and quotation marks

omitted). Accordingly, "requests for sanctions under Section 1927 and pursuant to the court's

inherent authority may be decided in a single inquiry." *Prevezon Holdings*, 305 F. Supp. 3d at

478.

Notwithstanding that Defendant relies on the same arguments for sanctions under 28

U.S.C. § 1927 and its inherent power as Defendant did under Rule 11(b), the Court finds that

sanctions are not warranted. The Court has not been presented with evidence that Plaintiffs'

claims were brought in bad faith. Defendant has not demonstrated that these claims were brought

for a harassing purpose – particularly here, where Plaintiffs may have some viable claims against

Defendant. There is also no indication that these claims were brought as a means to delay any

action or relief or to forum shop. Plaintiffs brought the action in state court, after which

Defendant removed the case to federal court, and filed motions to dismiss and for sanctions. For

these reasons, the Court declines to issue sanctions under 28 U.S.C. § 1927 or pursuant to its

inherent power.

### C.  Failure to Redact

In his reply, Defendant also requests that the Court issues sanctions for Plaintiffs' failure

to redact information in a filing as required by Rule 5.2. ECF No. 30 at 1. First, the information

that Plaintiffs failed to redact is that of one of the Plaintiffs, not Defendant. For that reason alone, the Court sees no reason to issue sanctions. Second, upon filing the unredacted documents, Plaintiffs requested that the documents be placed upon temporary seal on an emergency basis and subsequently properly requested the Court's permission to file redacted versions of the documents.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and the RICO causes of action are dismissed. Defendant's motion for sanctions is DENIED. The case is REMANDED to the Supreme Court of the State of New York, County of New York.

Dated:  September 30, 2024
          New York, New York

SO ORDERED.

_____

JESSICA G. L. CLARKE
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the
Estate of JOAN BUCK, and ROBERT BUCK,          Case No.: 1:23-cv-11217 (JGLC) (GS)
individually and ROBERT BUCK, As Executor of the
Estate of JOAN BUCK, derivatively as shareholders on
behalf of JOBAR HOLDING CORPORATION,          **NOTICE OF APPEAL**

                              Plaintiffs,

      -against-

DAVID HALIO,

                              Defendant.
------------------------------------------------------------------------X

        Notice is hereby respectfully given that Dr. David Halio, the Defendant in the above-named

case, appeals to the United States Court of Appeals for the Second Circuit from the Opinion and

Order of the Hon. Jessica G.L. Clarke, U.S.D.J. ("Judge Clarke") dated September 30, 2024,

limited to Judge Clarke's denial of the Defendant's motion for sanctions against Plaintiffs and their

counsel.

  Dated:  Jamaica, New York
          October 27, 2024                Respectfully submitted,

                                          **SAGE LEGAL LLC**

                                          By:  */s/ Emanuel Kataev, Esq.*
                                          Emanuel Kataev, Esq.
                                          18211 Jamaica Avenue
                                          Jamaica, NY 11423-2327
                                          (718) 412-2421 (office)
                                          (917) 807-7819 (cellular)
                                          (718) 489-4155 (facsimile)
                                          emanuel@sagelegal.nyc

                                          *Attorneys for Defendant*
                                          *Dr. David Halio*

**<u>VIA ECF</u>**
Scarinci & Hollenbeck, LLC
<u>Attn</u>: Dan Brecher, Esq.
519 Eighth Avenue, 25th Floor
New York, NY 10018
(212) 286-0747 (office)
(917) 861-5057 (cellular)
(212) 808-4155 (facsimile)
dbrecher@sh-law.com

*Attorneys for Plaintiffs*