# 24-2879-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

JOBAR HOLDING CORPORATION, ROBERT BUCK, Individually,

*Plaintiffs-Appellees,*

– v. –

DAVID HALIO,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLEES

DAN BRECHER
SCARINCI & HOLLENBECK, LLC
*Attorneys for Plaintiffs-Appellees*
519 Eighth Avenue, 25th Floor
New York, New York 10018
(212) 286-0747

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

JOBAR HOLDING CORPORATION, ROBERT BUCK, Individually, and ROBERT BUCK, as Executor of the Estate of JOAN BUCK, and ROBERT BUCK, individually and ROBERT BUCK, As the Executor of the Estate of JOAN BUCK, derivatively as shareholders on behalf of JOBARD HOLDING CORPORATION,

Case No.  24-2879-cv

Plaintiffs- Appellees, -

--against-

DAVID HALIO,

Defendant-Appellant

---

**RULE 7.1 – CORPORATE DISCLOSURE STATEMENT OF JOBAR HOLDING CORPORATION**

Pursuant to Fed. R. Civ. P. 7.1, on behalf of Plaintiff-Appellee Jobar Holding Corporation, derivatively as shareholders by their counsel, states that it does not have any parent corporation nor does any publicly held company own 10% or more of its stock.

SCARINCI & HOLLENBECK, LLC

Dated: March 3, 2025          By:    /s/  Dan Brecher
       New York, New York              DAN BRECHER, ESQ. (DB-5308)
                                       *Attorneys for Plaintiffs-Appellees*
                                       519 8th Avenue, 25th Floor
                                       New York, NY 10018
                                       Telephone: (212) 286-0747
                                       Fax: (212) 808-4155
                                       *dbrecher@sh-law.com*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………...…….iv

COUNTER STATEMENT OF THE ISSUES PRESENTED…...……1

COUNTER STATEMENT OF THE CASE……………………………1

SUMMARY OF THE ARGUMENT…………………….………..……3

ARGUMENT

POINT I

APPELLEES CONDUCTED A REASONABLE INVESTIGATION....  5

POINT II

THE DISTRICT COURT DID NOT FIND THE PLEADINGS
FRIVOLOUS……………………………………………………………….7

POINT III

APPELLEES REASONABLY BELIEVED THAT THE COMPLAINT WAS
NOT UNTIMELY AND THAT APPELLEES COULD CLAIM EQUITABLE
TOLLING …………………………………………………………………7

POINT IV

APPELLEES HAD A REASONABLE BASIS FOR THEIR BELIEF THAT MAIL
AND WIRE FRAUD CLAIMS AS THE PREDICATE TO RICO CLAIMS
ARISING UNDER THE INTERNAL REVENUE LAWS WERE VIABLE
CAUSES OF ACTION…..……………….………………………..13

POINT V

THE ARGUMENT BY APPELLANT THAT THE RICO CLAIMS IN THE
COMPLAINT ARE "IDENTICAL"TO THOSE IN THE COMPLAINT
THAT WAS DISMISSED BY THE STATE COURT IS UNSUPPORTED
BY ANY COMPARISON PROVIDED TO THE COURT, AND THE
APPELLANT'S CHARGE THAT IT WAS MERELY "COPIED AND
PASTED" IS FALSE………………………15

i

POINT VI

APPELLANT'S CLAIM OF FORUM SHOPPING IS FALSE……………...16

CONCLUSION……………………………………………………………17

CERTIFICATE OF COMPLIANCE……………………………………….20

# TABLE OF AUTHORITIES

**CASES**                                                                **Page(s)**

**Brown v. Henderson**
257 F.3d 246, 252 (2d Cir. 2001)………………………………………….…6

**Brubaker v. City of Richmond**
943 F. 2d 1363 (4th Cir. 1991)…………………………………………17, 19

**Chester Park View, LLC v. Schlesinger**
No. 23-CV-5432 (CS), 2024 WL 2785140, at *15 (S.D.N.Y. May 29, 2024)……..7

**Cooter Gell v. Hartmarx Corp.**
496 U.S. 384, 110 S. Ct. 2447, 2459 (1990)………………………………17

**D'Addario v. D'Addario**
 21-2105 (Ct. of App. 2d Cir. 2022)………………………………………7

**Edmonds v. Seavey**
 379 Fed. Appx. 62, 64 -65 (2d Cir. 2010)………………………………..13

**Jobar Holding Corporation, et al  v Halio**
 Index No.: 655899/2017 (Sup. Ct., N. Y. Cty.)………………………………1
Case No. 2021-01048  App. Div., 1st Dept. (January 9, 2025) …...………………15

**Kim v. Kimm**
 884 F.3d 98, 106 (2d Cir. 2018)…………………………………………7

**Lozanof v. Montoya Alvarez**
 572 U. S. 1, 10; 134 S. Ct. 1224 (2014)……………………………...………12


**STATUTES**

28 U. S. C. § 1927…………………………..………………………..…….3

iii

**<u>RULES</u>**

Rule 11 ...................................................................................1, 4, 17, 19

**<u>OTHER AUTHORITATIVE PUBLICATION</u>**

U. S. Justice Department Manual, Title 6 at 6-4-210 (updated Jan 2020) ……...15

## COUNTER STATEMENT OF THE ISSUES PRESENTED

1.     Whether or not the Court below was correct in denying Appellant's Rule 11 motion for sanctions, given the length of investigation by counsel, the finding that the claims were not presented for an improper purpose and that other viable claims were pleaded that were sent back to the state court, among other reasons specifically stated in the District Court's decision for denying sanctions in the instant action.

## COUNTER STATEMENT OF THE CASE

Jobar Holding Corporation ("Jobar"), derivatively, Robert Buck, individually, and Robert Buck, as executor of the Estate of Joan Buck (the "Buck Plaintiffs"), in their direct and derivative capacities on behalf of Jobar (collectively hereinafter the "Appellees") presently have pending in the state court, a Second Amended Complaint filed pursuant to the March 15, 2024 decision and order of the state court (Index No. 655689/2017, NYSCEF Doc. No. 269) that restored five of the causes of action against Barbara Halio ( "Barbara ") that it had dismissed in 2020.

The restored causes of action against Barbara are: unjust enrichment (First Cause of Action alleged in the Amended Complaint), breach of fiduciary duty (Second Cause), fraud (Fifth Cause), conversion (Sixth Cause) and constructive trust (Ninth Cause).  The derivative faithless servant cause of action (Tenth Cause), is restated in the Second Amended Complaint.

1

Barbara filed a motion seeking dismissal of the Second Amended Complaint which was denied last year. After the District Court dismissed Appellees' RICO claims and remanded Appellees' remaining state claims back to the New York Supreme Court, pursuant to motion, the Appellees' state cases against Barbara and Appellant were consolidated. A joint answer to the pleading was recently filed by Barbara and Appellant, but it amounted to no more than a general denial. Appellee's withdrew their RICO claims from the appeal after the District Court's ruling was received.

Then, on January 9, 2025, the First Department overturned the lower court's 2020 dismissal of Appellees' claim in the eleventh cause of action against Jobar's former accountants, who also were the Appellant's accountants and Barbara's accountants. The revived derivative claim against the accountants asserts breach of the covenant of good faith and fair dealing. Appellees argued for the application of equitable tolling to be applied to that claim against the accountants, but the court did not rule on the issue in reinstating the cause of action.

In the First Department's decision, it denied Barbara's appeal of the lower court's denial of dismissal of the tenth cause of action against Barbara as a faithless servant.

## SUMMARY OF THE ARGUMENT

Notwithstanding dismissal of the RICO claims in Appellees' Complaint (the "Complaint"), the District Court's ruling was that there was a lack of sufficient

support submitted by Appellant for the Appellant's claim that the RICO causes of action were brought in bad faith or for an improper purpose. (A-212-215),

The District Court did not abuse its discretion when it found that: "sanctions are not warranted. The Court has not been presented with evidence that Plaintiffs' claims were brought in bad faith. Defendant has not demonstrated that these claims were brought for a harassing purpose – particularly here, where Plaintiffs may have some viable claims against Defendant. There is also no indication that these claims were as a means to delay any action or relief or forum shop. Plaintiffs brought the action in state court, after which Defendant removed the case to federal court, and filed motions to dismiss and for sanctions. For these reasons, the Court declines to issue sanctions under 28 U. S. C. § 1927 or pursuant to its inherent power. "(A-215)

Appellees submit that reasons for the belief of counsel in the merit of the RICO claims include the viability of the Appellees' fraud claims, and the state court's granting of unusual pre-discovery relief to Appellees in the form of an order of attachment with a broad injunction to this day against Barbara, and anyone who may assist her, from transferring of any of her substantial assets. Appellees were also able to subsequently obtain, and have maintained to this day, a lis pendens on Barbara's home, where Appellant maintains his medical offices at no rental cost. There is also the Appellant's admissions of so-called "loans" from Jobar that he admitted remain unpaid. Appellant claimed at his deposition that although he

3

received a number of wires of funds out of the Jobar account, the loans were never requested by him and he could not recall them, not even the $43,996 wire out of the Jobar account that was sent to his medical malpractice insurer because Appellant had bounced a check to them (A-170 - 174).

Appellees do not argue here that the District Court erred in dismissing the RICO claims and remanding the state claims. Appellees argue in support of the District Court's denial of Rule 11 sanctions for the reasons including those stated in that Court's decision quoted above.

Most of the Appellees' state causes of action that were originally dismissed in 2020 have now been reinstated. Appellant has repeatedly made the false representation to the courts that the Appellees' claims are a "vendetta" despite Appellees' repeated success in convincing courts that Appellees had viable claims of fraud and a claim against Appellants' former accountants. Barbara as much as admitted she stole Appellees' funds, calling them "loans," which she claimed she could not repay (A-167 at ℙ 9). As late as April 25,2020, continuing her pattern of fraud and fraudulent conveyances, Barbara sent Appellant a check for $30,000, which he admits receiving and depositing, but could not say what the check was for, or whether he ever repaid her (A-173).

4

## ARGUMENT

## POINT I

## APPELLEES CONDUCTED A REASONABLE INVESTIGATION

As shown above, Appellees spent substantial time investigating the facts in the three years following Appellant's April 25, 2020 receipt of his mother's $30,000 check and the December 2023 filing of the state complaint against Appellant. Appellees believed that because these funds emanated from the sale of a vacation home that Barbara admitted she had supported with the embezzled funds (A-167 at ⁋ 9), this fraudulent transfer continued the pattern of fraudulent conveyances over the seven-year period alleged. Given the intervening pandemic tolling of the statute of limitations, and the coordinated efforts of Barbara and Appellant to delay Appellant's deposition, which was noticed in 2021 but was only able to be held in 2023, when Appellant was ordered by the Court to appear, denying Barbara's motion to quash. Appellants' counsel had reason to believe that these facts and the improper dilatory behavior by Barbara and Appellant acting jointly supported equitable tolling of claims: Barbara made the unsuccessful motion to quash the subpoena served on Appellant, and Appellant's avoidance of the matter, refusing to recognize and respond to the subpoena for over a year, until ordered by the court to do so, had substantially caused the delay of his deposition from 2021 to 2023.

In his deposition, Appellant testified "I don't recall," or similar words in answer to close to a hundred questions, and then delayed matters further by delaying his signing of the transcript. It was this type of dilatory behavior by Barbara and Appellant, and their coordinated failures and refusals to be deposed and refusals and failures to produce documents, that led Appellees' counsel to reasonably believe that these facts, together with the hidden, but now admitted, embezzlement, and the patently fraudulent tax returns and K-1's, would be the basis for a reasonable claim for tolling the statute of limitations for the three year period in which Barbara and Appellant combined their efforts to delay discovery noticed for Appellant and Barbara, during and after the pandemic.

In the litigation process preceding the filing of the instant action, Appellees had obtained damning admissions of Barbara and of Appellant (A-165-174), which counsel reasonably believed could not be subsequently contradicted by them, (See *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

In pursuing the recovery of the embezzled funds, with Buck having incurred well into six figures of legal fees and costs, counsel had the reasonable belief that Appellees' legal fees and costs could be a source of recovery if the RICO claims prevailed that included conversion of estate assets, which is alleged in the instant Complaint. *D'Addario v. D'Addario*, 21-2105 (Ct. of App. 2d Cir. 2022).

The District Court agreed that a reasonable investigation had been conducted by Appellees.

## POINT II

## THE DISTRICT COURT DID NOT FIND THE PLEADING FRIVOLOUS

Quoting *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018), the District Court, in its Opinion and Order, found that although the complaint "failed to state a RICO claim, his claims were not so obviously foreclosed by precedent as to make them legally indefensible." The District Court did not find the Appellees' RICO pleading "so frivolous as to warrant sanctions." (quoting *Chester Park View, LLC v. Schlesinger*, No.23-CV-5432 (CS), 2024 WL 2785140, at *15(S.D.N.Y. May 29, 2024).

## POINT III

## APPELLEES REASONABLY BELIEVED THAT THE COMPLAINT WAS NOT UNTIMELY AND THAT APPELLEES COULD CLAIM EQUITABLE TOLLING

In Appellant's brief, at page 4, Appellant argues that the operative period in which the statute of limitations had not yet run was November 2019 to November 2023, arguing, again without proof, that Appellants were on alert as to Appellant's unrepaid loans in 2016. Appellant provides no proof of Appellees' supposed knowledge, in 2016, of the claims against Appellant that he participated in and took unrepaid loans. Appellant was not a named party in the complaints filed, because,

for example, Appellees were unaware of the part he played in the enterprise at the time Jobar sent a wire for $43,966 to his medical malpractice insurance carrier and six figures of so-called "loans," and at the time Appellant secretly received $30,000 out of the vacation home sales, in Barbara's breach of her 2017 promise to the court that she would pay Buck out of the vacation home sale proceeds, which served to lull the Buck Plaintiffs into waiting for the promised payment.

The Appellees had reason to believe the RICO claims were not untimely because the embezzlements were hidden for years through false and misleading entries on Schedule L, line 6 of the Jobar tax returns and the false and misleading K-1's delivered to Buck in the relevant period, allowing the embezzlements to remain hidden. The hidden nature of the embezzlements, aided by the fraudulent tax filings from 2009 through and including returns delivered by the accountants in 2017, allowed the Appellant and Barbara to continue to hide and continue to divert moneys that Appellant and Barbara do not deny are owed to Buck, were promised to be paid to Buck, including in Barbara's affidavits submitted to the court in her effort to avoid attachment of her assets, yet were never paid to Buck. Instead, the repayment to Buck that Barbara promised the court in 2017 was diverted to Appellant and his siblings in California in 2020. The Appellees had a good faith belief, when the state claim was filed against Appellant in the state court, that a 2023 filing of the instant complaint, was within the four year statute of limitations for RICO claims, when

8

taking into consideration Barbara's 2017 and 2020 promises to the court to repay Buck, the hidden nature of the series of fraudulent transactions, including those in 2020 after the vacation home was sold, all to delay matters to the detriment of the Appellees; and, there also was the pandemic tolling of 228 days.

Barbara's contention that she had no other funds to pay Buck, and no material income from which to repay Buck also supports Appellees' contention that the tax fraud and the delays damaged Buck personally. Although the District Court found differently, when the Appellees filed the Complaint, they had reason to believe that the tax fraud did harm Buck.

Accordingly, counsel had reason to believe that the tax fraud materially contributed to the continuing of the pattern of dozens of embezzled transfers by Barbara and her liquidation of the embezzled funds before Appellees knew about it and could do something to stop it. Buck lost the ability to recover funds owed because of the tax fraud that enabled Barbara and Appellant to hide the embezzlement and evade paying income taxes through the fraud, among other contributing factors to Buck's loss, including Barbara's present contention that she lacks funds to repay Buck. This supports the claim for equitable tolling of the statute of limitations, and, would also support the maintaining of the mail fraud and wire fraud claims predicate to the tax fraud as a basis for the RICO claims. (A-157).

Appellees had reason to believe that the filing was not untimely, and that equitable tolling applied, because Barbara promised the court, in her 2017 affidavit (A-156) and in her 2020 affidavit (A-167), that she would pay Buck after she sold her vacation home, and then secretly sold the vacation home during the pandemic and did not pay Appellees anything. Instead, in a series of fraudulent transfers, in 2020, Barabara sent substantial amounts to Appellant and his siblings and their family members totaling well into six figures. Appellant admitted receiving $30,000 in April 2020, and that the memo part of the check he deposited says it has some relevance to an IRS loan. Appellant contended, similar to his testimony close to one hundred other times, that he did not know what this check was for, and did not remember the repayment details, among the many other things he could not recall (A-173, at deposition pages 75 – 77).

When the Complaint was filed, counsel had a reasonable belief that the April 2020 payment of $30,000 to Appellant by Barbara, in breach of her prior representations to the court that she would repay Buck, was a fraudulent conveyance in that these were the very funds that Barbara admitted emanated from payments on the vacation home out of the Jobar funds and that she had promised to repay Buck (A – 167 at ¶ 9). So, at the time when the Complaint was filed, counsel had a reasonable belief that Barbara's 2020 fraudulent conveyance to her son, like the others listed in the complaint that occurred within seven years of each other, were

10

part of the pattern of fraud alleged, for which the four year statute of limitations for RICO claims had not yet run because: (i) the Complaint was filed in 2023, within four years of that fraudulent 2020 payment to Appellant; and (ii) Appellees were entitled to equitable tolling for the reasons stated herein. When asked at his deposition what the purpose of that $30,000 2020 payment was, Appellant's answer was: "I don't know." (A-173)

At his deposition, Appellant claimed he was unaware of, and never requested Jobar to send a wired payment of his medical malpractice insurance premium of $43,966. Appellant testified that he never requested any of the half dozen loans sent to him from the Jobar account, and did not request the $30,000 check from his mother in 2020, paid out of the proceeds of the sale of her vacation home that she had previously sworn to the court that she would pay to Appellant Buck, but never did. Clearly, Appellant lied at his deposition about not instructing, not even knowing about, Jobar's payment of his medical malpractice insurance premium, for how else would Barbara know the amount and to whom to wire the payment for his medical malpractice insurance premium? Also, Appellant acknowledged receipt, signing and depositing the "loan" checks in his account, which he admitted he had not repaid.

Thus, when the Complaint was filed, Appellees had a reasonable belief that equitable tolling was supported by the hiding of the facts of their embezzlement, the fraudulent tax returns and K-1's received in 2017, Barbara's 2017 promise to the

court that she would repay Buck when the home was sold and then, when it was secretly sold in 2020 during the pandemic, Barbara paid nothing to Buck and, instead, sent a six figure amount to her children, including $30,000 to Appellant.

Appellees had reason to believe that equitable tolling was supported by the dilatory behavior of Barbara and Appellant in the discovery proceedings between the 2021 subpoena served on Appellant, to which he refused to acknowledge or respond, Barbara's unsuccessful motion to quash the subpoena, and Appellant's further delay of his deposition until 2023, at which Appellant testified "I don't recall" and similar answers close to one hundred times.

Appellees were aware that tolling for 228 days from March 20, 2020 to November 3, 2020 was directed by Executive Orders issued by Governor Cuomo.

There is a rebuttable presumption that federal statutes of limitation are subject to equitable tolling. *Lozanof v. Montoya Alvarez*, 572 U. S. 1,10; 134 S. Ct. 1224 (2014),

## POINT IV

**APPELLEES HAD A REASONABLE BASIS OF BELIEF THAT MAIL AND WIRE FRAUD CLAIMS AS THE PREDICATE TO RICO CLAIMS ARISING UNDER THE INTERNAL REVENUE LAWS WERE VIABLE CAUSES OF ACTION.**

Page 15 of Appellant's brief cites to *Edmonds v. Seavey*, 379 Fed Appx. 62, 64-65 (2d Cir. 2010), a case in which that court allowed for sanctions against a counsel who "has not propounded a single fact to substantiate his allegation that the

12

defendants have been engaged in a pattern of racketeering activity.  He fails to point to any evidence that the defendants have misappropriated funds, issued fraudulent financial statements or otherwise committed malfeasance cognizable under the civil RICO statute."

The instant Complaint alleges, with many specific details, that Appellant and his mother had misappropriated Appellees' funds on numerous occasions.  Barbara and Appellant admitted as much in Barbara's affidavit and in David's testimony that are exhibits here. (A-165-174). To date, in the years these claims have been pending, and in the several motions to dismiss by the three defendants, Barbara, the accountants and the Appellant, no defendant has contested the specifically pleaded facts that Appellees allege support the claim of tax fraud, including the Schedule L, lines 6 and 7 fraudulent statements that implied that the money to repay Appellees remained available, The tax returns falsely reported that the loans were all owed to Jobar by non-shareholders, whereas the truth was that, even if the embezzled funds were considered loans, the tax returns falsely reported them as good loans to outside third parties (SA - 5 and 13).  The returns indicated that the money was still there; owed by outside parties, not by Barbara and Appellant. But the loans were not owed by outsiders, they were owed by Barbara and Appellant, as shown in the Complaint's detailing of checks and wires from Jobar to Barbara and Appellant, and as admitted by Appellant and Barbara. (A-167-174).  It is beyond dispute that, as evidenced in

13

the fraudulent tax returns and K-1's (SA – 5, 6, 8, 9, 13, 14, and 18), counsel had good reason to believe that the claim of tax fraud through the mail and wire was sufficiently pleaded so as to satisfied Rule 9(b)'s particularity in pleading requirement.

The Complaint states the specifics of the fraud, and Appellees submitted the documents, affidavits, with identified amounts and dates of the embezzlement of funds; showing how the tax returns are fraudulent. In his 2024 decisions allowing for reinstatement of five causes of action, including fraud, and denying Barbara's motion for dismissal of the state complaint, Justice Cohen determined, after the limited discovery process which he cited in his decision, that the factual proofs Appellees had obtained and submitted supported reinstating five of the causes of action he dismissed in 2020, including the cause of action for fraud.

Counsel was aware that Congress prohibited mail fraud pyramiding with regard to mail and wire fraud civil RICO predicates based on conduct that would have been actionable as securities fraud. But counsel believed, when the Complaint was filed, that the state of the law permitted mail fraud pyramiding based upon conduct that would have been actionable as tax fraud. The United States Justice Department Manual, Title 6 at 6-4-210 (updated January 2020), says as much: "A United States Attorney's Office must obtain Tax Division approval before bringing mail, wire or bank fraud charges…as the predicate to RICO or money laundering

14

charges, if the conduct arises under the internal revenue laws. Conduct arising under the internal revenue laws includes a defendant's submission of a document or information to the IRS."

**POINT V**

**THE ARGUMENT BY APPELLANT THAT THE RICO CLAIMS IN THE COMPLAINT ARE "IDENTICAL" TO THOSE IN THE COMPLAINT THAT WAS DISMISSED BY THE STATE COURT IS UNTRUE AND UNSUPPORTED, AS APPELLANT HAS NOT PROVIDED THIS COURT WITH THE PLEADING FOR COMPARISON, WHILE CLAIMING IT WAS "MERELY COPIED AND PASTED."**

At pages 4, 8 and 17 of his brief, Appellant repeatedly makes the unsupported contention that the Complaint was "identical" and a "copy-paste" of the 2020 complaint. Although the charge is untrue, even if true, the fact that, after certain discovery, Justice Cohen reinstated most of the dismissed state charges shows there is merit to the Complaint. Additionally, the Appellate Division's First Department January 2025 decision denied Barbara's appeal seeking dismissal of the derivative claim against her and reinstated the derivative claim against the accountants that Justice Cohen had dismissed. This further rebuts the "cut-paste" effort that Appellant repeatedly asserts without any proof.

That the allegations of the instant Complaint are similar to the 2020 complaint, albeit more specific, should not be a subject for criticism, since the instant Complaint against Appellant alleges specific acts of Appellant, Barbara and of the accountants

15

in working together in the embezzlement of funds from Jobar, details of which, as Justice Cohen found, were developed in discovery.

## POINT VI

## APPELLEE'S CHARGE OF FORUM SHOPPING IS FALSE

At page 19 of Appellant's brief, the claim is made that Appellees engaged in a plan to forum shop and multiply proceedings. The truth is that when Appellees' counsel requested that Justice Cohen permit the filing of a motion to amend to add Appellant to the pending proceedings, Justice Cohen's law clerk advised that the court would prefer that a separate action be filed. Further proof that Appellees would have preferred to keep the number of proceedings to one is that when it came time for a motion to consolidate, after the instant case had been remanded to the state court, Appellees were content to support consolidation of the proceedings, which was granted.

We note that in the Table of Contents to the Appendix, Appellant has mistakenly listed the "Excerpts from the Deposition Testimony of David Halio" as the exhibit contained on pages SA 15-24, but in fact those pages of the Appendix actually contain the 2017 "memo" the accountants sent to Buck along with the fraudulently "corrected" 2014 K-1's. These tax report documents were a part of the scheme furthering the Appellees' confusion over what had occurred with the "loans," given that corrected returns were never filed and that corrected, but fraudulent K-1's

for 2014 were not delivered to Buck until they were delivered with the February 2017 "Memo" from the accountants.

## CONCLUSION

Appellant acknowledged that the standard of review here is for whether or not the District Court abused its discretion in denying the motion for sanctions. In reviewing for abuse of discretion in Rule 11 determinations, courts may defer to the determination of the district court. *Brubaker v. City of Richmond*, 943 F. 2d 1363 (4th Cir. 1991), citing to *Cooter Gell v. Hartmarx Corp.*, 496 U. S. 384, 110 S. Ct. 2447, 2459 (1990): "Familiar with the legal issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11."

When the Complaint was filed and when the memorandum in opposition to the motion to dismiss was filed, Appellees had a reasonable belief that the Complaint alleging mail and wire fraud as predicate for the tax fraud RICO cause of action could succeed. The Complaint stated uncontradicted facts, which Barbara had admitted to the court, of dozens of undocumented, unrepaid "loans," by wire and check, totaling over a million dollars. The Complaint also stated that Appellant received "loans" totaling in six figures that the Appellant admitted, in his deposition testimony, he had not repaid. The Complaint pointed to specific sections of the Jobar tax returns and K-1's that were fraudulent and could be seen as lulling Buck to await

payment, stating the company had assets of over a million dollars when the correct amount was zero or close to it.

There were several reasons presented, as described above, for granting equitable tolling under the pleaded circumstances, and while Appellees are not seeking to overturn any of the findings below, there were good reasons for Appellees' belief when the claims were filed that they were timely. Similarly, there were good reasons that Appellees saw the Complaint as adequately stating the other requirements for a RICO claim: the enterprise, the decades long relationships between Barbara, her son and the accountants, the pattern of dozens of fraudulent transactions out of the Jobar account and fraudulent tax filings over the course of more than seven years with the parties acting in concert, and the payment of Appellant's medical malpractice insurance policy out of the Jobar account showing that Appellant had input into directing payments.

"[Plaintiffs] need not advance a winning argument to avoid Rule 11 sanctions. Any other conclusion would chill an attorney's enthusiasm or creativity in pursuing legal theories, a result that the advisory committee sought to avoid." *Brubaker v. City of Richmond*, *supra*. at 1378 .

For the foregoing reasons, and in light of the deference appeals courts give to the district court's judgment on how to apply the fact-dependent legal standard on a

motion for Rule 11 sanctions, Appellees respectfully submit that the Appellant's appeal seeking reversal of the District Court's denial of sanctions should be denied.

Dated:  March 3, 2025                    Respectfully submitted,
        New York, New York              SCARINCI & HOLLENBECK LLC

                                        /s/ Dan Brecher, Esq.
                                          Dan Brecher, Esq.
                                          519 Eighth Avenue, 25th Floor
                                          New York, New York 10018
                                          (212) 286-0747 (office)
                                          (917) 861-5057 (cellular)
                                          (212)808-4155 (facsimile)
                                          dbrecher@sh-law.com
                                          *Attorneys for PlaintiffsAppellees*
                                          *Jobar Holding Corporation,*
                                          *derivatively, and Robert Buck,*
                                          *Individually and as Executor of the*
                                          *Estate of Joan Buck*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 25(A)(6)

This brief has been scanned for viruses and no virus was detected.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This brief complies with the type-volume limitation of App. Rule 32(a)(7)(B).

This brief contains 4,996 words, excluding the parts of the brief exempted by App. Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of App. Rule 32(a)(5) and the type style requirements of App. Rule 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Word 14 point Times New Roman.

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/ Dan Brecher, Esq.
*Attorney for Plaintiffs-Appellees*

Dated: New York, New York
      March 3, 2025